So Ordered.

Signed this 21 day of December, 2018.

_____

Margaret Cangilos-Ruiz

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) |
| | ) |
| | ) Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) 18-31754 (main case) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) 18-31753 |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) 18-31755 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF | ) 18-31756 |
| ATLANTA, LLC, and | ) |
| ALLIANCE LTS WINCHESTER, LLC | ) 18-31757 |
| *d/b/a Clarus Linen Systems*[1] | ) |
| | ) Chapter 11 Cases |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING ON A SUPER-PRIORITY, SENIOR SECURED BASIS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

**AND (B) USE CASH COLLATERAL, (II) GRANTING (A) LIENS AND SUPER-
PRIORITY CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN
PREPETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, (IV)
SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] [Docket No. 11], dated December 19, 2018, of Centerstone Linen Services, LLC and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (each, a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d), 364(e), and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of New York, seeking entry of an interim order (this "<u>Interim Order</u>") providing for, among other things:

(i)      authority for the Debtors to obtain senior secured revolving postpetition financing on a super-priority basis pursuant to the terms and conditions of that certain Senior Secured Super-Priority Debtor-in-Possession Loan and Security Agreement by and among, Centerstone Linen Services, LLC, Atlas Health Care Linen Services, Co., LLC, Alliance Laundry & Textile Service of Atlanta, LLC, Alliance LTS Winchester, LLC, and Alliance Laundry & Textile Service, LLC (collectively, the "<u>DIP Borrowers</u>"), and HSBC Bank USA, National Association ("<u>HSBC Bank</u>"), as administrative agent and collateral agent for the DIP Lenders (as defined below) (in its capacity as administrative and collateral agent, and including any of its Affiliates (including any branches thereof) performing any of the functions of administrative agent or collateral

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

agent hereunder or under any of the other Loan Documents, the "DIP Agent") for HSBC Bank (together with any other lenders party thereto and their respective affiliates, successors and assigns, the "DIP Lenders"), substantially in the form attached hereto as Exhibit 1 (as such agreement may be amended, restated, amended and restated, extended, modified, supplemented, or replaced from time to time in accordance with its terms, the "DIP Loan Agreement" and the financing and financial accommodations made available pursuant to the DIP Loan Agreement and the DIP Other Documents (as defined below), the "DIP Facility");

(ii)    authority for the Debtors to (a) execute, deliver, and perform under the DIP Loan Agreement, DIP Other Documents, and all other related or ancillary documents and agreements (including the Budget (as defined below)) (collectively, the "DIP Documents"), and (b) perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    authority for the Debtors to (a) use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code and/or under the DIP Documents, as applicable (the "Cash Collateral"), subject to (x) the restrictions set forth in the DIP Documents and this Interim Order, and (y) the grant of and authority to pay adequate protection to the Prepetition Secured Parties for any diminution in value of their interests in the Prepetition Collateral (as defined below), and (b) access and use the liquidity provided under the DIP Facility on an interim basis until the Final Hearing (as defined below) (the "Interim Period"), as follows (1-2 below being collectively defined as the "Interim DIP Financing"):

3

(1)      access and use up to $500,000 of the postpetition revolving loans made available under the DIP Facility during the Interim Period to (x) convert all letters of credit issued by any Prepetition Secured Parties under the Prepetition Loan Documents (as defined below) to letters of credit under the DIP Documents, (y) fund the Debtors' chapter 11 cases and the continued operation of their businesses as Debtors, and (z) fund certain fees and expenses associated with the consummation of the transactions contemplated in the DIP Documents, each on the terms set forth herein and the DIP Documents, and in each case consistent with the Budget;

(2)      pay the fees and expenses arising in accordance with the terms of the DIP Documents (as defined herein); and

(iv)      a grant, subject to the Carve Out, as defined in paragraph 35 below, of automatically perfected, valid, enforceable, and unavoidable security interests and liens, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, on all DIP Collateral (as defined herein) and assets of the Borrowers and the other Debtors providing credit support under the DIP Facility (the "Credit Parties"), including with respect to Bankruptcy Recoveries (as defined below) and the products and proceeds thereof but solely to the extent provided in this Interim Order, as more fully described herein;

(v)      a grant, with respect to the obligations of the Borrowers and the other Credit Parties hereunder and under the DIP Other Documents (and subject only to the Carve-Out described in paragraph 35 hereof), of an allowed super-priority administrative expense claim in each of the Debtors' bankruptcy cases (and against each of the Debtors' estates created pursuant to section 541 of the Bankruptcy Code) pursuant to section

4

364(c)(1) of the Bankruptcy Code having priority, subject to the Carve Out, over all administrative expenses of the kind specified in or arising under any section of the Bankruptcy Code (including, sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(6), 546(c), or 726 thereof);

(vi)    authority for the Debtors to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become due, including, the reasonable and documented fees and disbursements of the DIP Agent and the DIP Lenders' attorneys, advisers, accountants, and other consultants, all to the extent provided in and in accordance with the terms of the DIP Documents and this Interim Order;

(vii)    a modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order, as set forth herein;

(viii)    subject to the rights of the Committee, if appointed, to seek extension or modification of the Chapter 11 Case Milestones (as set forth in Section 6.11 and Section 10.21 of the DIP Loan Agreement, the "Milestones") in respect of the 363 sale process as described in the Giardino Affidavit (as defined below), approval of such Milestones; and

(ix)    scheduling of a final hearing (the "Final Hearing") to consider entry of an order approving the relief requested in the Motion on a final basis (the "Final Order") and approving the form of notice with respect to the Final Hearing;

and the Court having considered the Motion, the *Affidavit of John J. Giardino in Support of Chapter 11 Petitions and First Day Motions* (the "Giardino Affidavit") filed concurrently with the Motion, the DIP Documents, the evidence submitted or proffered at the interim hearing to consider the relief requested in the Motion held on December 20, 2018 (the "Interim Hearing");

5

3269489.7

and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014; and the Interim Hearing having been held and concluded; and all objections to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and based on all pleadings filed with this Court, and all proceedings held before the Court; and it appearing to the Court that granting the interim relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses and is necessary to avoid immediate and irreparable harm to the Debtors' estates; and it further appearing that the Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and adequate protection being provided on account of the interests of certain holders of liens on the property of the estates on which liens are to be granted; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING PROVISIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW:

     A.     *Petition Date*. On December 19, 2018 (the "Petition Date"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Court") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases").

     B.     *Debtors-in-Possession*. The Debtors continue to operate their businesses and properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

6

C.    *Jurisdiction and Venue*. This Court has jurisdiction over these proceedings and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Committee Formation*. As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

E.    *Debtors' Representations*. Subject to the rights of parties in interest as set forth in paragraph 38 hereof, after consultation with their attorneys and financial advisors, the Debtors (on behalf of, and for themselves) acknowledge and intend in a Final Order to admit, stipulate, acknowledge, and agree to the following:

(i)    *Prepetition Facility*. Debtor Centerstone Linen Services, LLC, as Prepetition "Borrowing Agent", Atlas Health Care Linen Services, Co., LLC, Alliance Laundry & Textile Service of Atlanta, LLC, Alliance LTS Winchester, LLC, and Alliance Laundry & Textile Service, LLC (collectively with the Borrowing Agent, the "Prepetition Borrowers"), the financial institutions from time to time party thereto (collectively, the "Prepetition Lenders"), and HSBC Bank, as administrative agent and collateral agent for the Prepetition Lenders (in its capacity as administrative and collateral agent, and including any of its Affiliates (including any branches thereof) performing any of the functions of administrative agent or collateral agent hereunder or under any of the other Loan Documents, the "Prepetition Agent" and, together with the Prepetition

7

Lenders, the "Prepetition Secured Parties"), are parties to that certain Loan and Security Agreement dated October 29, 2013 (as it may have been amended, restated, modified, supplemented, or replaced from time to time, the "Prepetition Loan Agreement"). The Prepetition Loan Agreement provides the Debtors with a revolving credit facility with $20.0 million maximum aggregate availability to the borrowers thereunder, subject to a borrowing base (and as reduced by reserves), which includes two term loans in the aggregate amount of $6.189 million and an equipment loan in the amount of $6 million (collectively, the "Prepetition Facility"), all as set forth in the Prepetition Loan Agreement (together with all documents executed and filed in connection therewith, the "Prepetition Loan Documents").  As of the Petition Date, approximately $21,877,995 was outstanding under the Prepetition Facility, of which (i) approximately $19,529,345 comprised Revolving Advances (as defined in the Prepetition Loan Agreement), (ii) approximately $920,625 comprised Term Loan B (as defined in the Prepetition Loan Agreement), and (iii) approximately $1,428,025 comprised Equipment Loan (as defined in the Prepetition Loan Agreement), plus letters of credit in the approximate stated amount of not less than approximately $1.08 million, plus interest accrued and accruing at the rates set forth in the Prepetition Loan Documents (together with any other amounts outstanding under the Prepetition Loan Documents as provided therein, including obligations in respect of the cash management system, cash collateral for letters of credit, purchase charge cards, purchase card services, fees, expenses, and indemnity, collectively, the "Prepetition Obligations").  The Prepetition Obligations are secured by first priority security interests and liens on the Debtors' Receivables, Equipment, General Intangibles, Inventory, Investment Property, Leasehold Interests, Commercial Tort

Causes plus additional property set forth in the definition of "Collateral" in the Prepetition Loan Agreement (collectively, referred to herein as the "Prepetition Collateral").

(ii)    *Validity and Priority of Prepetition Indebtedness and Liens*.  (a) the liens on the Prepetition Collateral granted pursuant to the Prepetition Loan Documents are valid, binding, enforceable, non-avoidable, and perfected liens, and are not subject to any challenge or defense, including avoidance, reduction, offset, attachment, disallowance, disgorgement, counterclaim, surcharge, recharacterization, or subordination, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (b) the liens granted pursuant to the Prepetition Loan Documents are senior to all security interests and liens in the Prepetition Collateral, subject only to the "Permitted Encumbrances," as defined in the Prepetition Loan Agreement; (c) the Prepetition Loan Documents are valid and enforceable by the Prepetition Agent and Prepetition Lenders against each of the Debtors, Prepetition Borrowers, and Prepetition Borrowing Agent party to such agreement; (d) the obligations under the Prepetition Loan Documents constitute legal, valid, binding, and unavoidable obligations of the Debtors, enforceable in accordance with the terms and conditions of the Prepetition Loan Documents; (e) no offsets, challenges, defenses, claims, or counterclaims of any kind or any nature to any of the obligations under the Prepetition Loan Documents exist, and no portion of such obligations is subject to avoidance, recharacterization, disallowance, or subordination pursuant to the Bankruptcy Code or other applicable law; (f) the Prepetition Borrowers, Prepetition Borrowing Agent, and Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action; and/or choses in action, including, without limitation,

9

3269489.7

avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Agent, the Prepetition Lenders, and/or any of such parties' respective affiliates, parents, subsidiaries, controlling persons, agents, attorneys, advisors, professionals, officers, directors, or employees whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code) or arising under or in connection with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), the obligations under the Prepetition Loan Documents, or the security interests and liens in the Prepetition Collateral; (g) as of the Petition Date, the Prepetition Obligations constitute allowed, secured claims within the meaning of sections 506(a) and 502 of the Bankruptcy Code, together with accrued and unpaid interest, fees, including, attorneys' fees and related expenses, costs, expenses, and other charges of whatever nature owing in respect thereof; (h) the Debtors, Prepetition Borrowers and Prepetition Borrowing Agent have waived, discharged, and released any right to challenge any of the obligations under the Prepetition Loan Documents, the priority of the obligations thereunder, and the security for (and the priority of the liens securing) such obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action against the Prepetition Agent, Prepetition Lenders, and/or any of their respective officers, directors, employees, affiliates, parents, subsidiaries, controlling persons, agents, attorneys, advisers, professionals, and (i) any payments made on account of the obligations under the Prepetition Facility to or for the benefit of the Prepetition Agent, or Prepetition Lenders prior to the Petition Date were payments out of the Prepetition Collateral and such

10

payments did not diminish any property otherwise available for distribution to unsecured creditors.

(iii)     *Cash Collateral*. That substantially all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes "cash collateral" (as such term is defined in section 363(a) of the Bankruptcy Code) of the Prepetition Secured Parties, as and to the extent applicable.

(iv)     *Default by the Debtors*. That by filing petitions for relief under chapter 11 of the Bankruptcy Code and commencing these Chapter 11 Cases, the Prepetition Obligations under the Prepetition Loan Documents (including, without limitation, any premiums payable thereunder) are immediately due and payable.

F.     <u>*Consent to Adequate Protection*</u>.  The Prepetition Agent has provided consent to the adequate protection provided in paragraph 14 of this Interim Order.

G.     <u>*Findings Regarding the Postpetition Financing*</u>.

(i)     *Request for Postpetition Financing*.  The Debtors seek authority on an interim basis to: (a) use Cash Collateral on the terms described herein, and (b) access and use the liquidity provided under the DIP Facility to: (i) finance ongoing debtor-in-possession working capital purposes, as provided for in the Budget, and other general corporate purposes; (ii) finance transaction fees, costs and expenses related to the DIP Documents; and (iii) make intercompany loans to Debtor affiliates, solely to the extent permitted under the DIP Documents and as provided for in the Budget.  The Debtors also seek authority to use the proceeds of the DIP Facility to convert letters of credit issued by

11

any Prepetition Secured Party under the Prepetition Loan Documents to letters of credit under the DIP Documents.

(ii)    *Priming of Certain Prepetition Liens.*  The priming of the liens of the Prepetition Secured Parties on the Prepetition Collateral, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors. However, the Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for and to the extent of any postpetition diminution in the value of each of their respective interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtors' use, sale, or lease of such collateral, the imposition of the automatic stay, the priming of the prepetition liens granted on the Prepetition Collateral, and the subordination to the Carve-Out described in paragraph 35 hereof and the DIP Liens (as defined herein) (collectively, the "Diminution in Value").  As adequate protection, the Prepetition Secured Parties will receive the adequate protection described in paragraph 14 of this Interim Order.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility as provided for herein is necessary to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise to finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral.

12

Without the ability to access the DIP Facility or Cash Collateral, the Debtors, their estates, their creditors, and the possibility for a successful reorganization would suffer immediate and irreparable harm.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)     *No Credit Available on More Favorable Terms*.   Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Documents.  The Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain credit (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders, (a) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (b) superpriority claims and priming liens, and (c) the other protections set forth in this Interim Order.

(v)     *Adequacy of the Budget*. As set forth in the DIP Documents, the Debtors have prepared and delivered to the DIP Agent and the DIP Lenders a budget, a copy of

3269489.7

which is annexed hereto as Exhibit 2 (as it may be modified, amended, restated or supplemented with the consent of the DIP Agent in its sole discretion on the terms set forth in the DIP Documents and paragraph 17 hereof, the "Budget").[3] The Budget has been thoroughly reviewed by the Debtors, their management, and their advisors. The Debtors, their management, and their advisors believe the Budget and the estimate of administrative expenses due or accruing during the period covered by the Budget were developed using reasonable assumptions, and based on those assumptions the Debtors believe there should be sufficient available assets to pay all administrative expenses due or accruing during the period covered by the Budget.

(vi)    *Bank Product Obligations*. The Debtors hereby acknowledge that any and all Bank Product Obligations (as defined in the DIP Loan Agreement), including, but not limited to controlled disbursement services, treasury, depository, overdraft, and electronic funds transfer services, foreign exchange facilities, credit card processing services, purchase cards and credit or debit card products, whether incurred prepetition or postpetition, are part of and included in the DIP Obligations, and further that they shall pay all such amounts in the ordinary course of business as and when due in accordance with the terms of such other agreements as may be applicable thereto.

H.    *Section 506(c)*. In exchange for (i) the DIP Agent's and the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, and (ii) the Prepetition Secured Parties' agreement to subordinate their liens and claims to the Carve-Out and the DIP Liens, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall, only

---

[3] For the avoidance of doubt, the Budget is one of the DIP Documents.

3269489.7

upon entry of the Final Order, each receive a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.      _Section 552_. In exchange for (i) the DIP Agent's and the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, and (ii) the Prepetition Secured Parties' agreement to subordinate their liens and claims to the Carve-Out and the DIP Liens, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are each entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case", exception shall not apply; provided, that the foregoing shall be subject to entry of the Final Order with respect to parties in interest other than the Debtors.

J.      _Good Faith of the DIP Agent and the DIP Lenders_.

(i)      _Willingness to Provide Financing_.  The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) the entry by this Court of this Interim Order; (b) approval by this Court of the terms and conditions of the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Interim Order, or any other order.

(ii)      _Business Judgment and Good Faith Pursuant to Section 364(e)_.  The terms and conditions of this Interim Order, the DIP Documents, and the DIP Documents,

15

and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent and sound business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Documents and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders, and certain of the Prepetition Secured Parties. The use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used, and extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the Prepetition Secured Parties, the DIP Agent, and the DIP Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

K.      _Notice_. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties-in-interest, including: (i) the Office of the United States Trustee for the Northern District of New York; (ii) counsel to the Prepetition Agent; (iii) counsel to the DIP Agent. The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

16

3269489.7

1.      <u>Interim DIP Financing Approved</u>.    The Interim DIP Financing is authorized and approved, the DIP Documents are authorized and approved on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order and the DIP Documents (including the Budget).

2.      <u>Objections Resolved</u>.  All objections raised at the hearing to the Interim DIP Financing and/or entry of this Interim Order to the extent not withdrawn have been resolved.

**<u>DIP Facility Authorization</u>**

3.      <u>Authorization of the Interim DIP Financing and Entry into the DIP Documents; Application of DIP Proceeds</u>.  The DIP Documents are hereby approved for the Interim DIP Financing.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations (as defined herein) in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments and documents that may be necessary or required for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens provided for by this Interim Order and the DIP Documents.  The DIP Documents evidence valid and binding obligations of the Debtors, which shall be enforceable against the Debtors, their estates, and their creditors in accordance with the terms and conditions of the DIP Documents and this Interim Order.  The Debtors are hereby authorized, on an interim basis, to pay, in accordance with this Interim Order, the principal, interest, fees, expenses, and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, all to the extent provided in the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be

3269489.7

deposited and applied as required by this Interim Order and the DIP Documents.  All of the obligations described in the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with the terms of the DIP Documents.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Loan Agreement) shall be used in accordance with the Budget and for: (a) the payment of fees, expenses and costs incurred in connection with the Chapter 11 Cases; (b) conversion of all letters of credit issued by any Prepetition Lender under the Prepetition Loan Documents to letters of credit under the DIP Facility; (c) the payment of transaction expenses; and (d) working capital, capital expenditures, and other general corporate purposes of the Debtors.

4.     Collections.  From the Petition Date through the date of the Final Order, all cash, collections, and proceeds of the Prepetition Collateral and DIP Collateral, shall be paid first to the DIP Agent for application in reduction of the DIP Obligations until the DIP obligations are indefeasibly satisfied in full, and during this interim period, then to the Prepetition Agent for application in reduction of the Prepetition Obligations outstanding under the Prepetition Loan Agreement in accordance with the Prepetition Loan Documents.

5.     [Reserved].

6.     Authorization to Access the Interim DIP Financing.  During the period that this Interim Order is effective, and subject to the terms and conditions set forth in the DIP Documents, the DIP Facility, and this Interim Order, and to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to access the Interim DIP Financing pursuant to the terms herein and the terms of the DIP Documents.

3269489.7

7.    <u>DIP Obligations</u>.  Upon entry of this Interim Order, but subject to the rights of parties set forth in paragraph 38 below, and except as modified herein or by a Final Order, the DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' obligations under the DIP Facility, the DIP Loan Agreement, the DIP Other Documents, and this Interim Order (the "<u>DIP Obligations</u>"), which DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including, any trustee appointed in these cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). As contemplated in a final order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or to any of the DIP Lenders, under the DIP Documents, or this Interim Order, including all principal, accrued interest, costs, fees, expenses, and other amounts under the DIP Documents.  The DIP Obligations shall be due and payable as provided for herein and in the DIP Documents.

8.    <u>DIP Liens and Collateral</u>.

(a)    As more fully set forth in the DIP Documents, as security for the full and timely payment of the DIP Obligations, the DIP Agent on its behalf and on behalf of the DIP Lenders is hereby granted:

i.    pursuant to Section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in all unencumbered assets of the Debtors (now or hereafter acquired and all proceeds thereof), subject to the Carve Out; and

3269489.7

ii.      pursuant to Section 364(c)(3) of the Bankruptcy Code, and other than as set forth in clause (iii) below, junior liens on and security interests in any encumbered assets of the Debtors which are subject to the Carve Out and any validly perfected unavoidable security interest or lien in existence on the Petition Date or that is perfected subsequent thereto as permitted by Section 546(b) of the Bankruptcy Code (including, without limitation, the Permitted Encumbrances, as defined in the DIP Loan Agreement);

iii.      pursuant to Section 364(d) of the Bankruptcy Code, first priority priming liens on and security interests on the Prepetition Collateral (in each case, now or hereafter acquired and all proceeds thereof), junior only to the Carve-Out but senior to the Existing Liens.

(b)      The liens and security interests identified in paragraph 6(a) are referred to herein as the "DIP Liens" and the collateral to which such DIP Liens attach, the "DIP Collateral."

(c)      Notwithstanding the DIP Documents, the DIP Collateral shall not include, subject to a Final Order, the "Bankruptcy Recoveries".   As used herein, "Bankruptcy Recoveries" shall mean any recoveries of the Debtors, by settlement or otherwise, in respect of claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code.  Further, the DIP Collateral shall include the proceeds of leases, but not the leases themselves, whether or not perfected prior to the Petition Date.

9.      DIP Lien Priority.  The DIP Liens to be created and granted to the DIP Agent and the DIP Lenders, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code; and (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to the

20

DIP Collateral, and are subject only to the DIP Loan Agreement and the Carve Out.  The DIP

Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in

the order and priority set forth in the DIP Loan Agreement and this Interim Order.  Except as

otherwise provided herein, the DIP Liens shall not be made subject to or *pari passu* with any lien

or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and

shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon any

Successor Case(s), and/or upon the dismissal of any of the Chapter 11 Cases.  The DIP Liens

shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code, the "equities of the

case" exception of section 552 of the Bankruptcy Code (subject to entry of the Final Order with

respect to parties in interest other than the Debtors), or, subject to entry of the Final Order,

section 506(c) of the Bankruptcy Code.

        10.    <u>DIP Superpriority Claims</u>.  In addition to the liens and security interests

granted to the DIP Agent on its behalf and on behalf of the DIP Lenders pursuant to this Interim

Order, subject and subordinate to the Carve-Out and in accordance with sections 364(c)(1), 503

and 507 of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority

administrative expense claims (the "<u>DIP Superpriority Claims</u>") with priority over any and all

administrative expenses of the Debtors, whether heretofore or hereafter incurred, of the kind

specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c)

(subject to entry of the Final Order), 507(a), 507(b), 726, 1113, 1114 or any other provisions of

the Bankruptcy Code.

        11.    <u>Extension of Credit</u>.  The DIP Agent and the DIP Lenders shall have no

obligation to make any loan or advance unless all of the conditions precedent to the making of

3269489.7

such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent in its sole discretion.

12.    <u>Use of DIP Facility Proceeds</u>.    From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only pursuant to the terms herein and the terms of the DIP Documents, including as contemplated and limited by the Budget (including any variance therefrom as may be permitted under the DIP Documents).

**<u>Authorization to Use Cash Collateral and Adequate Protection</u>**

13.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions set forth in, and in accordance with, this Interim Order, the DIP Facility, and the DIP Documents, the Debtors are authorized to use Cash Collateral.  Except as expressly permitted in this Interim Order, the DIP Facility, and the DIP Documents, nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom.   Upon the occurrence of a Termination Event (as defined herein), the Debtors' consensual use of Cash Collateral shall automatically terminate.

14.    <u>Adequate Protection</u>. As adequate protection for the interest of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) on account of the Diminution in Value, the Prepetition Secured Parties shall receive the following adequate protection:

(a)    *Prepetition Secured Parties' Replacement Liens*.   Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, solely to the extent of the Diminution in Value of the interest of the Prepetition Secured Parties in the Prepetition Collateral, the Prepetition Secured Parties shall have, subject to the terms and conditions set forth

22

below, additional and replacement security interests and liens in the DIP Collateral (including, for the avoidance of doubt, pledges of 100% of the equity in each direct subsidiary of any Debtor) (the "Prepetition Secured Parties' Replacement Liens"), which shall be junior only to the DIP Liens, the DIP Superpriority Claims, and the Carve-Out, and which shall be granted only to the extent in priority as the replaced security interests and liens had as of the Petition Date.

(b)     *Prepetition Secured Parties' Superpriority Claim*. Solely to the extent of the Diminution in Value of the interests of the Prepetition Secured Parties in the Prepetition Collateral on account of the Prepetition Indemnity Obligations, the Prepetition Secured Parties shall have an allowed superpriority administrative expense claim (the "Prepetition Secured Parties' Superpriority Claims") which shall have priority, except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claims, and (iii) the Carve-Out, in all of the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  Other than the DIP Liens, the DIP Superpriority Claims, and the Carve-Out, (i) no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the

23

Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and (ii) no priority claims are, or will be, senior to, prior to or on parity with the Prepetition Secured Parties' Superpriority Claims.

(c)     *Adequate Protection Payments*.    Until the repayment in full of the Prepetition Obligations under the Prepetition Loan Documents, interest shall continue to accrue after the Petition Date at the Default Rate (as defined in the Prepetition Loan Agreement and on the assumption that it is ultimately determined that the Prepetition Lenders are entitled to such interest), and, on the last business day of each month, the Agent shall receive, for the benefit of the Prepetition Lenders, payment of all postpetition accrued and unpaid interest at the default rate set forth in the Prepetition Loan Agreement, and, subject to the provisions of paragraph 30 hereof, reimbursement of any postpetition costs and expenses due to the Prepetition Agent and Prepetition Lenders under the Prepetition Loan Agreement;

(d)     *Milestones; 363 Sale Process*.    Subject to the rights of a Committee, if appointed, to seek extension or modification of the Milestones, the Milestones are approved as adequate protection for the benefit of the Prepetition Secured Parties. Further, upon the disposition of the Debtors' assets pursuant to section 363 of the Bankruptcy Code assets as contemplated by the *Motion By Debtor Alliance Laundry & Textile Service, Llc D/B/A Clarus Linen Systems For Orders (A) (I) Authorizing The Sale Of Substantially All Of Alliance's Assets Free And Clear Of All Liens, Claims, Interests And Encumbrances, Subject To The Terms Of The Asset Purchase Agreement And Subject To Higher And/Or Better Offers; (II) Authorizing And Approving The Form Of A Certain Asset Purchase Agreement With Crown Health Care Laundry Services, LLC;*

24

3269489.7

*And (III) Authorizing Alliance To Consummate All Transactions Related To The Proposed Sale; (B) Approving Bidding Procedures And Other Related Relief; And (C) Authorizing Alliance To Assume Certain Executory Contracts And Unexpired Leases And Assign Such Contracts And Leases To Purchaser Crown Health Care Laundry Services, LLC* (the "Sale Motion"), the Prepetition Liens and the Prepetition Secured Parties Replacement Liens shall attach to the proceeds of any such sale in the same manner and priority as such liens attached to the Prepetition Collateral and the DIP Collateral and all such proceeds shall be promptly paid at closing on any such sale to the Prepetition Agent for application to the Prepetition Obligations.

(e)    *Adequate Protection upon Sale of Prepetition Collateral*.  Upon any other sale of any Prepetition Collateral pursuant to section 363 of the Bankruptcy Code, any such Prepetition Collateral may be sold free and clear of the Prepetition Liens and the Prepetition Secured Parties Replacement Liens on such terms as are acceptable to the Prepetition Secured Parties; provided, however, that such Prepetition Liens and Prepetition Secured Parties Replacement Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order.

15.    Section 507(b) Reservation.  Subject only to the Carve-Out described in paragraph 35 hereof, nothing contained herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided in this Interim Order is insufficient to compensate for any Diminution in Value of the respective interests of the Prepetition Secured Parties in the Prepetition Collateral during these Chapter 11 Cases or any Successor Cases.

3269489.7

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

16.    <u>Amendment of the DIP Documents</u>.  The DIP Documents may, from time to time, be amended, amended and restated, modified, or supplemented by the parties thereto upon five (5) days prior written notice to the U.S. Trustee and counsel to the Committee, but without notice or a hearing (unless requested by the U.S. Trustee or the Committee), if the amendment, amendment and restatement, modification, or supplement is (a) in accordance with the DIP Documents and (b) not prejudicial in any material respect to the rights of third parties; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, except for actions expressly permitted to be taken by the DIP Agent or the DIP Lenders as provided in the DIP Documents, no amendment, modification, supplement, termination, or waiver of any provision of the DIP Documents, or any consent to any departure by any of the Borrowers or the Credit Parties therefrom, shall in any event be effective unless the consents required under the terms of the DIP Documents have first been obtained.

17.    <u>Budget Compliance</u>.  The Borrowers and the Credit Parties shall not, and shall not permit any subsidiary, directly or indirectly, to use any cash or the proceeds of the DIP Facility in a manner or for a purpose other than those consistent with the DIP Documents and this Interim Order.  The Budget annexed hereto as Exhibit 2 is hereby approved, and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved in writing by the DIP Agent and Prepetition Agent in their respective sole discretion.

18.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Agent may request

26

in its sole discretion to assure the perfection and priority of the DIP Liens, (b) the Debtors to take all appropriate action to grant the Prepetition Secured Parties Replacement Liens, and to take all appropriate action to ensure that the Prepetition Secured Parties Replacement Liens granted thereunder are perfected and maintain the priority set forth herein, (c) the Debtors to incur all liabilities and obligations to the DIP Agent as contemplated under the DIP Documents, (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to this Interim Order and the DIP Documents, and (e) the implementation of the terms of this Interim Order.

19.     Perfection of DIP Liens and Prepetition Secured Parties Replacement Liens.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the DIP Liens and the Prepetition Secured Parties Replacement Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Prepetition Secured Parties Replacement Liens, or to entitle the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein.

(a)     Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent each are authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of lien, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and the Prepetition Secured Parties Replacement Liens, and all such financing statements, mortgages, notices and other documents

27

shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Prepetition Secured Parties Replacement Liens.

(b)     The Debtors are authorized to execute and promptly deliver to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, notices, and other documents as the DIP Agent and the Prepetition Agent may reasonably request. The DIP Agent and the Prepetition Agent, in their respective sole discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments.

(c)     The DIP Agent shall, in addition to the rights granted to it under the DIP Documents, be deemed to be have co-equal rights with the Prepetition Agent and succeed to the rights of the Prepetition Agent with respect to all third party notifications in connection with the Prepetition Facility, all prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

20.     <u>After-Acquired Property</u>.  Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including all DIP Collateral pledged or otherwise granted to the DIP Agent on behalf of the DIP Lenders, pursuant to the DIP Documents and this Interim Order, is

28

not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date that is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

21.    <u>Proceeds of Subsequent Financing</u>.    If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to section 364(b), (c), or (d) of the Bankruptcy Code in violation of the DIP Documents at any time prior to the indefeasible payment in full of all DIP Obligations, the cancellation, backing, or cash collateralization of the letters of credit provided for under the DIP Loan Agreement, the satisfaction of the DIP Superpriority Claims, and the termination of the DIP Agent's and DIP Lenders' obligations to extend credit under the DIP Facility, then all of the cash proceeds derived from such credit or debt shall (a) immediately be turned over first to the Prepetition Agent to satisfy the Prepetition Obligations in accordance with the Prepetition Loan Documents, and (b) thereafter, after the Prepetition Obligations have been satisfied in full and fully and indefeasibly paid, to the DIP Agent to satisfy the DIP Obligations, in accordance with the DIP Documents.

22.    <u>Maintenance of DIP Collateral</u>.    Until the indefeasible payment in full of all DIP Obligations, all indebtedness outstanding in accordance with the Prepetition Loan Documents, and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall (a) insure the DIP Collateral as required under the DIP Facility and the Prepetition Loan Documents, as applicable, and (b) maintain the cash

29

management system in effect as of the Petition Date, as modified by any order that may be entered by the Court in accordance with the DIP Documents.

        23.   <u>Insurance Policies</u>.

        (a)   Upon entry of this Interim Order, the DIP Agent and the DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by any of the Debtors which in any way relates to the DIP Collateral.  Notwithstanding the foregoing, the Debtors are authorized and directed to take all necessary actions to cause the DIP Agent and the DIP Lenders to be named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral; and

        (b)   Upon entry of this Interim Order, the Prepetition Agent and the Prepetition Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by any of the Debtors which in any way relates to the Prepetition Collateral.  Notwithstanding the foregoing, the Debtors are authorized and directed to take all necessary actions to cause the Prepetition Agent and the Prepetition Lenders to be named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the Prepetition Collateral.

        24.   <u>Disposition of Collateral</u>. Except as otherwise expressly provided for in this Interim Order, including with respect to the Sale Motion, and in the DIP Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral (collectively, "<u>Collateral</u>") without the prior written consent of the DIP Agent and the Prepetition Agent (and no such consent shall be implied, from any

30

other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent or an order of

this Court), except for sales, transfers, leases or uses of Debtors' inventory in the ordinary course

of their businesses.  Until such time as the DIP Obligations and the Prepetition Obligations have

been paid in full in accordance with the terms of the applicable DIP Documents and Prepetition

Loan Documents, the Debtors shall remit to the DIP Agent and/or Prepetition Agent, or cause to

be remitted to the DIP Agent and/or Prepetition Agent, all proceeds of Collateral for application

against the DIP Obligations and/or the Prepetition Obligations in accordance with the terms of

the DIP Documents, Prepetition Loan Documents, and this Interim Order.

25.      Inventory.  The Debtors shall not, without the consent of the DIP Agent,

(a) enter into any agreement to return any inventory to any of their creditors for application

against any pre-petition indebtedness under any applicable provision of section 546 of the

Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition

indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code

or otherwise.

26.      Events of Default.  The term "Event of Default" shall have the same

meaning under this Interim Order as such term has under the DIP Documents and shall include,

for the avoidance of doubt, the failure to meet any of the Milestones.

27.      Rights and Remedies upon Event of Default.  Immediately upon the filing

by the DIP Agent of a notice of an Event of Default (a "Default Notice") on the docket of the

Debtors' Chapter 11 Cases, the Debtors shall be prohibited from (a) using Cash Collateral,

including accounts receivable, inventory, and the proceeds thereof, of the Debtors in which the

DIP Agent or any of the DIP Lenders has an interest, or (b) obtaining credit or incurring of

indebtedness secured by a lien or security interest that is equal or senior to a lien or security

31

interest held by the DIP Agent or which is entitled to priority administrative status which is equal

or superior to that granted to the DIP Agent for the benefit of the DIP Lenders or the Prepetition

Secured Parties, as the case may be.  The Debtors shall have three (3) business days to cure any

Event of Default or to request an expedited hearing before the Court to determine whether an

Event of Default has in fact occurred and is continuing (the "Cure Period").  Unless the Debtors

have cured the Event of Default or the Court has determined that no such Event of Default has in

fact occurred and is continuing prior to the expiration of the Cure Period, upon expiration of the

Cure Period the DIP Agent may move on an expedited basis for a hearing on three (3) business

days' notice for relief from the automatic stay under section 362 of the Bankruptcy Code to

allow the DIP Agent to take any and all actions permitted by law, as if no case were pending

under the Bankruptcy Code.  Subject to any applicable grace periods, upon the occurrence of any

Event of Default, the DIP Agent may, without notice or demand, immediately suspend or

terminate all or any portion of the DIP Lenders' obligations to make additional loans under the

DIP Facility.  Upon the occurrence of an Event of Default, all loans under the DIP Facility shall

become due and payable in accordance with the DIP Documents.  Nothing herein shall be

construed to limit or otherwise restrict the availability of the rights and remedies provided for in

the DIP Loan Agreement.

28.    Termination of DIP Facility and Use of Cash Collateral.  The Debtors'

right to use the DIP Facility and Cash Collateral shall terminate immediately upon the earliest of

(i) forty-five (45) days after the Petition Date unless the Final Order, in a form acceptable to the

DIP Agent and Prepetition Agent, has been entered by the Court as of such date, (ii) the DIP

Agent's filing of a Default Notice in accordance with paragraph 27 above; (iii) conversion of any

3269489.7

of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, and (iv) the Termination Date (as defined in the DIP Loan Agreement).

29.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order</u>.  Each of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order, and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are entitled to the fullest extent to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any payments hereunder of Prepetition Obligations, advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties arising prior to the effective date of any such modification, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

30.     <u>DIP Fees and Other Expenses</u>.  All reasonable out-of-pocket costs and expenses of the DIP Agent and the DIP Lenders, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out-of-pocket expenses, whether or not

33

contained in the Budget and without limitation with respect to the dollar estimates contained in the Budget (provided, however, that such overages shall not weigh against the Debtors in any testing related to compliance with the Budget), shall promptly be paid by the Debtors.  Payment of such fees shall not be subject to allowance by this Court, except that the United States Trustee and the Committee shall have a three (3)  business day period after provision of an invoice to raise an objection to the Court with respect to the reasonableness of such fees.   Under no circumstances shall professionals for the DIP Agent, Prepetition Agent and the DIP Lenders and Prepetition Secured Parties be required to comply with the U.S. Trustee fee guidelines.   The Debtors shall promptly pay, and/or the DIP Agent is hereby authorized to make an advance under the DIP Facility to timely pay the submitted invoices.

   31. Indemnification.  The Debtors shall indemnify and hold harmless the DIP Agent, the DIP Lenders, the Prepetition Lenders, and the Prepetition Agent, and each of their respective shareholders, controlling persons, directors, agents, officers, subsidiaries, affiliates, successors, assigns, directors, managers, principals, officers, employees, agents, investor funds, advisors, attorneys, professionals, representatives, investment bankers, and consultants, each in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions, or causes of action, whether groundless or otherwise, and costs and expenses incurred, suffered, sustained, or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents, the Prepetition Loan Documents, and/or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Documents and the Prepetition Loan Documents, and as further described therein and herein, except to the extent resulting from such indemnified party's gross negligence

3269489.7

or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's, Prepetition Agents', and any of the DIP Lenders' and/or Prepetition Lenders' exercise of discretionary rights granted under the DIP Documents and/or the Prepetition Loan Documents, as the context makes applicable. In all such litigation, or the preparation therefor, the DIP Agent and the DIP Lenders, and the Prepetition Agent and the Prepetition Lenders, respectively, shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

32.    <u>Released Parties</u>.  Without limiting the rights of the parties in interest as set forth in paragraph 38 hereof, the Debtors acknowledge and agree that they intend in a Final Order to waive any and all actions related to, and to release, each of (a) the DIP Agent and the DIP Lenders, (b) the Prepetition Agent and the Prepetition Lenders, and (c) each of their respective shareholders, controlling persons, directors, agents, officers, subsidiaries, affiliates, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their respective capacity as such (each such person or entity identified in sub-clauses (a) through (c) of this paragraph 32, a "<u>Released Party</u>" and, collectively, the "<u>Released Parties</u>") from any and all damages, losses, settlement payments, obligations, liabilities, claims, actions, causes of action, or any Challenge (as defined herein), whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained, or required to be paid by an indemnified party of every nature and character arising prior to the Petition Date and to the extent related to the Prepetition Loan Documents, the DIP Documents, or this Interim Order, any documents related to the Prepetition Loan Documents, the DIP

35

Documents, or this Interim Order, any aspect of the prepetition relationship with the Released

Parties, any Debtor, or any other acts or omissions by the Released Parties in connection with the

Prepetition Loan Documents, the DIP Documents, or this Interim Order, any documents related

to the Prepetition Loan Documents, the DIP Documents, or this Interim Order, or any aspect of

their prepetition relationship with any Debtor.

33.     Proofs of Claim.  The DIP Agent, the DIP Lenders, and the Prepetition

Secured Parties shall not be required to file proofs of claim in any of these Chapter 11 Cases or

Successor Cases for any claim allowed in the above-captioned cases, or to receive a distribution

thereunder.  Any proof of claim filed by the DIP Agent and/or the Prepetition Agent shall be

deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of

the DIP Lenders, and/or Prepetition Secured Parties.  Any order entered by this Court in relation

to the establishment of a bar date in any of these cases or Successor Cases shall not apply to the

DIP Agent, the DIP Lenders, and the Prepetition Secured Parties.

34.     Access to Collateral; No Landlord's Liens.  Subject to applicable state law,

notwithstanding anything contained herein to the contrary and without limiting any other rights

or remedies of the DIP Agent, for the benefit of the DIP Lenders, contained in this Interim Order

or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the

DIP Documents and this Interim Order, upon written notice to the landlord of any leased

premises that an Event of Default has occurred and is continuing under the DIP Documents, the

DIP Agent may, subject to any separate agreement by and between such landlord and the DIP

Agent (a "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose

of exercising any remedy with respect to DIP Collateral located thereon and, subject to any

Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under

36

such lease without interference from such landlord; provided, however, that, subject to any such Separate Agreement, the DIP Agent shall only pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph.

35.   Carve-Out.  All liens, claims, and other security interests held by the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be subject to the payment of the Carve-Out.  For purposes of this Interim Order, "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below and, as to the United States Trustee, in such amounts as agreed to by the United States Trustee or as determined by the Court); (ii) all reasonable fees and expenses up to $30,000 incurred by a trustee under section 726(6) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors or any Committee pursuant to sections 327, 328, 363, and 1103 of the Bankruptcy Code (the "Estate Professionals") at any time before or on the first business day following delivery by the DIP Agent of a Carve-Out Trigger Notice, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $50,000, incurred after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the

37

"Post Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their counsel, and the U.S. Trustee, which notice may be delivered following the (i) occurrence and during the continuation of an Event of Default (as defined in the DIP Loan Agreement), (ii) termination of the DIP Facility by the DIP Agent in accordance with the DIP Loan Agreement, as applicable, and (iii) acceleration of the DIP Obligations under one or both of the DIP Facility (collectively, a "Termination Event"), stating that the Post Carve-Out Trigger Notice Cap has been invoked.  Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been issued, the Debtors shall be permitted to pay fees to estate professionals and reimburse expenses incurred by estate professionals to the extent set forth in the Budget and that are allowed by the Court and payable under sections 328, 330 331, and 1103 of the Bankruptcy Code and compensation procedures approved by the Court and in form and substance reasonably acceptable to the Debtors, the DIP Agent, and the Prepetition Secured Parties, as the same may be due and payable, and the same shall not reduce the Post Carve-Out Trigger Notice Cap.

36.    Payment of Compensation.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, or of any person, or shall affect the rights of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any Allowed Professional Fees in excess of the amounts contained, or not set forth, in the Budget.

3269489.7

37.    <u>Proscribed Actions</u>.

(a)    During the term of this Interim Order, no DIP Collateral, Cash Collateral, proceeds of the DIP Facility, portion of the Carve-Out, or any other amounts may be used directly or indirectly by any of the Borrowers or any other Credit Party, the Committee, if any, or any trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Cases or any other person (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) for any of the following actions or activities (the "<u>Proscribed Actions</u>"):

(i)    to seek authorization to obtain liens or security interests that are senior to, or on a parity with, the liens granted under the DIP Documents, this Interim Order, or the Final Order (including the DIP Superpriority Claims); or

(ii)    to prepare, assert, join, commence, support, or prosecute (including by way of examinations or discovery proceedings) any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, against the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, and each of their respective shareholders, controlling persons, directors, agents, officers, subsidiaries, affiliates, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (A)

39

any Bankruptcy Recoveries, (B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claims, the DIP Liens granted under the DIP Documents, or the claims or liens granted under the Prepetition Loan Documents, (D) any action seeking to invalidate, modify, reduce, expunge, disallow, set aside, avoid or subordinate, in whole or in part, the DIP Obligations or the Prepetition Obligations; (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any of (1) the DIP Agent or the DIP Lenders under this Interim Order or under any of the DIP Documents, or (2) the Prepetition Secured Parties (in each case, as applicable, including, claims, proceedings or actions that might prevent, hinder or delay any of their respective assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the DIP Documents, this interim Order, and the Final Order); or (F) objecting to, consenting, or interfering with, in any way, the DIP Agent's and the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred (as set forth in the DIP Documents).

(b)        Notwithstanding anything to the contrary herein, the Committee may use up to $15,000 in the aggregate amount of the Carve-Out, any Cash Collateral, or proceeds of the DIP Facility to investigate the Prepetition Secured Parties (the "Committee Investigation Budget").  Any and all claims incurred by the Committee related to or in connection with any Proscribed Activities other than up to the Committee Investigation

3269489.7

Budget shall be satisfied solely from the unencumbered assets of the Debtors (if any) (the "Unencumbered Assets"); provided, however, that to the extent there are no Unencumbered Assets available to satisfy such claims, then such claims (i) shall not be satisfied by the Carve-Out, any Cash Collateral, or proceeds of the DIP Facility, (ii) shall be automatically disallowed without further action by any party or Court order and shall not receive a recovery in these Chapter 11 Cases and any Successor Cases and (iii) shall not be considered for purposes of determining compliance with section 1129(a)(9)(A) of the Bankruptcy Code.

      38.    Challenge Period.

      (a)    Subject only to the terms of this paragraph 38, the grant of adequate protection to the Prepetition Secured Parties, and the various stipulations and waivers contained in paragraph E hereof shall be without prejudice to the rights of the Committee to seek to disallow the Prepetition Secured Parties' claims in respect of the Prepetition Loan Documents, pursue any claims or seek appropriate remedies against Prepetition Secured Parties in connection with the Prepetition Loan Documents or avoid all or substantially all of the security interests or liens in the Prepetition Collateral or in any other asset or property of Debtors in which Prepetition Secured Parties claim an interest, including any claim, action, or proceeding brought against the Prepetition Secured Parties in accordance with this paragraph 38 that requires Prepetition Secured Parties to give up adequate protection liens and superpriority claims, to disgorge adequate protection interest payments received or accruals credited, or to disgorge as repaid pursuant to this Interim Order as a result of any of the Prepetition Secured Parties' claims against Debtors or liens upon and security interests in the assets and properties of Debtors (including the

41

Prepetition Collateral) being invalidated, avoided, subordinated, impaired, or compromised in any way, either by an order of this Court (or other court of competent jurisdiction) or by settlement. Any party (other than the Debtors, which have waived all such rights), including the Committee, must commence, as appropriate, a contested matter or adversary proceeding raising any objection, claim, defense, suit or other challenge (a "Challenge") with respect to any claim, security interest, or any other rights of the Prepetition Secured Parties under the Prepetition Loan Documents, including in the nature of a setoff, counterclaim, or defense on or before (i) with respect to the Committee, the later of (a) sixty (60) calendar days from the date the U.S. Trustee appoints the Committee or (b) sixty (60) calendar days following entry of the Final Order, subject to the Committee's right to seek a further extension and the DIP Agent's right to oppose the same, and (ii) with respect to all other parties, seventy-five (75) calendar days following the date of entry of the Final Order (the "Challenge Period").

(b)     Upon the expiration of the Challenge Period, to the extent not specifically included in a timely and properly filed pleading asserting a Challenge; (i) any other possible Challenge, whether such Challenge is separately filed or otherwise asserted through an amendment of any timely and properly filed pleading asserting a Challenge, shall be deemed to be forever waived and barred; (ii) all of the Debtors' agreements, acknowledgments, stipulations, waivers, releases, and affirmations as to the priority, extent, and validity of the Prepetition Secured Parties' claims, liens, and interests, of any nature, under the Prepetition Loan Documents, or otherwise incorporated or set forth in this Interim Order, shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, and all creditors, interest holders, and other parties-in-

42

interest in these Chapter 11 Cases and any Successor Cases without further action by any party or this Court, and any Committee and any other party in interest, and any and all successors-in-interest as to any of the foregoing, shall thereafter be forever barred from bringing any Challenge with respect thereto; (iii) the liens and security interests granted pursuant to the Prepetition Loan Documents shall (to the extent not otherwise satisfied in full) be deemed to constitute valid, binding, enforceable, and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable bankruptcy law; and (iv) without further order of the Court, the claims and obligations under the Prepetition Loan Documents shall (to the extent not otherwise satisfied in full) be finally allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Chapter 11 Cases and any Successor Cases and shall not be subject to challenge by any party in interest as to validity, priority, amount, or otherwise.

(c)      Nothing in this Interim Order vests or confers on any person, including the Committee or any other statutory committee that may be appointed in these Chapter 11 Cases, standing or authority to pursue any cause of action, claim, defense, or other right belonging to the Debtors or their estates.  For the avoidance of doubt, entry of this Interim Order shall not grant standing or authority to the Committee to pursue any cause of action, claim, defense, or other right on behalf of the Debtors or their estates.

(d)      Reserved.

(e)      For the avoidance or doubt, in the event any of these Chapter 11 Cases is converted to chapter 7 or a chapter 11 trustee is appointed prior to the expiration of the Challenge Period described in this paragraph 38, the Challenge Period shall not expire

43

3269489.7

until sixty (60) days after the trustee's appointment.  In the event the Committee or any other party in interest has commenced a Challenge prior to the conversion to chapter 7 or appointment of a chapter 11 trustee, the trustee shall be entitled to assume the prosecution of any pending Challenge.  In either event, until the later of the expiration of the Challenge Period without commencement of a Challenge or the entry of a final, non-appealable order or judgment on account of any Challenge, the trustee shall not be bound by the Debtors' acknowledgments, admissions, confirmations, stipulations and waivers in this Order.

39.   <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

40.   <u>No Marshaling: Application of Proceeds</u>.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral and/or the Prepetition Collateral, as the case may be, and all proceeds shall be received and applied in accordance with the DIP Documents and the Prepetition Loan Documents.

41.   <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

42.   <u>Limitation of Liability</u>.  Subject to the entry of the Final Order, in determining to make extensions of credit under the DIP Facility, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim

44

Order (or any Final Order), the DIP Documents, or the Prepetition Loan Documents, as applicable, none of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any successor of any of the foregoing, shall be deemed to be in control of the operations of the Debtors or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the Debtors, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or any affiliate of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability, Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order, the DIP Documents or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any affiliate of the Debtors.

43.    <u>Credit Bidding</u>.

(a)    Subject to and effective upon entry of the Final Order, the DIP Agent shall have the unqualified right to credit bid up to the full amount of the DIP Obligations in any sale of the DIP Collateral (or any part thereof) without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

44.    <u>Discharge Waiver</u>.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in these cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash (or, with respect to any letters of credit, such letters of credit

45

have been treated in a manner satisfactory to the DIP Agent) on or before the effective date of such confirmed plan of reorganization. Without the DIP Agent's prior written consent, none of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash (or, with respect to any letters of credit, such letters of credit have been treated in a manner satisfactory to the DIP Agent) on or prior to the earlier to occur of the effective date of such plan of reorganization or sale.

45.    <u>Rights Preserved</u>.  The entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's, the DIP Lenders', and/or the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties under the Bankruptcy Code or under applicable non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, DIP Lenders, and/or the Prepetition Secured Parties.

46.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties.

3269489.7

47.    <u>Binding Effect of Interim Order</u>.  Immediately upon entry by the Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, all other creditors of the Debtors, the Committee, any other statutory committee that may be appointed in these Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of these cases, any Successor Cases, or upon dismissal of any of these Chapter 11 Cases or Successor Cases.

48.    [Reserved]

49.    <u>No Right to Seek Modification</u>.  Unless requested by the DIP Agent, the Debtors irrevocably waive any right to seek any modification or extension of this Interim Order (in whole or in part) without the prior consent of the DIP Agent, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Agent.

50.    <u>Survival</u>.

(a)    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plan of reorganization in any of these Chapter 11 Cases, (ii) converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of these Chapter 11 Cases or any Successor Cases, or (iv) pursuant to which this Court abstains from hearing any of these Chapter 11 Cases or Successor Cases.

(b)    The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, pursuant to this Interim Order and/or the

47

3269489.7

DIP Documents, notwithstanding the entry of any such order described above, shall continue in these cases, in any Successor Cases, or following dismissal of these cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until, (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full and all commitments to extend credit under the DIP Facility have been terminated and (ii) in respect of the Prepetition Facility, all of the Prepetition Obligations have been indefeasibly paid in full.  The terms and provisions concerning the indemnification of the DIP Agent and the DIP Lenders shall continue in these Chapter 11 Cases, in any Successor Cases, following dismissal of these Chapter 11 Cases or any Successor Cases, termination of the DIP Documents, and/or the indefeasible repayment of the DIP Obligations.

51.    <u>Interim Order Controls; Priority of Terms</u>. To the extent of any conflict between or among the Motion, the DIP Documents, and this Interim Order, the terms and provisions of this Interim Order shall govern.

52.    <u>Waiver of Applicable Stay</u>.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

53.    <u>Further Hearings</u>.  A hearing to consider entry of a further Interim Order with respect to the relief requested in the Motion is scheduled for January 11, 2019, at 11:00 a.m. (the "<u>Second Interim Hearing</u>"), and the Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for January 23, 2019, at 11:00 a.m.  Each of the Second Interim Hearing and the Final Hearing will be held before the Honorable Margaret

48

Cangilos-Ruiz, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of New York, James M. Hanley U.S. Courthouse and Federal Building, 100 South Clinton Street, Syracuse, New York 13261.  Objections to the entry of the proposed Final Order shall be in writing and filed with the Clerk of the Court no later than on January 19, 2019, at 4:00 p.m. (prevailing Eastern time), with copies served upon: (a) the Debtors, c/o Centerstone Linen Services, LLC, 805 Third Avenue, New York, New York, Attn: John Giardino; (b) proposed counsel to the Debtors:  Bond, Schoeneck & King PLLC, One Lincoln Center, 110 West Fayette Street, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq.; (c) counsel for the Prepetition Agent and the DIP Agent: Phillips Lyle LLP, One Canalside, 125 Main Street, Buffalo, New York 14203, Attn: William J. Brown, Esq.; and (d) the U.S. Trustee, 10 Broad Street, Room 105, Utica, New York  13501, Attn: Guy A. Van Baalen, Esq.

54.    *Nunc Pro Tunc* Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.

55.    Retention of Jurisdiction. The Court has retained and will retain jurisdiction to interpret, implement, and enforce this Interim Order according to its terms.

# # #

49