Interim Hearing Date: January 11, 2019<br>
Hearing Time: 11:00 a.m.<br>
Hearing Location: Syracuse, New York<br>
Objection Deadline: January 4, 2019

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | )<br>)<br>) Case Nos.|
| CENTERSTONE LINEN SERVICES, LLC, | ) 18-31754 (main case) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) 18-31753 |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) 18-31755 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF ATLANTA, LLC, and | ) 18-31756 |
| ALLIANCE LTS WINCHESTER, LLC | ) 18-31757 |
| d/b/a Clarus Linen Systems[1], | ) |
| | ) Chapter 11 Cases |
| Debtors. | ) Jointly Administered |

**MOTION FOR ENTRY OF AN ORDER (A) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICES TO AND/OR DISCRIMINATING AGAINST THE DEBTORS ON ACCOUNT OF PREPETITION AMOUNTS DUE, (B) DETERMINING THAT THE DEBTORS' UTILITIES ARE ADEQUATELY ASSURED OF FUTURE PAYMENT, AND (C) AUTHORIZING THE DEBTORS TO PAY ADEQUATE ASSURANCE DEPOSITS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (this "Motion") for entry of an Order (a) prohibiting utility companies from altering, refusing or discontinuing services to and/or discriminating against the Debtors on account of prepetition amounts due, (b) determining that the Debtors' utility companies are adequately assured of future payment, and (c) authorizing the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

3245327.1

Debtors to make adequate assurance deposits. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory and rule-based predicates for the relief requested herein are sections 105 (a) and 366 of title 11 of the United States Code (11 U.S. C. § 101, *et seq.*, the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On December 19, 2018 (the "Petition Date"), the Debtors filed separate, voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court, commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases"). The Debtors remain in possession of their respective assets and continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated. On December 20, 2018, the Bankruptcy Court entered orders authorizing the joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      The Debtors are leading providers of high-quality linen rental and commercial laundry services to the healthcare industry, primarily supplying scrubs, sheets, towels, blankets, patient apparel and other linen products to hospitals and healthcare clinics via long-term

contacts. The companies employ strict quality assurance measures and have been recognized for outstanding performance in the areas of infection control, hygienically clean linens and employee safety. Centerstone is the corporate parent of four subsidiary corporations (Atlas, Alliance, Atlanta and Winchester) and provides back-office and administrative support to them. Atlas and Alliance currently operate five production facilities in three states (Atlas operates two facilities in New York and Alliance operates two facilities in Georgia and one in South Carolina) that provide daily pick-ups and deliveries to their customers. Atlanta and Winchester are not currently operating production facilities.

5. A more detailed factual background relating to the commencement of these Chapter 11 Cases is set forth in the *Affidavit of John J. Giardino in Support of Chapter 11 Petitions and First Day Motions* sworn to on the 19th day of December, 2018 (the "Giardino Affidavit") filed in these Chapter 11 Cases and incorporated herein by reference[2].

**RELIEF REQUESTED**

6. Pursuant to sections 105(a) and 366(a) of the Bankruptcy Code, the Debtors seek entry of an order (a) prohibiting those utility companies (each a "Utility Company" and, collectively, the "Utility Companies") that provide service to the Debtors from altering, refusing or discontinuing services to, or discriminating against, the Debtors on account of prepetition amounts due to them from the Debtors; (b) determining that the Debtors' utility companies are adequately assured of future payment; and (c) approving the payment of an Adequate Assurance Deposit (as set forth and defined below).

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Giardino Affidavit.

## FACTS RELEVANT TO THE MOTION

### The Utility Companies

7. The Debtors currently use water, electricity, natural gas, and other similar services provided by the Utility Companies identified on the attached **Exhibit A** (the "Utility List").[3] The Debtors' Utility Companies provide traditional utility services related to the day-to-day operation of the Debtors' facilities.

8. Uninterrupted service from the Utility Companies is essential to the Debtors' continued operation and successful restructuring. The Debtors could not maintain their facilities or continue to operate their business in the absence of continuous service. It is therefore critical that the Utility Companies continue to provide uninterrupted services to the Debtors.

9. The Debtors intend to timely pay their postpetition obligations to the Utility Companies. The Debtors will make these payments with cash generated during these Chapter 11 Cases and pursuant to orders of this Court authorizing the use of cash collateral.

### Adequate Assurance Deposits

10. Pursuant to section 366(c)(2) of the Bankruptcy Code, a Utility Company may alter, refuse or discontinue a chapter 11 debtor's utility service if the Utility Company does not receive from the debtor or the trustee adequate assurance of payment within thirty (30) days of the commencement of the debtor's chapter 11 case. Although the Debtors maintain that their

---

[3] The Debtors have made an extensive good faith effort to identify all of the Utility Companies that provide service to the Debtors and include them on the Utility List. To the extent such information is readily ascertainable, the Utility List identifies the following information for each Utility Company: (a) the name and address of the Utility Company; (b) the account number or numbers under which the Utility Company provides services to the Debtors; (c) the pre-petition amount owed to the Utility Company; and (d) the Adequate Assurance Deposit (as defined below) proposed by the Debtors for such Utility Company. The inclusion of any entity on, or any omission of any entity from, the Utility List is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve their rights with respect thereto. In addition, the Debtors request that this Motion apply to all of the Debtors' Utility Companies, whether or not any given Utility Company is included on the Utility List. The Debtors have proposed a procedure for supplementing the Utility List. Additionally, it is possible that certain entities may have been mistakenly included on the Utility List and, therefore, the Debtors reserve the right to assert that any such entities are not Utility Companies for the purposes of this Motion or section 366 of the Bankruptcy Code.

ability to generate cash from operations during these Chapter 11 Cases should be sufficient assurance of postpetition payments to Utility Companies, the Debtors propose to provide a deposit equal to one month of utility service, calculated on the basis of the historical average of the Debtors' actual usage over the past twelve (12) months (the "Adequate Assurance Deposit"), to any Utility Company who requests such a deposit in writing, provided that such requesting Utility Company does not already hold a deposit equal to or greater than the Adequate Assurance Deposit, and provided further that such Utility Company is not currently paid in advance for its services. The Debtors' proposed Adequate Assurance Deposit for each Utility Company is set forth on the Utility List attached hereto as **Exhibit A**.

11. The Debtors submit that the Adequate Assurance Deposit, if timely requested by a Utility Company, in conjunction with the Debtors' ability to pay for future utility service in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code. Accordingly, the Debtors request that, absent the filing of an Objection, each Utility Company shall be deemed to have: (a) stipulated that the Proposed Adequate Assurance constitutes adequate assurance of payment to such Utility Company within the meaning of section 366 of the Bankruptcy Code; and (b) waived any right to seek additional or different adequate assurance during the course of these Chapter 11 Cases.

**Modifications to Utility List**

12. It is possible that, despite the Debtors' best efforts, certain Utility Companies have not yet been identified by the Debtors or included on the Utility List. To the extent that the Debtors identify additional Utility Companies, the Debtors will file amendments to the Utility List, and will serve copies of the Order (when and if entered) on such newly-identified Utility Companies. The Debtors request that any Order be binding on all Utility Companies regardless

of when any given Utility Company was added to the Utility List and that all Utility Companies, including subsequently added Utility Companies, be prohibited from altering, refusing, or discontinuing utility services to the Debtors absent further order of the Court.

## BASIS FOR RELIEF

13.     Section 366 of the Bankruptcy Code protects debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that a debtor will pay for postpetition services.  *See* H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.  Section 366 of the Bankruptcy Code (i) prohibits utilities from altering, refusing or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 30 days after a chapter 11 filing, and (ii) protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.  11 U.S.C. § 366.

14.     Courts may exercise their discretion in determining the adequacy of assurance payments and even whether such payments are necessary at all.  11 U.S.C. §§ 363(b) and (c); *see also Va. Elec. & Power Co. v. Caldor Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

15.     Moreover, Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay.  *See In re Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that § 366(b) of Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's

financial circumstances"), *abrogated on other grounds* by *In re Lease-a-Fleet, Inc.*, 131 B.R. 945, 950 n.1 (Bankr. E.D. Pa. 1991); *accord In re Caldor, Inc.-N.Y.,* 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Caldor*, 117 F.3d 646 (2d Cir. 1997); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (same); *see also Steinebach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . [A]ll § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment."). Therefore, despite its language allowing a utility to take adverse action against the debtor should the debtor fail to provide adequate assurance of future payment "satisfactory to the utility," section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once a party seeks to have the Court determine the appropriate amount of adequate assurances.

16. Based upon the foregoing, the Debtors believe that most, if not all, of their Utility Companies have adequate assurance of payment even without the Adequate Assurance Deposit. When the Adequate Assurance Deposit is complemented by the Debtors' ability to pay through access to cash from continued operations, such assurance of payment significantly alleviates—if not eliminates—any honest concern of nonpayment on the part of the Utility Companies, and is thus clearly "adequate."

17. Moreover, if a Utility Company disagrees with the Debtors' analysis, the Utility Company may file an Objection and negotiate a resolution thereof with the Debtors and, if necessary, seek Court intervention without jeopardizing the Debtors' continuing operations.  If a Utility Company fails to file an Objection by the objection deadline, such Utility Company shall

be deemed to consent to and be bound by the Order. *See In re Syroco, Inc.*, 364 B.R. 60, 62 (Bankr. D.P.R. 2007) (a utility company's lack of objection, response, or counter-demand after receiving notice of hearing on utilities motion, notice of interim order, and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code).

18. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

19. Receiving the relief requested herein is essential for the Debtors to be able to carry out their reorganization efforts. If the Motion is not granted, the Debtors could be forced to address numerous requests by their Utility Companies in a disorganized manner at a critical point in these Chapter 11 Cases. Moreover, the Debtors could be blindsided by a Utility Company unilaterally deciding, on or after the thirtieth day following the Petition Date, that it is not adequately protected and therefore that it will discontinue service or make an exorbitant demand for payment to continue service. Discontinuation of utility service, particularly water, gas, electricity and telecommunications, could essentially shut down the Debtors' operations, jeopardizing the Debtors' reorganization efforts. Based on the foregoing, the Debtors respectfully submit that granting the relief requested herein is both necessary and appropriate.

## **WAIVER OF NOTICE AND STAY REQUIREMENTS**

20. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

## RESERVATION OF RIGHTS

21.	Nothing in this Motion, nor any payment made pursuant to the relief sought herein, if granted, is intended or should be construed as an admission as to the validity, priority or amount of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code and the Debtors expressly reserve their rights with respect thereto.

## NOTICE

22.	Notice of this Motion will be given to (i) the Office of the United States Trustee for the Northern District of New York; (ii) counsel for HSBC Bank USA, National Association; (iii) the joint twenty (20) largest unsecured creditors in the Debtors' cases; (iv) all required governmental agencies; and (v) the Utility Companies identified on the Utility List. In light of the nature of the relief requested herein, the Debtors submit that no further notice is required.

23.	No previous application for the relief sought in this Motion has been made to this Court.

**WHEREFORE**, the Debtors respectfully request that the Court an Order (a) prohibiting utility companies from altering, refusing or discontinuing services to and/or discriminating against the Debtors on account of prepetition amounts due, (b) determining that the Debtors' utility companies are adequately assured of future payment, and (c) authorizing the Debtors to make adequate assurance deposits, and (d) granting such other and further relief as the Court deems appropriate.

3245327.1

Dated: December 21, 2018
      Syracuse, New York      BOND, SCHOENECK & KING, PLLC

By:    /s/ Camille W. Hill
Stephen A. Donato, Bar Roll No. 101522
Camille W. Hill, Bar Roll No. 501876
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com
      chill@bsk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Utility List**

| Utility | Account No. | Service Provided | Applicable Debtor and Location | Pre-Petition Amount Owed | Proposed Adequate Assurance Deposit |
|---|---|---|---|---|---|
| Georgia Power | 02321-44017/86517-21030 | Electric | Atlanta – Rome, GA | $5,131.32 | $0.00 *Plant closed |
| City of Rome | 15096 | Water/Sewer | Atlanta – Rome, GA | $68.58 | $0.00 *Plant closed |
| Gas South | 4941484412 | Gas | Atlanta – East Point, GA | $19,601.20 | $0.00 *Plant closed |
| Walton EMC | 703188000 | Gas | Atlanta – East Point, GA | $11,904.93 | $13,556.40 |
| City of East Point | 60761-9274 | Water/Sewer/ Electric/Garbage | Alliance – Spartanburg, SC | $115,425.99 | $35,609.13 |
| Spartanburg Water | 301-0585-02 | Water | Alliance – Spartanburg, SC | $22,187.83 | $22,433.13 |
| Piedmont Natural Gas | 4001124985001 | Gas | Alliance – Spartanburg, SC | $8,735.47 | $7,466.97 |
| Constellation New Energy | BG215072/RG-213974 | Gas | Alliance – Spartanburg, SC | $27,169.31 | $13,894.52 |
| Duke Energy | 1575296134 | Electric | Alliance – Spartanburg, SC | $10,730.34 | $12,946.42 |
| Syracuse Department of Water | 14003M270101/14003M260000/14003M26001/14003M255000 | Water/Sewer | Atlas – Syracuse, NY | $90,202.99 | $9,007.64 |
| Energy Mark | 46990-58103 | Gas | Atlas – Syracuse, NY | $15,909.17 | $13,099.41 |

3245327.1

| National Grid | 77725-81108/23300-29002/20102-62103/67501-87105/67301-87109/37311-29000/25702-62101/08102-62116/28300-76109/26102-62114/16302-62100/08502-62109 | Gas | Atlas – Syracuse, NY | *Included with Electric | $4,375.46 |
|---|---|---|---|---|---|
| National Grid | *Same as Electric | Electric | Atlas – Syracuse, NY | $30,644.04 | $13,915.77 |
| Direct Energy Business | 370230-5114 | Gas | Atlas – Syracuse, NY | $51,718.76 | $0.00  *No longer in use |
| Direct Energy | 1574850 | Electric | Atlas – Syracuse, NY | $31,645.14 | $0.00  *No longer in use |
| Buffalo Water & Sewer | 6009300 | Water/Sewer | Atlas – Buffalo, NY | $43,875.79 | $19,993.27 |
| National Fuel | 719144810 | Gas | Atlas – Buffalo, NY | $6,893.04 | $6,192.61 |
| National Grid | 99791-39144 | Electric | Atlas – Buffalo, NY | $13,293.49 | $16,852.18 |
| Direct Energy Business | 66806038973 | Gas | Atlas – Buffalo, NY | $37,757.01 | $19,000.00 |
| Direct Energy Business |  | Electric | Atlas – Buffalo, NY | $0.00 | $0.00  *No longer in use |
| Duquesne Light | 3683-720-000 | Electric | Atlas – Pittsburgh, PA | $4,383.40 | $5,000.00 |
| People's Natural Gas | 210000275623 | Gas | Atlas – Pittsburgh, PA | $29,946.39 | $7,000.00 |
| Pittsburgh Water and Sewer | 5000815-1098674/5000814-1098675 | Water/Sewer | Atlas – Pittsburgh, PA | $662,028.07 | $2,200.00 |
| Direct Energy Business | 380230-69238 | Gas | Atlas – Pittsburgh, PA | $66,230.68 | $0.00  *Plant closing |

| Direct Energy Business | 1513402 | Electric | Atlas – Pittsburgh, PA | $19,786.33 | $0.00  *No longer in use |
| --- | --- | --- | --- | --- | --- |
| Quantum | no account number on bills | Gas | Atlas – Troy, NY | $1,097.65 | $0.00  *No longer in use |
| CIMA | 1018-13584 | Gas | Atlas – Troy, NY | $0.00 | $0.00  *Plant closing |
| National Grid | 65390-86109 | Electric | Atlas – Troy, NY | $8,252.67 | $0.00  *Plant closing |
| City of Troy | 520604316-1 | Water/Sewer | Atlas – Troy, NY | $129,417.40 | $0.00  *Plant closing |