Hearing Date: January 11, 2019<br>
Hearing Time: 11:00 a.m.<br>
Hearing Location: Syracuse, NY

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CENTERSTONE LINEN SERVICES, LLC,<br>ATLAS HEALTH CARE LINEN SERVICES CO., LLC,<br>ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC,<br>ALLIANCE LAUNDRY AND TEXTILE SERVICE OF ATLANTA, LLC, and<br>ALLIANCE LTS WINCHESTER, LLC<br>d/b/a *Clarus Linen Systems*[1],<br><br>                                                            Debtors. | Case Nos.<br>18-31754 (main case)<br>18-31753<br>18-31755<br>18-31756<br><br>18-31757<br><br>Chapter 11 Cases<br>Jointly Administered |

## DEBTORS' MOTION FOR ORDER AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (this "Motion") for the entry of an order, pursuant to sections 105(a), 363, 1107 and 1108 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code"), authorizing the Debtors to continue prepetition payment arrangements with certain critical vendors and to pay prepetition obligations in connection therewith. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

1

3272523.1

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and rule-based predicates for the relief requested herein are sections 105(a), 363, 1107 and 1108 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

3. By this Motion, the Debtors seek the entry of an Order authorizing the Debtors to continue paying prepetition amounts owed to creditors (i) Standard Textile Co., Inc. ("Standard Textile") and (ii) American Associated Companies, Inc. ("AACO") as "critical vendors", which, in the Debtors' reasonable judgment, are necessary to prevent the disruption of the Debtors' operations. The Debtors propose to continue making weekly installment payments of $15,000.00 and $7,500.00 to Standard Textile and AACO, respectively, in accordance with the terms of prepetition promissory notes described below. Standard Textile and AACO are hereinafter collectively, the "Critical Vendors".

## BACKGROUND

4. On December 19, 2018 (the "Petition Date"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (these "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in these Chapter 11 Cases and, as of

the date of the filing of this Motion, no official committees have been appointed or designated. The Chapter 11 Cases are being jointly administered under Bankruptcy Rule 1015(b) pursuant to Orders entered by the Bankruptcy Court on December 20, 2018.

5. The Debtors are leading providers of high-quality linen rental and commercial laundry services to the healthcare industry, primarily supplying scrubs, sheets, towels, blankets, patient apparel and other linen products to hospitals and healthcare clinics via long-term contacts. Centerstone is the corporate parent of four subsidiary corporations (Atlas, Alliance, Atlanta and Winchester) and provides back-office and administrative support to them. Atlas and Alliance currently operate five production facilities in three states (Atlas operates two facilities in New York and Alliance operates two facilities in Georgia and one in South Carolina) that provide daily pick-ups and deliveries to their customers. Atlanta and Winchester are not currently operating production facilities.

6. A more detailed factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Affidavit of John J. Giardino In Support of Chapter 11 Petitions and First Day Motions* sworn to on the 19th day of December, 2018 filed in these Cases and incorporated herein by reference.

7. Standard Textile and AACO are the Debtors' largest suppliers of linen products. Several of the Debtors' key customer contracts specify linen goods manufactured only by Standard Textile or AACO. These specifications include the type of material or other qualities only available from Standard Textile or AACO. The Debtors are required to continually purchase new linens in order to replace lost linens and comply with the quantities required to be delivered under their customer contracts.

3272523.1

8.  Prior to the Petition Date, the Debtors accrued significant arrears with both Standard Textile and AACO. In order to ensure the continued delivery of those companies' products, the Debtors executed promissory notes and entered into weekly installment payment arrangements with both Standard Textile and AACO.

9.  On December 4, 2017, debtors Centerstone, Atlas, Alliance and Atlanta entered into a Promissory Note with Standard Textile in the original principal amount of $6,185,105.77 (the "Standard Textile Note") to satisfy outstanding payment arrears due. Paragraph 1 of the Standard Textile Note provides, however, that,

> the outstanding principal due under this Note and all accrued interest, shall be deemed paid and satisfied in full, and the remaining payment obligations of [Debtors] under this Note shall be deemed to be forever discharged, if (a) [Debtors] pay to [Standard Textile] . . . the aggregate sum of Two Million Eight Hundred Forty-Eight Thousand Five Hundred and Fifteen Dollars and Thirty-Eight Cents ($2,848,515.38) payable in accordance with the following payment schedule: minimum payment of Fifteen Thousand Dollars ($15,000.00) per week; and (b) no Event of Default has occurred and [Debtors] otherwise are in compliance with all their other duties and obligations under this Note.[2]

Paragraph 7(e) further requires the Debtors to collectively purchase from Standard Textile, on a cash-in-advance basis, at least 65% of their aggregate weekly linen purchases from all vendors. A copy of the Standard Textile Note is attached hereto as **Exhibit "A"**.

10.  In October 2018, debtor Centerstone entered into a Promissory Note and Agreement for Future Orders (dated as of June 2018) with AACO in the original principal amount of $1,040,673.39 (the "AACO Note") to satisfy outstanding payment arrears due. The AACO Note provides for 113 weekly installment payments in the amount of $8,500.00 through June 10, 2019, then increasing to $11,000.00 through June 8, 2020 and then increasing to $13,500.00 through August 10, 2020. With the consent of AACO, however, Centerstone has

---

[2] John J. Giardino has a limited personal guaranty of up to $1,000,000.00 with respect to the Standard Textile obligation. The guaranty agreement is attached to the Standard Textile Note.

4

3272523.1

been paying weekly installments of $7,500.00 since August 2018 to AACO. Centerstone is also on a cash-in-advance basis with AACO for future linen purchases. Copies of the AACO Note and email correspondence dated November 7, 2018 confirming the current installment payment amount are attached hereto as **Exhibit "B"**.

11. The Debtors are current on their installment payments and cash-in-advance payments due Standard Textile and AACO. As of the Petition Date, the Debtors owed Standard Textile approximately $1,627,493.74 and owed AACO approximately $1,266,152.78 for linen purchases under their respective promissory notes.

12. During the post-petition period, the Debtors have budgeted for new linen purchases of approximately $100,000.00 per week in order to meet customer contract demands.

## NEED FOR RELIEF REQUESTED

13. The goods provided by the Critical Vendors are crucial to the continuation of the Debtors' businesses and would be difficult and expensive to replace. Continued payments to the Critical Vendors prior to the confirmation of a plan in these Chapter 11 Cases is vital because: (a) the linen goods provided by Standard Textile and AACO are specified in certain significant customer contracts and are the only sources from which the Debtors can procure those particular goods; (b) the failure to continue paying the Critical Vendors would, in the business judgment of the Debtors, result in the Critical Vendors refusing to provide goods to the Debtors; (c) the Critical Vendors provide goods to the Debtors on advantageous terms; and (d) the Critical Vendors could themselves be irreparably damaged by the Debtors' failure to pay their prepetition claims, resulting in the Debtors being forced to obtain linen goods elsewhere that would either be at a higher price or not of the quantity or quality required by the Debtors.

14. The Debtors therefore seek authority to continue paying the Critical Vendors in the ordinary course of business, as the Debtors believe that payment of the amounts specified herein would allow them to obtain goods that are absolutely necessary to the Debtors' post-petition operations.

15. The Debtors have critically examined whether the payments to the Critical Vendors described herein are necessary using the following criteria: (a) whether the vendor in question was a "sole-source" vendor; (b) whether preferences or requirements of the Debtors' customers prevent the Debtors from looking to alternative sources for a vendor's products; and (c) whether the Debtors receive advantageous pricing or other terms from a vendor such that replacing such vendor post-petition would result in significantly higher costs to the Debtors. The Debtors also took into account (a) whether failure to pay a Critical Vendor's claims would result in the Critical Vendor terminating its provision of goods to the Debtors; and (b) what percentage of the Critical Vendor's claims would need to be paid to induce it to continue providing goods to the Debtors.

16. The Debtors propose to condition the continued payments to the Critical Vendors on the agreement of the Critical Vendors to continue supplying linen goods to the Debtors (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability, and other applicable terms and programs) on terms that are consistent with the historical trade terms between the parties (the "Customary Trade Terms"). The Debtors reserve the right to negotiate trade terms with the Critical Vendors, as a condition to payment of any Critical Vendor claim, that vary that from the Customary Trade Terms to the extent the Debtors determine that such terms are necessary to procure the essential linen goods or are otherwise in the best interests of the Debtors' estates.

3272523.1

17. If any Critical Vendor accepts payment on account of a prepetition obligation of the Debtors and thereafter does not continue to provide goods to the Debtors on Customary Trade Terms, any payments made will be deemed an avoidable post-petition transfer under Section 549 of the Bankruptcy Code and, therefore, will be recoverable by the Debtors in cash upon written request. Upon recovery by the Debtors, the claim will be reinstated as a prepetition claim in the amount so recovered.

18. The payments owed to Critical Vendors are necessary to preserve the Debtors' businesses (and their value) pending sales of the Debtors' assets as going concerns or the confirmation of a plan in these Chapter 11 Cases. If this Motion is not granted, it is likely that Critical Vendors will stop providing linen goods to the Debtors on Customary Trade Terms, effectively reducing the amount of credit available to the Debtors, or will stop doing business with the Debtors altogether, leaving the Debtors unable to obtain essential materials for their businesses, forcing the Debtors to incur higher costs to obtain replacement materials, and, in any event, causing such substantial delays in the Debtors' operations that the Debtors may never fully recover from the harm resulting from such a delay. As further detailed below, such actions would be extremely damaging, if not devastating, to the Debtors, their estates and their creditors.

19. In particular, the continued availability of linen products in quantities and on terms consistent with those the Debtors enjoyed prepetition is vital to the Debtors' business because it allows the Debtors to maintain operations as a going concern. Preserving the Debtors' ability to operate will enable the Debtors to maintain their competitiveness and to maximize the value of their businesses. Conversely, a disruption or cancellation of deliveries of goods – which are not readily replaceable – would cripple the Debtors' business operations, increase the amount

of funding needed by the Debtors post-petition, and ultimately impede the Debtors' ability to service their customers and generate revenue, thereby placing the value of their business at risk.

## BASIS FOR RELIEF REQUESTED

20. The relief requested in this Motion is essential to preserving good relationships with those vendors that are essential to the continued operations of the Debtors' businesses. The Debtors, their creditors, and their estates would suffer immediate harm if the Debtors are unable to secure the continued cooperation of their Critical Vendors through payment of prepetition amounts owed to those vendors in the ordinary course of business.

### A. Payment of the Critical Vendor Claims is Warranted Under Section 363 of the Bankruptcy Code

21. The Court may authorize payment of the Critical Vendors' claims pursuant to section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that a debtor may "after notice and a hearing, use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of that debtor. *See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section 363(b) must find from the evidence a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (standard for determining a section 363(b) motion is whether the debtor has a "good business reason" for the requested relief); *In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing a contractor to pay prepetition claims of some suppliers who were potential lien claimants pursuant to section 363 because the payments were necessary for the general contractors to release funds owed to the debtors). "Where the debtor articulates a

reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

22. Numerous courts have also used their section 105(a) equitable powers under the doctrine of necessity to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and to preserve the going concern value of the debtor. *See, e.g., In re Lehigh Co. & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"). The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor," which is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). *See also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'").

23. The Debtors respectfully submit that similar relief is warranted in these Chapter 11 Cases. As the foregoing authority provides, where the ability to pay prepetition claims of the Critical Vendors is necessary to prevent disruption to the Debtors' business operations, courts are fully empowered to authorize such payments. Further, the continued satisfaction of the

prepetition claims of the Critical Vendors will enable the Debtors to preserve the value of their estates and safeguard the confidence and goodwill of their suppliers and service providers. Without the requested relief, which is based on a rational exercise of the Debtors' business judgment, the Debtors' efforts to maximize the value of these estates will be jeopardized. The relief requested in this Motion contemplates continued payments to the Critical Vendors, who in turn agree to provide post-petition goods to the Debtors on Customary Trade Terms or other prepetition terms acceptable to the Debtors, and is therefore consistent with and appropriate under section 363 of the Bankruptcy Code.

24. As detailed above, maintaining the goods provided by the Critical Vendors is vital to the Debtors' continuing business operations and the success of these Chapter 11 Cases. In addition, and as also detailed above, the Debtors have concluded that there is a significant risk that the Critical Vendors will cease doing business with the Debtors unless the Debtors continue the prepetition payment arrangements with the Critical Vendors. Should any Critical Vendor stop supplying goods to the Debtors, or choose to significantly downgrade the Debtors' trade terms, their businesses would be adversely affected. As such, the Debtors submit that the amounts proposed to be paid to the Critical Vendors in the ordinary course of business pales in comparison to the likely damage to the Debtors' businesses and estates should the relief requested herein not be granted. In light of the foregoing, the Debtors submit that making continued payments to the Critical Vendors is plainly in the best interests of their estates and creditors.

25. The Debtors therefore respectfully submit that the relief sought herein is fully justified pursuant to sections 105 and 363 of the Bankruptcy Code, as well as the "doctrine of necessity."

26.  The critical linen goods provided by the Critical Vendors are vital to the Debtors' continuing business operations and their ability to maximize estate assets. If the relief sought in this Motion is not granted, Critical Vendors may attempt to assert their considerable leverage and deny the Debtors essential goods going forward. Accordingly, in the Debtors' business judgment, the payment of the Critical Vendor Claims as set forth herein is necessary to prevent the immediate and irreparable harm that would arise from a disruption to the Debtors' business operations.

**B.   The Court May Also Authorize Payment of the Critical Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties**

27.  The Debtors, operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ*, 273 BR. 487, 497 (Banks. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including operating business's going-concern value." *Id.*

28.  It has been noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only by the preplan satisfaction of a prepetition claim." The *CoServ* court specifically noted that satisfaction of prepetition claims prior to a plan of reorganization would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate" and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

29. Resuming payment of the Critical Vendor claims meets the test set forth in *CoServ*. As described above, the Debtors have narrowly tailored this Motion to encompass only those Critical Vendors which are essential to the operation of each Debtor's business. Any disruption to the Debtors' supply chain could cost the Debtors' estates hundreds of thousands of dollars in lost revenues and delay the laundry process from which the Debtors obtain essentially all of their revenue. The potential harm that would stem from the failure to pay the Critical Vendors is, in the Debtors' business judgment, disproportionate to the amount of the prepetition claims that the Debtors are seeking to pay hereunder. Moreover, with respect to each Critical Vendor, the Debtors have examined other options short of paying the Critical Vendors' claims and have determined that to avoid significant disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of the Critical Vendors' claims. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by resuming payments to the Critical Vendors. Accordingly, the Debtors respectfully request that the Court grant the relief requested herein.

**C. The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

30. The Debtors pay the Critical Vendors with funds drawn by checks (the "Checks") or by means of electronic fund transfers (the "Electronic Transfers"). Prior to the Petition Date,

3272523.1

the Debtors remitted Checks or Electronic Transfers on account of certain claims that may not have cleared as of the Petition Date. To the extent any of the Checks or Electronic Transfers have not cleared their operating or disbursement accounts at HSBC Bank USA, National Association ("HSBC Bank") as of the Petition Date, the Debtors request that the Court authorize and direct HSBC Bank, in the Debtors' sole discretion, to receive, process, honor and pay the Checks or Electronic Transfers, without the need for further Court approval. If the Critical Vendors have not received payment for amounts in connection with the Critical Vendors' claims, the Debtors seek authority to issue replacement Checks, resubmit Electronic Transfers or otherwise make payment to the Critical Vendors on account of the Critical Vendors' claims, without the need for further Court approval. The Debtors represent that each of the Checks and Electronic Transfers can be readily identified as relating directly to the authorized payment of amounts owed on account of the Critical Vendors' claims. Accordingly, if the relief requested herein is granted, the Checks and Electronic Transfers, other than those relating to authorized payments, will not be honored inadvertently.

## REQUEST FOR WAIVER OF STAY

31. To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

3272523.1

32. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

### RESERVATION OF RIGHTS

33. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any invoice or claim with respect to Critical Vendors in accordance with applicable law and to assume or reject any agreements with such parties in accordance with the applicable provisions of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### NOTICE

34. Notice of this Motion will be given to (i) the Office of the United States Trustee for the Northern District of New York; (ii) counsel for HSBC Bank; (iii) Standard Textile; (iv) AACO; (v) the twenty largest unsecured creditors in each Debtor's case; (vi) all required government agencies; and (vii) all parties filing notices of appearance and requests for service of pleadings in the Debtors' cases. In light of the nature of the relief requested herein, the Debtors submit that no further notice is required.

35. No previous application for the relief sought in this Motion has been made to this Court.

3272523.1

**WHEREFORE**, the Debtors respectfully request that the Court enter an order authorizing the Debtors to continue paying, pursuant to the terms of the prepetition promissory notes, the prepetition amounts owed to creditors Standard Textile and AACO as critical vendors, and granting such other and further relief as the Court deems appropriate.

Dated: December 28, 2018
     Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By: _/s/ Camille W. Hill_
Stephen A. Donato, Bar Roll No. 101522
Camille W. Hill, Bar Roll No. 501876
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com
       chill@bsk.com

*Proposed Counsel to the Debtors and Debtors in Possession*