| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | Hearing Date: January 11, 2019 |
| NORTHERN DISTRICT OF NEW YORK | Hearing Time: 11:00 a.m. |
| ------------------------------------------------------- | Hearing Location: Syracuse, New York |

-----In re:
| | |
|---|---|
| CENTERSTONE LINEN SERVICES, LLC, | Case Nos. |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | 18-31754 (main case) |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | 18-31753 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF | 18-31755 |
| ATLANTA, LLC, and | 18-31756 |
| ALLIANCE LTS WINCHESTER, LLC | 18-31755 |
| *d/b/a Clarus Linen Systems*1, | |
| Debtors. | Chapter 11 Cases |
| | Jointly Administered |

-------------------------------------------------------

# UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS

To: The Honorable Margaret Cangilos-Ruiz, United States Chief Bankruptcy Judge:

Pursuant to 28 U.S.C. § 586, 11 U.S.C. §§ 105(a), and 363(b), 503(b)(9), and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 6003 and 6004, William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), submits this objection to the Debtors' ("Centerstone") Motion to continue prepetition payment arrangements with certain critical vendors and to pay prepetition obligations in connection therewith. ("Critical Vendor Motion") as follows:

## BACKGROUND

1. On December 19, 2018 ("Petition Date"), Debtors filed skeletal voluntary chapter 11 petitions for relief under chapter 11 of the United States Code. On December 20, 2018, the Court entered an order approving the joint administration of the cases.

2. Centerstone operates linen rental and commercial laundry services to the healthcare industry.

3. The Debtors filed a Critical Vendor Motion on shortened notice, seeking authorization to pay a portion of certain prepetition claims of two providers and suppliers of various materials to run the Debtors' facilities. Specifically, the Critical Vendor Motion identifies Standard Textile and ACCO, whose prepetition claims total $2,893,646.52 The Debtors seek authority to assume and continue prepetition installment payments on promissory notes, reflecting substantial arrears due by the Debtors to Standard Textile and ACCO.

4. The Debtors' schedules, statements, and other required documents have not yet been filed.

## APPLICABLE LEGAL AUTHORITY

5. No provision of the Bankruptcy Code expressly authorizes the payment of pre-petition debts before the confirmation of a chapter 11 plan of reorganization, nor does the Bankruptcy Code define "critical vendor." *In re Jeans.com, Inc.*, 502 B.R. 250, 252 (Bankr. D. P.R. 2013). The "judge-made rule that courts rely upon to justify permitting a debtor in possession in a Chapter 11 case, prior to the confirmation of a plan of reorganization, to pay certain creditors the full amount of their pre-bankruptcy [petition] unsecured claims" is referred to by courts as the "doctrine of necessity." *Id.* at 252-253 (citation omitted).

6. Bankruptcy Courts that have allowed the payment of claims under the doctrine of necessity "have recognized that it should only be invoked 'under extraordinary circumstances' and … is 'a device to be used only in rare cases.'" *In re Zenus is Jewelry, Inc.*, 378 B.R. 432, 433 -434 (Bankr. D. N.H. 2007) (citing *In re CoServ, L.L.C.*, 273 B.R. 487, 491 (Bankr. N.D. Tex. 2002)). The doctrine is "reserved for those vendors and other creditors who are critical to the survival of the debtor because of the goods or services they provide." *In re Jeans.com, Inc.*, 502 B.R. at 252-253 (citations omitted).

7. Bankruptcy courts applying the doctrine of necessity, however, have required debtors to satisfy multi-pronged tests establishing the extraordinary circumstances justifying the payment of prepetition claims. *See, e.g., In re Kmart Corp.*, 359 F.3d *supra* at 873 (debtor must demonstrate that: (1) vendors would have ceased doing business with debtor if outstanding debts were not paid; (2) disfavored creditors would be better off, or at least not worse off, as a result of preference); *In re CoServ, L.L.C.*, 273 B.R. *supra* at 498 (debtor must show: (1) that it is critical that debtor deal with claimant; (2) that unless it deals with claimant, debtor risks probability of harm, or, alternatively, loss of economic advantage to estate or debtor's going concern value, disproportionate to amount of prepetition claim; (3) there is no practical or legal alternative by which debtor can deal with claimant other than by payment of claim); and *In re Jeans.com, Inc.*, 502 B.R. *supra* at 258-259 (debtor must show by evidentiary record (1) that payments are necessary to debtor's reorganization; (2) that sound business justification exists for these payments in that vendors will refuse to continue to do business with debtor unless they are afforded "critical vendor" status; and (3) that disfavored creditors are at least as well off as they would have been had "critical vendor" order not been entered).

8. In the Second Circuit, the Bankruptcy Court is empowered under § 105 to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). Commonly referred to as the "doctrine of necessity" or "necessity of payment", debtors may be authorized to pay a prepetition claim where such payment is essential to the continued operation of the debtor. *Ionosphere Clubs*, 98 B.R. at 176.

9. It is also well settled law in the Second Circuit that the debtor must demonstrate sound business judgment when using estate property outside the ordinary course of business

pursuant to § 363 of the Bankruptcy Code. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d. Cir. 1992).

10. In this case, the Court should deny the Critical Vendor Motion because the Debtors have not satisfied their burden of proving that the elements of the doctrine of necessity have been met by a preponderance of the evidence.

## ARGUMENT

11. First, the lack of schedules and statements obscure the Debtors' financial position and prevent the United States Trustee and other parties in interest from determining the value of Debtors' assets, the viability of Debtors' future operations and/or a sale of substantially all of its assets

12. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors'–in-possession bear a fiduciary duty to creditors, "holding the bankruptcy estate and operating the business for the benefit of creditors". *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Consistent with this duty, courts have authorized payment of prepetition obligations under section 363 of the Bankruptcy Code where a sound business purpose exists for doing so. *Ionosphere Clubs*, 98 B.R. at 175.

13. Here, the Debtors intend to discontinue operations, sell all of their businesses and in fact, already have a motion to sell their southern based assets, returnable on February 12, 2019. Such action is inconsistent with the business judgment standard under *Ionosphere Clubs* which provides that the debtor must "articulate some business justification, other than mere appeasement of major creditors". *Ionosphere Clubs*, 98 B.R. at 175.

14. The United States Trustee submits that approval of the Critical Vendor Motion would be highly prejudicial to creditors who stand to recoup little to nothing. Payment of such considerable sums to Standard Textile and ACCO is unfair and unrealistic.

15. As described above, the Debtors seek to assume prepetition installment agreements with Standard Textile and ACCO. Unfortunately, the Motion is devoid of enough information for the Court and parties to make a meaningful determination of whether the Critical Vendor Motion is appropriate under these circumstances

16. For instance, both prepetition agreements are, by their own terms, currently in default by reason of the bankruptcy filing, The Critical Vendor Motion is silent on whether the approval of the Critical Vendor Motion will cure the defaults and place the debtors in good standing under the agreements. Also, will the sale of the Centerstone's assets once again provide a basis for default under the agreements with Standard Textile and ACCO?

17. In that same vein, the prepetition agreement with Standard Textile provided a substantial discount of the accrued arrears. Pursuant to a promissory note executed between the debtors and Standard Textile, dated December 4, 2017 ("Standard Textile Note"), the prepetition arrears were reduced from $6,185,105.77 to $2,848,515.38. As of the petition date, the amount due under the Standard Textile Note was approximately $1,627,493.74. The Critical Vendor Motion is once again silent as to whether the unsecured claim due to Standard Textile in these cases will be limited to the remaining balance due on the Standard Textile Note or will it seek recovery of the arrears due prior to the execution of the Standard Textile Note.

18. The Critical Vendor Motion appears to seek ratification or perhaps assumption of the prepetition agreements between the Centerstone, Standard Textile and ACCO. If true, would this have the effect of sanctioning a post-petition assumption of these agreements, thereby granting Standard Textile and ACCO administrative priority in these chapter 11 cases?

19. Upon information and belief, after recent discussions with Debtors' counsel, Standard Textile will seek additional relief that is not contained in the Critical Vendor Motion. In particular, Standard Textile is requiring Centerstone to waive any preference recoveries in these cases. Said recoveries could approximate $180,000 or more.

20. Since this requirement was not timely noticed in the Critical Vendor Motion, it should not be considered. In addition, this demand, without a recognizable benefit to the estates, is unwarranted. Finally, such a request should not be determined until after the formation and representation of an unsecured creditors committee and the filing of schedules in these cases.

**WHEREFORE** the United States Trustee requests that the Court deny the Critical Vendor Motion, together with any other and further relief the Court may deem just and necessary.

Dated: January 9, 2019
Utica, New York

                Respectfully submitted,
                **WILLIAM K. HARRINGTON**
                **UNITED STATES**
                **TRUSTEE FOR REGION 2**

                By: /   /s/ Guy A. Van Baalen
                Guy A. Van Baalen
                Assistant United States Trustee
                105 U.S. Courthouse & Federal Building
                Utica, New York 13501
                (315) 793-8191