So Ordered.

Signed this 15 day of January, 2019.

_____

Margaret Cangilos-Ruiz

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) 18-31754 (main case) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) 18-31753 |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) 18-31755 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF | ) 18-31756 |
| ATLANTA, LLC, and | ) |
| ALLIANCE LTS WINCHESTER, LLC | ) 18-31757 |
| d/b/a Clarus Linen Systems[1], | ) |
| | ) Chapter 11 Cases |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |

**ORDER PURSUANT TO SECTIONS 363 AND 105 OF THE BANKRUPTCY
CODE: (A)(1) SETTING DEADLINE AND APPROVING REQUIREMENTS AND
PROCEDURES FOR INTERESTED PARTIES TO SUBMIT COMPETING BIDS FOR
SUBSTANTIALLY ALL ASSETS OF DEBTOR ALLIANCE LAUNDRY & TEXTILE
SERVICE, LLC, d/b/a CLARUS LINEN SYSTEMS; (2) APPROVING FORM OF
PURCHASE AGREEMENT; (3) SCHEDULING AN AUCTION; (4) SETTING**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

3242125.9

**HEARING DATE TO APPROVE SALE OF ASSETS TO SUCCESSFUL BIDDER; AND
(5) APPROVING PROCEDURES WITH RESPECT TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (B) APPROVING FORM AND MANNER OF NOTICE**

Upon consideration of the motion (the "Motion")[2] filed by debtor Alliance Laundry &

Textile Services, LLC, d/b/a Clarus Linen Systems, a debtor and debtor in possession (the

"Debtor" or "Alliance") in the captioned cases, for entry of an order pursuant to sections 105 and

363 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 6004:

(A)(i) authorizing the sale of substantially all of Alliance's assets (the "Purchased Assets"), free

and clear of all liens, claims, interests and encumbrances, subject to the terms of the Asset

Purchase Agreement and subject to higher and/or better offers; (ii) authorizing and approving the

Asset Purchase Agreement with Crown Health Care Laundry Services, LLC ("Purchaser"); and

(iii) authorizing Alliance to consummate all transactions related to the proposed sale;

(B) approving bidding procedures and other related relief; and (C) authorizing Alliance to

assume certain executory contracts and unexpired leases and assign such contracts and leases to

Purchaser pursuant to 11 U.S.C. §§ 365(a), (b) and (c) and Bankruptcy Rule 6006(e)(1) (the

"Assigned Contracts"); and upon review and consideration of (i) the Motion, (ii) the objections,

if any, filed with respect thereto, (iii) arguments of counsel and evidence proffered or adduced at

the hearing on the Motion held on January 11, 2019 (the "Bid Procedures Hearing"), and (iv) the

docket and proceedings in the above-captioned cases (the "Chapter 11 Cases"); and it appearing

that the relief requested in the Motion is in the best interests of Alliance, its estate, creditors, and

other parties in interest; and good and sufficient cause appearing therefor, it is hereby:

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, Purchase
Agreement and/or the Bidding Procedures, as applicable.

3242125.9

**FOUND AND DETERMINED THAT:**[3]

A.    This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).   Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein.   A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

C.    Alliance has articulated good and sufficient business reasons for this Court to approve the bidding procedures attached hereto as **Schedule 1** (the "Bidding Procedures") and the establishment of procedures to fix the cure amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Assigned Contracts to the Successful Bidder.

D.    The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

E.    The Notice of the Auction and Sale Hearing attached hereto as **Schedule 2** and the Notice of Assumption and Assignment attached hereto as **Schedule 3** provide all interested parties with timely and proper notice of the Auction, the sale of the Purchased Assets, the Bidding Procedures and the procedures governing Alliance's assumption and assignment of the Assigned Contracts to the Successful Bidder.

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.  *See* Bankruptcy Rule 7052.

3242125.9

F.     The entry of this Order (the "Bidding Procedures Order") is in the best interests of Alliance, its estate, creditors and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted as set forth herein.

2.     All objections to the Motion relating to the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.     The form of Amended and Restated Asset Purchase Agreement attached hereto as **Exhibit A** (the "Purchase Agreement") is hereby approved. Purchaser is hereby designated as the stalking-horse bidder for the Purchased Assets, the Purchase Agreement is hereby deemed a Qualified Bid for the Purchased Assets and Purchaser is hereby deemed a Qualified Bidder for the Purchased Assets.

4.     HSBC Bank USA, National Association ("HSBC Bank") is also hereby deemed a Qualified Bidder for the Purchased Assets.

5.     The Bidding Procedures, in substantially the form attached hereto as **Schedule 1**, are hereby incorporated herein and approved, and shall apply with respect to the sale of the Purchased Assets. Alliance is authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

6.     Notwithstanding the inclusion of the Atlanta PP&E as an Excluded Asset on Appendix 1.1(b) of the Purchase Agreement as of the Execution Date, Alliance shall have the option to designate the Atlanta PP&E as a Purchased Asset by delivering written notice to the Notice Parties (as hereafter defined) no later than five days prior to the Bid Deadline.

3242125.9

7.     As further described in the Bidding Procedures, the deadline for submitting bids for the Purchased Assets (the "Bid Deadline") is **February 4, 2019 at 12:00 noon (prevailing Eastern Time)**. No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures, or those requirements which may be modified by Alliance upon consultation with HSBC Bank and the Committee, except for HSBC Bank which is automatically deemed a Qualified Bidder.

8.     Alliance may sell the Purchased Assets by conducting an Auction in accordance with the Bidding Procedures. If more than one Qualified Bid is timely received by Alliance in accordance with the Bidding Procedures, the Auction shall take place on **February 7, 2019 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York, or such other place and time as Alliance shall notify all Qualified Bidders and other invitees.

9.     Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

10.    The Sale Hearing shall be held before this Court on **February 13, 2019 at 12:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel and interested parties may be heard.

11.    The Notice of Auction and Sale, in substantially the form attached hereto as **Schedule 2**, is hereby approved. On or before **5:00 p.m. (prevailing Eastern Time) on January 17, 2019**, Alliance will cause (a) a copy of the Notice of Auction and Sale Hearing and (b) a copy of the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) counsel for Purchaser; (ii) the Office of the United States Trustee for the Northern

3242125.9

District of New York; (iii) counsel for HSBC Bank; (iv) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (v) all parties to the Assigned Contracts; (vi) all required governmental agencies; (vii) all persons known or reasonably believed to have asserted any lien, claim encumbrance, right of first refusal or other interest in or upon any of the Purchased Assets, (viii) all parties who have expressed an interest in the Purchased Assets during the past seven months the Purchased Assets have been marketed; and (ix) all entities known by Alliance to have filed a notice of appearance or a request for receipt of chapter 11 notices and pleadings filed in the Chapter 11 Cases (the "Notice Parties").

12.    On or before **5:00 p.m. (prevailing Eastern Time) on January 17, 2019**, Alliance will cause a copy of the Notice of Auction and Sale to be served upon all known creditors of Alliance in the Chapter 11 Cases.

13.    The Notice of Assignment and Assumption, in substantially the form attached hereto as **Schedule 3**, is hereby approved.  On or before **5:00 p.m. (prevailing Eastern Time) on January 17, 2019**, Alliance shall serve by first class mail, the Notice of Assumption and Assignment on all non-debtor parties to the Assigned Contracts.  The Notice of Assumption and Assignment shall identify the cure amounts that Alliance believes must be paid to cure all prepetition defaults under the Assigned Contracts (the "Cure Amounts").  In addition, if Alliance identifies additional executory contracts or unexpired leases that might be assumed by Alliance and assigned to the Successful Bidder not set forth in the original Notice of Assumption and Assignment, Alliance shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

3242125.9

14.    Unless the non-debtor party to an Assigned Contract identified in the Notice of Assumption and Assignment or any Supplemental Notice of Assumption and Assignment files an objection (the "Cure Amount/Assignment Objection") to (a) its scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Assigned Contract by the later of (i) **4:00 p.m. (prevailing Eastern Time) on February 6, 2019** or (ii) five (5) days after service of the relevant Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received on the same day by (i) counsel to Alliance; (ii) the Office of the United States Trustee for the Northern District of New York; (iii) counsel for HSBC Bank; (iv) counsel to Purchaser; and (v) counsel to the Committee, then such non-debtor party (a) will be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts due with respect to such Assigned Contract and Alliance shall be entitled to rely solely upon the Cure Amount, and (b) if the Assigned Contract is identified by the Successful Bidder and/or Backup Bidder as an Asset to be purchased and/or assigned, will be deemed to have consented to the assumption, assignment and/or transfer of such Assigned Contract and will be forever barred and estopped from asserting or claiming against Alliance, the Successful Bidder and/or the Backup Bidder, or any other assignee of the relevant executory contract or unexpired lease that any additional amounts are due or defaults exist, or prohibitions or conditions to assumption, assignment and/or transfer exist or must be satisfied, under such Assigned Contract. Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Assigned Contract, based solely on the issue of whether the Successful Bidder or Backup Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

3242125.9

15.     If a Cure Amount/Assignment Objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.   Upon receipt of a Cure Amount/Assignment Objection, Alliance is authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Assigned Contract without further order of the Court.   Alliance is also hereby authorized to file a response to any Cure Amount/Assignment Objection by **4:00 p.m. (prevailing Eastern Time) on February 8, 2019**.   In the event that Alliance and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, the Court will resolve any such Cure Amount/Assignment Objection at a hearing to be held at **12:00 p.m. (prevailing Eastern Time) on February 13, 2019** or on such later date as the Court may determine.

16.     The Successful Bidder or the Backup Bidder, as the case may be, may determine to exclude any executory contract or unexpired lease from the list of Purchased Assets to be assumed and sold or assigned at any time prior to the closing of the sale of the Purchased Assets. The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within five (5) business days following the closing of the sale of the Purchased Assets.

17.     To the extent that a Cure Amount/Assignment Objection remains unresolved as of the Bid Deadline, and the Bankruptcy Court subsequently determines that the Cure Amount for the subject Assigned Contract is greater than that set forth in the Cure Amounts identified in the Notice of Assumption and Assignment, the Successful Bidder may elect to reclassify such Assigned Contract as an Excluded Contract at any time prior to the earlier to occur of the closing

of the sale of Purchased Assets or the day that is five (5) business days following such determination by the Bankruptcy Court.

18.    Immediately following the conclusion of the Auction for the Purchased Assets, Alliance shall serve (i) a notice identifying the Successful Bidder and Backup Bidder, and (ii) financial information concerning the Successful Bidder's and Backup Bidder's ability to provide adequate assurance of future performance of such Assigned Contracts, to the non-debtor parties to the Assigned Contracts that have been identified as Purchased Assets to be sold and/or assigned in connection with such Successful Bid and Backup Bid.  The non-debtor parties to the Assigned Contracts will have until **12:00 p.m. (prevailing Eastern Time) on February 12, 2019** (the "Adequate Assurance Objection Deadline") to file a written objection to the assumption, assignment and/or transfer of such Assigned Contract solely on the issue of whether the Successful Bidder and/or Backup Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.  Any such objections shall be heard at the Sale Hearing.

19.    No later than **12:00 p.m. (prevailing Eastern Time) on February 11, 2019**, Alliance shall file with the Court a Report setting forth a summary of the Auction Sale, if held, the marketing efforts undertaken by Alliance with respect to the Purchased Assets and the proposed allocation of the sale proceeds

20.    Any objections to the sale of the Purchased Assets, or to the balance of the relief requested in the Motion and not granted in this Bidding Procedures Order, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Northern District of New York, on or before **12:00 p.m. (prevailing Eastern Time) on February 12, 2019**; and (d) be served so as to be received on the

same day, upon (i) counsel for Alliance; (ii) counsel for Purchaser; (iii) the Office of the United States Trustee for the Northern District of New York; (iv) counsel for HSBC Bank; and (v) counsel to the Committee appointed in these cases. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing. All objections to the sale of the Purchased Assets previously filed with this Court, and not resolved in this Order, are preserved until the Sale Hearing.

21.    The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

22.    Except as otherwise provided in this Bidding Procedures Order, Alliance reserves the right as it may reasonably determine to be in the best interests of its estate, in consultation with HSBC Bank and the Committee, subject to conformity with the Bidding Procedures to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of Alliance and its estate; (e) remove some of the Purchased Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as Alliance, in consultation with HSBC Bank and the Committee, may determine to be in the best interest of its estate or to withdraw the Motion at any time with or without prejudice; provided, that any

3242125.9

exercise by Alliance of its rights hereunder shall not alter or modify the terms of the Purchase
Agreement, including its stated conditions for Purchaser to close.

23.    Alliance is hereby authorized to take such steps and incur and pay such
expenditures as may be necessary or appropriate to effectuate the terms of this Bidding
Procedures Order, subject to and in accordance with the terms of the Interim Order
(I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Super-Priority, Senior
Secured Basis and (B) Use Cash Collateral, (II) Granting (A) Liens and Super-Priority Claims
and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying the Automatic Stay,
(IV) Scheduling a Final Hearing, and (V) Granting Related Relief and any supplemental interim
or final orders entered with respect thereto.

24.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and
this Bidding Procedures Order shall be effective immediately upon its entry.

25.    This Court shall retain jurisdiction over any matters related to or arising from the
implementation of this Order.

# # #

3242125.9

## Schedule 1

### Bidding Procedures

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) | 18-31754 (main case) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) | 18-31753 |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) | 18-31755 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF | ) | 18-31756 |
| ATLANTA, LLC, and | ) | |
| ALLIANCE LTS WINCHESTER, LLC | ) | 18-31757 |
| *d/b/a Clarus Linen Systems*[1], | ) | |
| | ) | Chapter 11 Cases |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

## BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF ALLIANCE LAUNDRY & TEXTILE SERVICES, LLC, d/b/a CLARUS LINEN SYSTEMS

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Proposed Sale") of substantially all of the assets (the "Purchased Assets") owned by debtor Alliance Laundry & Textile Service, LLC, d/b/a Clarus Linen Systems ("Alliance"). The Proposed Sale is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure. All capitalized terms shall have the meanings ascribed to them in that certain Asset Purchase Agreement between Alliance and Crown Health Care Laundry Services, LLC (the "Purchase Agreement") dated December 19, 2018 (the "Execution Date"), approved by the Court in connection with the Proposed Sale or the Sale Motion (as defined herein).

On December 21, 2018, Alliance filed the *Motion by Debtor Alliance Laundry & Textile Services, LLC, d/b/a Clarus Linen Systems for Orders (A) (i) Authorizing the Sale of Substantially All of Alliance's Assets, Free and Clear of All Liens, Claims, Interests and Encumbrances, Subject to the Terms of the Asset Purchase Agreement and Subject to Higher*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

*and/or Better Offers; (ii) Authorizing and Approving the Form of a Certain Asset Purchase Agreement with Crown Health Care Laundry Services, LLC; and (iii) Authorizing Alliance to Consummate all Transactions Related to the Proposed Sale; (B) Approving Bidding Procedures and Other Related Relief; and (C) Authorizing Alliance to Assume Certain Executory Contracts and Unexpired Leases and Assign Such Contracts and Leases to Purchaser Crown Health Care Laundry Services, LLC* (the "Sale Motion").

These Bidding Procedures describe, among other things, the Purchased Assets available for sale, the form of bids and the manner in which bidders and bids become qualified, the coordination of diligence efforts among bidders, the conduct of the Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein) and the Court's approval thereof (the "Bidding Process"). The Bidding Procedures were developed in consultation with Alliance's professionals. Alliance will continue to consult with its professionals, as well as with its secured creditor, HSBC Bank USA, National Association ("HSBC Bank"), and other parties in interest, throughout the Bidding Process. In the event that Alliance and any such constituents disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court shall have jurisdiction to hear and resolve such dispute.

## Purchased Assets to be Sold

The Purchased Assets to be sold include all of Alliance's right, title and interest in, to and under, free and clear of all Liabilities (other than Assumed Liabilities) and Encumbrances (other than Permitted Encumbrances), all of Alliance's assets, properties, rights and interests of any nature whatsoever used in or related to the operation of its business, excluding those assets identified as "Excluded Assets" in Section 1.1(b) of the Purchase Agreement; provided, that notwithstanding the inclusion of the Atlanta PP&E as an Excluded Asset, Alliance shall have the option to designate the Atlanta PP&E as a "Purchased Asset" by delivering written notice to the Notice Parties (hereafter defined) no later than five days prior to the Bid Deadline. Excluded Assets are specifically listed on Appendix 1.1(b) of the Purchase Agreement and include, but are not limited to, Alliance's real estate leases and all other Contracts not specifically designated by the Purchaser as Assigned Contracts pursuant to the terms of the Purchase Agreement. The foregoing summary description of the Purchased Assets and Excluded Assets is provided for the convenience of Potential Bidders and is in all regards qualified by and subject to the terms of the Purchase Agreement.

The "Notice Parties" shall include (i) counsel for Purchaser; (ii) the Office of the United States Trustee for the Northern District of New York; (iii) counsel for HSBC Bank; (iv) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (v) all parties to the Assigned Contracts; (vi) all required governmental agencies; (vii) all persons known or reasonably believed to have asserted any lien, claim encumbrance, right of first refusal or other interest in or upon any of the Purchased Assets, (viii) all parties who have expressed an interest in the Purchased Assets during the past seven months the Purchased Assets have been marketed; and (ix) all entities known by Alliance to have filed a notice of appearance or a request for receipt of chapter 11 notices and pleadings filed in the Chapter 11 Cases.

Alliance shall retain all rights to any Purchased Assets that are not subject to a bid accepted by Alliance and approved by the Bankruptcy Court at the Sale Hearing (as defined herein).

All of the Purchased Assets designated as such by a Successful Bidder will be sold together as one lot.  The sale of the Purchased Assets will be conducted on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Alliance, its agents or Alliance's bankruptcy estate, except to the extent set forth in the Purchase Agreement, as approved by the Bankruptcy Court.  Except as otherwise provided in such approved Purchase Agreement or in the Bankruptcy Court's order approving the same, the Purchased Assets shall be sold to the Successful Bidder free and clear of all liens, claims, interests and encumbrances thereon (collectively, the "Liens"), with such Liens, including, but not limited to, those Liens in favor of HSBC Bank, to attach solely to the net proceeds of the sale.

## Participation Requirements

In order to participate in the Bidding Process, a person (a "Potential Bidder") must be a "Qualified Bidder."  A Qualified Bidder is (A) Crown Health Care Laundry Services, LLC ("Crown"), and (B) HSBC Bank (provided, however, that HSBC Bank shall refrain from credit bidding so long as Crown's offer (as set forth in the Purchase Agreement) remains open and represents, in HSBC Bank's reasonable judgment, the highest or best bid received for the Purchased Assets), and (C) a person or group of persons:

(a)  who has delivered to Alliance an executed confidentiality agreement in form and substance acceptable to Alliance; and

(b)  who has delivered to Alliance on or before the Bid Deadline (defined below): (i) a Qualified Bid (defined below) and (ii) satisfactory evidence of committed financing or current audited financial statements or other form of financial and/or credit-quality disclosures reasonably sufficient to ascertain that the Potential Bidder has the financial wherewithal and liquidity to consummate a transaction pursuant to its Qualified Bid and any subsequent bid that the Potential Bidder may place at the Auction.

Alliance, in consultation with HSBC Bank, shall determine whether a bid qualifies as a "Qualified Bid".  To constitute a Qualified Bid, a bid must be a written irrevocable offer from a Qualified Bidder and:

(a)  propose a purchase price to be paid in cash, cash equivalents or readily marketable securities acceptable in the discretion of Alliance;

(b)  propose a purchase price that exceeds Crown's bid, calculated pursuant to the Purchase Price Methodology set forth in Appendix 2.1 of the Purchase Agreement, by (a) the amount of the Breakup Fee ($120,000), plus (b) $50,000.00 (the "Initial Qualified Overbid"), as determined by Alliance in consultation with HSBC Bank;

(c)  provide Alliance with a deposit in an amount equal to 10% of its Initial Qualified Overbid (the "Bid Deposit");

(d)  be accompanied by a signed Purchase Agreement, together with a copy marked to show any changes from the form of Purchase Agreement approved by the Court and attached as Exhibit A to the Order approving these Bidding Procedures;

(e)  contain a list of Alliance's executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from Alliance and, if the Bid is conditioned on the assumption and assignment of such executory contracts and/or unexpired leases, provide evidence of the Potential Bidder's ability to provide adequate assurance of future performance of such contracts or leases;

(f)  provide satisfactory evidence of committed financing or current audited financial statements or other form of financial and/or credit-quality disclosure reasonably sufficient to ascertain such Potential Bidder's ability to consummate the sale and not be conditioned on obtaining financing or on the outcome of any due diligence;

(g)  not request or entitle the Potential Bidder to any break-up fee, expense reimbursement or similar type of payment;

(h)  fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid and the complete terms of any such participation;

(i)  be accompanied by a letter from the Potential Bidder stating that (i) the bidder is prepared to enter into and consummate the proposed transaction in accordance with the terms of the Purchase Agreement after approval by the Bankruptcy Court of the Sale Order, subject to receipt of any applicable governmental or regulatory approval, (ii) the Potential Bidder will make all necessary federal, state or local filings, pay all costs and expenses associated with such filings (including the costs and expenses of Alliance), and (iii) such Potential Bidder's offer is irrevocable until the date that is twenty (20) days after the conclusion of the Sale Hearing with respect to the Purchased Assets unless such bidder is the Backup Bidder, and then the offer shall remain irrevocable until the closing of the sale of the Purchased Assets; and

(j)  be delivered to counsel for Alliance, HSBC Bank and the Committee on or before the Bid Deadline.

As promptly as practicable after a Potential Bidder delivers a bid, Alliance shall determine, in consultation with HSBC Bank and the Committee, and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder with respect to the Purchased Assets. Alliance may waive any requirements for Qualified Bidders or Qualified Bids.

## Bid Deadline

A Potential Bidder that desires to make a bid shall deliver (i) written and electronic copies of its bid and (ii) its Bid Deposit so that they are actually received not later than **12:00 noon (prevailing Eastern Time) on February 4, 2019** (the "Bid Deadline") by (i) Alliance's counsel, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202 (Attn: Stephen A. Donato, Esq., sdonato@bsk.com and Camille W. Hill, Esq., chill@bsk.com); (ii) HSBC Bank's counsel, Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York 14203-2887 (Attn: William J. Brown, Esq., wbrown@phillipslytle.com and Angela Z. Miller, Esq., amiller@phillipslytle.com); and (iii) the Committee's counsel, CKR Law LLP,

4

1330 Avenue of the Americas, 14th Floor, New York, New York 10019 (Attn: David M. Banker, Esq., dbanker@ckrlaw.com and Gilbert R. Saydah, Jr., Esq., gsaydah@ckrlaw.com). Alliance may extend the Bid Deadline once or successively, but is not obligated to do so. If the Bid Deadline is extended, Alliance shall promptly notify all known Potential Bidders of such extension.

### Due Diligence

Upon a Potential Bidder's execution of a confidentiality agreement in form and substance approved by Alliance, each Potential Bidder shall be afforded reasonable due diligence access with respect to the Purchased Assets prior to the Bid Deadline (the "Due Diligence Period"). Neither Alliance nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets at any time prior to or after the Due Diligence Period. Due diligence access may include access to Alliance's online data room, management presentations as may be scheduled by Alliance, on-site inspections of the Purchased Assets and such other matters which a Potential Bidder may request and as to which Alliance may agree. Alliance will designate employees or other representatives to coordinate reasonable requests for additional information and due diligence access from Potential Bidders. Alliance may, in its discretion, coordinate diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Purchased Assets provided by anyone other than Alliance or its representatives.

Each Potential Bidder shall comply with all reasonable requests for additional information by Alliance or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Potential Bidder to comply with requests for additional information may be a basis for Alliance to determine, in consultation with HSBC Bank and the Committee, that a bid made by the Potential Bidder is not a Qualified Bid.

By participating in the Auction, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets and to conduct any and all due diligence regarding the Purchased Assets prior to submitting its bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection with the Bidding Process except as expressly stated in the relevant Purchase Agreement submitted with its Qualified Bid.

### Auction

If two or more Qualified Bids with respect to the Purchased Assets have been received on or prior to the Bid Deadline, Alliance shall conduct an auction (the "Auction") with respect to the Purchased Assets. Only Qualified Bidders who timely submit a Qualified Bid will be eligible to participate in the Auction. Notwithstanding the foregoing, an authorized representative of and counsel for HSBC Bank may attend the Auction. The Auction shall take place on **February 7,**

**2019, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, or at such other time and place as Alliance may notify all Qualified Bidders and parties in interest. Alliance shall provide copies of all Qualified Bids to counsel for HSBC Bank, the Office of the United States Trustee for the Northern District of New York, counsel for the Committee, and all other Qualified Bidders at least one (1) business day prior to the Auction.

At the commencement of the Auction, Alliance's representatives will announce the highest or otherwise best bid for the Purchased Assets (the "Starting Qualified Bid"), determined in consultation with HSBC Bank, and the overall consideration value ascribed to such bid (the "Bid Value"). Each Qualified Bidder present at the Auction will be permitted to increase its Initial Qualified Overbid by at least Fifty Thousand Dollars ($50,000.00) (a "Qualified Overbid"); provided, that Crown shall have the right, but not the obligation, in its sole and absolute discretion, to match Qualified Overbids made by any other Qualified Bidder (the "Matching Rights"). All subsequent bids must be in Bidding Increments of at least $50,000.00. During the course of the Auction, Alliance, in consultation with HSBC Bank and the Committee, will inform the participants which Qualified Overbid reflects the then-highest or otherwise best offer for the Purchased Assets and the Bid Value ascribed thereto. Other than bids of Crown made pursuant to its Matching Rights, Alliance shall not consider any subsequent bid received at the Auction unless the Bid Value of such bid exceeds the Bid Value of the Starting Qualified Bid or the then-highest Qualified Overbid by the Bidding Increment.

The Auction may be adjourned from time to time by Alliance, but it shall not be concluded until each Qualified Bidder has had an opportunity to submit a Qualified Overbid with knowledge of the Bid Value ascribed to the Starting Qualified Bid or the then-highest Qualified Overbid, as applicable, or match, in the case of Crown, the Starting Qualified Bid or the then-highest Qualified Overbid, as applicable.

At the conclusion of the Auction, Alliance will announce the Qualified Bid which it deems, in consultation with HSBC Bank and the Committee, to represent the highest or otherwise best bid for the Purchased Assets (such bid being the "Successful Bid" and the Qualified Bidder submitting such bid, the "Successful Bidder") and the next highest or otherwise best bid (the "Backup Bid" and the party submitting such bid, the "Backup Bidder"). The Backup Bid shall remain in full force and effect until the closing of the Sale of the Purchased Assets to the Successful Bidder. Alliance shall require, as a condition precedent to declaring any bid the Successful Bid or the Backup Bid, that the Bid Deposits of the Successful Bidder and Backup Bidder be retained by Alliance pending the closing of the sale of the Purchased Assets. Any Bid Deposit not applied in satisfaction of the obligations of the Successful Bidder or Backup Bidder in connection with their respective bids shall be returned not later than five (5) business days following the closing of the sale of the Purchased Assets.

## The Sale Hearing

A hearing to approve the Proposed Sale (the "Sale Hearing") is presently scheduled to take place on **February 13, 2019 at 12:00 p.m. (prevailing Eastern Time)** before the Honorable Margaret Cangilos-Ruiz, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of New York, United States Courthouse, James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York. At the Sale Hearing,

Alliance will seek entry of an order in form and content acceptable to HSBC Bank and the Committee, among other things, designating the Successful Bidder and the Backup Bidder, authorizing and approving the sale of the Purchased Assets to the Successful Bidder, as determined by Alliance in consultation with HSBC Bank and the Committee and in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the relevant Purchase Agreement submitted by the Successful Bidder (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court at the Sale Hearing.

Any objections to the sale of the Purchased Assets must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Northern District of New York, on or before **12:00 p.m. (prevailing Eastern Time) on February 12, 2019**; and (d) be served so as to be received by the deadline, upon (i) counsel for Alliance; (ii) counsel for Purchaser; (iii) the Office of the United States Trustee for the Northern District of New York; (iv) counsel for HSBC Bank; and (v) counsel to the Committee. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved sale, the Backup Bid shall be deemed to be the Successful Bid with respect to the Purchased Assets and Alliance shall effectuate the sale of Purchased Assets to the Backup Bidder without further order of the Bankruptcy Court, and the Bid Deposit of the non-closing Successful Bidder shall be forfeited, if the failure to close is the result of a breach or failure to perform on the part of the Successful Bidder. Alliance shall retain all rights to the Purchased Assets that are not subject to a bid accepted by Alliance and approved by the Bankruptcy Court. If an Auction is held, Alliance shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid (or the Backup Bid) at the Auction, (ii) definitive documentation has been executed in respect thereof, and (iii) the Bankruptcy Court has entered the Sale Order.

## Sale Closing

The closing of the Sale of the Purchased Assets to the Successful Bidder (or Backup Bidder) shall occur (i) no later than sixty (60) days from the Execution Date of the Purchase Agreement executed by Crown if Crown is the deemed the Successful Bidder, or (ii) within ten (10) business days following the entry of the Sale Order if a party other than Crown is deemed the Successful Bidder (or Backup Bidder), or (iii) such other later date as is mutually agreed by Alliance, HSBC Bank, and the Successful Bidder (or Backup Bidder) in a writing dated prior to the otherwise-required Closing date.

## Reservation of Rights

Alliance reserves all rights, after consultation with HSBC Bank and the Committee, to terminate the Bidding Process at any time if Alliance determines, in its business judgment, that the Bidding Process will not maximize the value of the Purchased Assets. In addition, Alliance reserves all rights not to submit any bid which is not acceptable to Alliance, HSBC Bank and the Committee for approval to the Bankruptcy Court. Alliance shall further have the right to amend the rules set forth herein for the Bidding Process or impose such other terms and conditions for the Bidding Process which Alliance determines, in its business judgment is necessary to fulfill its

fiduciary duties, provided that such modifications are not inconsistent with any Bankruptcy Court order or unacceptable to HSBC Bank and the Committee; however, Alliance recognizes that a material modification may, under the Purchase Agreement, relieve Crown of any obligation to proceed with the Auction or, if it is the Successful Bidder, to close the sale of the Purchased Assets, and Crown's ability to terminate the Purchase Agreement in accordance with its terms is fully preserved. Without limiting the generality of the foregoing, Alliance may reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in Alliance's discretion, and in consultation with HSBC Bank and the Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of Alliance, its estate and creditors.

## Schedule 2

**Notice of Auction and Sale Hearing**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) | 18-31754 (main case) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) | 18-31753 |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) | 18-31755 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF | ) | 18-31756 |
| ATLANTA, LLC, and | ) | |
| ALLIANCE LTS WINCHESTER, LLC | ) | 18-31757 |
| *d/b/a Clarus Linen Systems*[1], | ) | |
| | ) | Chapter 11 Cases |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

## NOTICE OF AUCTION AND SALE HEARING

*PLEASE TAKE NOTICE OF THE FOLLOWING:*

      1.      On December 21, 2018, debtor Alliance Laundry & Textile Service, LLC, d/b/a Clarus Linen Systems ("Alliance") filed the *Motion by Debtor Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems for Orders (A) (i) Authorizing the Sale of Substantially All of Alliance's Assets, Free and Clear of All Liens, Claims, Interests and Encumbrances, Subject to the Terms of the Asset Purchase Agreement and Subject to Higher and/or Better Offers; (ii) Authorizing and Approving the Form of a Certain Asset Purchase Agreement with Crown Health Care Laundry Services, LLC; and (iii) Authorizing Alliance to Consummate all Transactions Related to the Proposed Sale; (B) Approving Bidding Procedures and Other Related Relief; and (C) Authorizing Alliance to Assume Certain Executory Contracts and Unexpired Leases and Assign Such Contracts and Leases to Purchaser Crown Health Care Laundry Services, LLC* (the "Sale Motion").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and/or the Bidding Procedures Order, as applicable.

2.      Alliance is seeking to sell substantially all of its assets (the "Purchased Assets") to the Successful Bidder or Backup Bidder.[3]  Approval of the sale of Purchased Assets to either the Successful Bidder or Backup Bidder may result in, among other things, the assumption, assignment and/or transfer by Alliance of certain executory contracts and leases (the "Assigned Contracts").  If you are a party to an Assigned Contract with Alliance, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to an Assigned Contract.

3.      On January ___, 2019, the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") entered an order approving bidding procedures and granting other relief related to Alliance's proposed sale (the "Bidding Procedures Order"). The Bidding Procedures approved by the Court are attached as Schedule 1 to the Bidding Procedures Order.  Pursuant to the Bidding Procedures Order, if Alliance receives more than one Qualified Bid for the Purchased Assets, an Auction for the Purchased Assets shall take place on **February 7, 2019, at 10:00 a.m.  (prevailing Eastern Time)** at the offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures by no later than **February 4, 2019 at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit its competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.      The Sale Hearing to consider approval of the sale of the Purchased Assets to the Successful Bidder or Backup Bidder, free and clear of all liens, claims and encumbrances, will be held before the Honorable Margaret Cangilos-Ruiz, Chief United States Bankruptcy Judge for the Northern District of New York, or such other judge as may be sitting in her stead in the United States Courthouse, James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York on **February 13, 2019 at 12:00 p.m. (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.      Objections, if any, to the sale, or the relief requested in the Sale Motion (other than with respect to the assumption and assignment of the Assigned Contracts which are the subject of a separate notice) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of New York, on or before **February 12, 2019**; and (d) be served so as to be received no later than 12:00 p.m. (prevailing Eastern Time) on the same day, upon (i) counsel to Alliance; (ii) the Office of the United States Trustee for the Western District of New York (iii) counsel to Purchaser; (iv) counsel for HSBC Bank USA, National Association; and (v) counsel to any committee(s) appointed in these cases. UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE

---

[3] The Sale Motion identifies Crown Health Care Laundry Services, LLC ("Crown") as the "stalking horse" bidder and attaches a copy of an Asset Purchase Agreement between Alliance and Crown contemplating a sale of the Purchased Assets to Crown.

BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF
REQUESTED IN THE SALE MOTION WITHOUT FURTHER HEARING OR NOTICE.

      6.     This notice is subject to the fuller terms and conditions of the Sale Motion, the
Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any
conflict and Alliance encourages parties in interest to review such documents in their entirety.
Parties interested in receiving more information regarding the sale of the Purchased Assets or
obtaining a copy of any of the foregoing documents may make a written request to counsel for
the Debtors, Bond Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York, 13202,
Attn: Stephen A. Donato, Esq. and Camille W. Hill, Esq.  In addition, copies of the Sale Motion,
the Bidding Procedures Order, the Bidding Procedures and this Notice can be found on the
Bankruptcy Court's electronic case management website, http://ecf.nynb.uscourts.gov and are on
file with the Clerk of the Bankruptcy Court.

Dated:   January ____, 2019
           Syracuse, New York          BOND, SCHOENECK & KING, PLLC

                            By:     _____
                                  Stephen A. Donato, Bar Roll No. 101522
                                Camille W. Hill, Bar Roll No. 501876
                                Office and Post Office Address:
                                One Lincoln Center
                                Syracuse, New York 13202
                                Tel: (315) 218-8000
                                Fax: (315) 218-8100
                                Email:  sdonato@bsk.com
                                      chill@bsk.com

                                *Proposed Counsel to the Debtors and Debtors in
Possession*

## <u>Schedule 3</u>

## Notice of Assumption and Assignment

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) 18-31754 (main case) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) 18-31753 |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) 18-31755 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF | ) 18-31756 |
| ATLANTA, LLC, and | ) |
| ALLIANCE LTS WINCHESTER, LLC | ) 18-31757 |
| *d/b/a Clarus Linen Systems*[1], | ) |
| | ) Chapter 11 Cases |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |

## NOTICE OF ASSUMPTION AND ASSIGNMENT

*PLEASE TAKE NOTICE OF THE FOLLOWING:*

1.      On January ___, 2019, the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"),[2] approving, among other things, the fixing of cure amounts (the "Cure Amounts") related to the potential assumption, assignment and/or transfer by Alliance Laundry & Textile Services, LLC, d/b/a Clarus Linen Systems ("Alliance") of certain executory contracts, unexpired leases, and other agreements (the "Assigned Contracts") listed on **Exhibit A** annexed hereto in connection with the proposed sale of certain of Alliance's assets (the "Purchased Assets").    Alliance intends to assume, assign, and/or transfer some or all of the Assigned Contracts to the Successful Bidder or Backup Bidder for the Purchased Assets as determined pursuant to the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Schedule 1.

2.      Alliance believes that any and all defaults (other than the filing of these Chapter 11 Cases) and actual pecuniary losses under the Assigned Contracts can be cured by the payment of the Cure Amounts listed on **Exhibit A** annexed hereto.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

3242282.7

3.      Any objections to (i) the assumption, assignment or transfer of an Assigned Contract, or (ii) the amount asserted as the Cure Amount (each, a "Cure Amount/Assignment Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Assigned Contract (the "Claimed Cure Amount").  In addition, if Alliance identifies additional Assigned Contracts that might be assumed by Alliance and assigned to the Successful Bidder or Backup Bidder which are not set forth in this Notice of Assumption and Assignment, Alliance shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional Assigned Contracts.

4.      To be considered a timely Cure Amount/Assignment Objection, a Cure Amount/Assignment Objection must be filed with the Bankruptcy Court and served upon (i) counsel to Alliance; (ii) the Office of the United States Trustee for the Northern District of New York; (iii) counsel for HSBC Bank; (iv) counsel to Purchaser; and (v) counsel to the Official Committee of Unsecured Creditors, by the later of (a) **4:00 p.m. (prevailing Eastern time) on February 6, 2019** or (b) five (5) days after service of the relevant Supplemental Notice of Assumption and Assignment.

5.      If a Cure Amount/Assignment Objection is timely filed, Alliance may resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Assigned Contract without further order of the Court.  Alliance may also file a written response to the Cure Amount/Assignment Objection with the Bankruptcy Court no later than **4:00 p.m. (prevailing Eastern time) on February 8, 2019**.  In the event that Alliance and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, the Bankruptcy Court will resolve any such Cure Amount/Assignment Objection at a hearing to be held at **12:00 p.m. (prevailing Eastern time) on February 13, 2019** or such later date as the Court may determine.

6.      Unless a Cure Amount/Assignment Objection is timely filed and served, the assumption, assignment and/or transfer of the Assigned Contracts may proceed without further notice to counterparties to the Assigned Contracts.

7.      Parties that fail to file and serve timely Cure Amount/Assignment Objections shall be deemed to have waived and released any and all rights to assert against Alliance, the Successful Bidder or Backup Bidder cure amounts different from the Cure Amounts listed on **Exhibit A** hereto and shall be forever barred and estopped from asserting or claiming against Alliance, the Successful Bidder or Backup Bidder, or any assignee of any Assigned Contract that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied, under such Assigned Contract.

8.      To the extent that a Cure Amount/Assignment Objection remains unresolved as of the Bid Deadline, and the Bankruptcy Court subsequently determines that the Cure Amount for the subject Assigned Contract is greater than that set forth in the Cure Amounts identified on **Exhibit A** hereto, the Successful Bidder may elect to reclassify such Assigned Contract as an Excluded Agreement at any time prior to the earlier to occur of the Closing or the day that is five (5) business days following such determination by the Bankruptcy Court.

9.     The Successful Bidder or the Backup Bidder, as the case may be, may determine to exclude any Assigned Contract from the Purchased Assets to be assumed and sold or assigned at any time prior to the Sale Hearing.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within three (3) business days following the conclusion of the Sale Hearing.

10.     If no Cure Amounts are due under an Assigned Contract, or the non-debtor party to the Assigned Contract does not otherwise object to Alliance's assumption, assignment and/or transfer of the Assigned Contract, no further action needs to be taken on the part of that non-debtor party.

11.     Alliance's decision to sell, assign and/or transfer to the Successful Bidder or Backup Bidder the Assigned Contracts is subject to Bankruptcy Court approval and the closing of the sale of the Purchased Assets.  Accordingly, absent such closing, none of the Assigned Contracts shall be deemed to be assumed, sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the list of Assigned Contracts shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

12.     This notice is subject to the fuller terms and conditions of the Bidding Procedures Order which shall control in the event of any conflict and Alliance encourages parties in interest to review that document in its entirety.  Parties interested in receiving more information regarding the sale of the Purchased Assets or obtaining a copy of the Bidding Procedures Order may make a written request to counsel to the Debtors.  In addition, copies of the Bidding Procedures Order and this notice can be found on the Bankruptcy Court's electronic case management website, http://ecf.nywb.uscourts.gov and are on file with the Clerk of the Bankruptcy Court.

Dated:    January ____, 2019
          Syracuse, New York                    BOND, SCHOENECK & KING, PLLC

                                    By:    _____
                                           Stephen A. Donato, Bar Roll No. 101522
                                           Camille W. Hill, Bar Roll No. 501876
                                           Office and Post Office Address:
                                           One Lincoln Center
                                           Syracuse, New York 13202
                                           Tel: (315) 218-8000
                                           Fax: (315) 218-8100
                                           Email:  sdonato@bsk.com
                                                   chill@bsk.com
                                           *Proposed Counsel to the Debtors and Debtors in Possession*

3242282.7

## **Exhibit A**

To Notice of Assumption and Assignment

[Assigned Contracts]

3242282.7