Hearing Date: January 23, 2019
Hearing Time: 11:00 a.m.
Hearing Location: Syracuse, New York

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

CENTERSTONE LINEN SERVICES, LLC,
Atlas Health Care Linen Services Co., LLC,
Alliance Laundry & Textile Service, LLC,
Alliance Laundry and Textile Service of Atlanta, LLC, and
Alliance LTS Winchester, LLC
d/b/a Clarus Linen Systems[1],

Debtors.

Case Nos.
18-31754 (main case)
18-31753
18-31755
18-31756
18-31757

Chapter 11 Cases
Jointly Administered

# DEBTOR CENTERSTONE LINEN SERVICES, LLC'S RESPONSE IN OPPOSITION TO MOTION BY ACN COMPANIES, LLC TO COMPEL PERFORMANCE OF POST-PETITION OBLIGATIONS TO LANDLORD PURSUANT TO SECTION 365(d)(3)

Debtor Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (the "Debtor"), by and through its undersigned counsel, hereby submits its Response in opposition to the *Motion to Compel the Debtor Centerstone Linen Services, LLC to Perform Post-Petition Obligations to Landlord Pursuant to Section 365(d)(3)* (the "Motion"), and respectfully sets forth as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

1. On December 19, 2018 (the "Petition Date"), the Debtor and its four subsidiaries filed separate, voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court, commencing their chapter 11 cases (the "Chapter 11 Cases"). The Debtor remains in possession of its assets and continue to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 20, 2018, the Bankruptcy Court entered orders authorizing the joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. On January 10, 2019, the Office of the United States Trustee issued an Appointment of Official Committee of Unsecured Creditors pursuant to which he appointed a three-member Official Committee of Unsecured Creditors (the "Committee") in these Cases.

3. On January 4, 2019, landlord ACN Companies, LLC ("ACN") filed the Motion seeking to compel the Debtor to perform, on a weekly basis, its post-petition obligations under a month-to-month lease for the real properties at which debtor Atlas's Syracuse and Troy commercial laundry facilities are located. Those obligations include the payment of rent, real property taxes and water charges.

4. As discussed more fully below, the Debtor is current on its post-petition rent payments due ACN and has provided for the monthly payment of real property taxes and water/utility bills in the budgets approved, or to be approved, by this Court in connection with the Debtor's motion to approve the DIP Facility and use of cash collateral in the Chapter 11 Cases.

5. It should also be noted that Roland Anderson, the sole member of ACN, is an insider of the Debtor under section 101(31) of the Bankruptcy Code and should not be entitled to the expedited payment of the rent obligations due by the Debtor in these Cases. *See O'Connel v.*

*Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 111 (Bankr. S.D.N.Y. 2005) (holding that because members are deemed managers of LLC's by default under the Limited Liability Company Law, and because managers carry out the same function as directors of a corporation, "this sufficiently places [LLC members] within the parameters of the Bankruptcy Code's definition of insider."); *see also Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 833 (Bankr. N.D.N.Y 2010) (holding that the factors to consider in determining insider status are "(1) the closeness of the relationship between the debtor and the transferee, and (2) whether the transactions between the transferee and the debtor were conducted at arm's length"). Accordingly, the relief requested by ACN in the Motion should be denied in its entirety.

## BACKGROUND

### A. Mr. Anderson's Relationship to the Debtor

6. Centerstone is a closely-held Delaware limited liability company with an office and place of business located at 60 Grider Street, Buffalo, New York 14215. It is the corporate parent of, and provides back-office and administrative support, for its four subsidiary companies: Atlas, Alliance, Atlanta and Winchester.

7. The three classes of membership interests in Centerstone are (i) a Mezzanine Interest, (ii) Class A Preferred Interests and (iii) Common Interests. As of the Petition Date, the Mezzanine Interest was owned by Linen Investors, LLC (41.86% share of all interests); the Class A Preferred Interests were owned by Atlas Syracuse Holdings, Inc. (9.9948% share of all interests) and Xdolos Eqity, LLC (10.4657% share of all interests); and the Common Interests were owned by GGCLS, LLC (23.0246% share of all interests) and F&L, LLC (14.6520% share of all interests).

8. It is the Debtor's understanding that the sole shareholder of Class A Preferred Interest holder Atlas Syracuse Holdings, Inc. is Roland F. Anderson, Jr. ("Mr. Anderson"). Mr. Anderson is also the sole member of landlord ACN.

9. In June 2008, the Debtor purchased its interest in Atlas from Atlas Health Care Linen Services Co., Inc., an entity owned by Mr. Anderson. Mr. Anderson thereafter became a member of the Debtor's Board of Managers. Section 3.2(a) of the Limited Liability Company Agreement of Centerstone Linen Services, LLC dated May 15, 2008 (the "LLC Agreement") provides that "[t]here shall be six (6) individuals serving as Managers of the Company, being the Mezzanine Manager, the Class A Preferred Manager, the Common Managers, the Fifth Manager and the Sixth Manger." Article 1 of the LLC Agreement defines the Sixth Manager as "Roland F. Anderson, Jr."

10. Mr. Anderson served as the Sixth Manager on the Debtor's Board of Managers until he resigned on January 16, 2018. He continues to be a Member of the Debtor. *See*, Letter from Mr. Anderson dated January 16, 2018 attached hereto as **Exhibit A**. As a long-time member of the Debtor's Board of Managers and an insider, Mr. Anderson is familiar with the operations of the Debtor and its subsidiary companies.

### B. The Master Lease Agreement

11. On June 3, 2008, the Debtor entered into a Master Lease Agreement (the "Lease") with ACN covering the Syracuse and Troy commercial laundry locations. The ten-year term of the Lease expired on June 30, 2018. Since that date, the Debtor has remained in possession of the Syracuse and Troy locations as a holdover tenant on a month-to-month basis. Although the Debtor and ACN entered into discussions during the prepetition period concerning an extension

4

of the Lease and the separation of the locations into two separate leases, those discussions did not result in an executed agreement before the Petition Date.

12. The Lease provided for monthly rent payments to ACN in the amounts of $12,283.33 and $5,600.00 for the Syracuse and Troy locations, respectively. It also provided for the payment of real property taxes as additional rent. The water bills are in the name of Atlas, the occupant of both properties.

13. At the expiration of the Lease in June 2018, the Debtor owed ACN for past due rents, real property taxes and water bills in connection with the Syracuse and Troy locations totaling approximately $350,000.00.

14. On September 7, 2018, ACN commenced a proceeding in Syracuse City Court seeking to evict the Debtor from the Syracuse location and scheduled a hearing on the proceeding for September 18, 2018. The eviction hearing was thereafter adjourned on a weekly basis, and is currently scheduled for 9:30 a.m. on February 4, 2019. From September 18, 2018 through the Petition Date, the Debtor paid $135,000.00 to ACN, inclusive of monthly rental payments, in exchange for those adjournments.

15. Since the Petition Date, the Debtor has provided for the payment of rent to ACN, and other landlords, in the two interim DIP budgets approved by this Court on December 21, 2018 and January 11, 2019. The Debtor paid the January 2019 rents in full to ACN for both the Syracuse and Troy locations on January 11, 2019.

16. The further DIP budget to be submitted to this Court in connection with the operations after January 25, 2019 will provide for the monthly payment of rent due all landlords and for the payment of real property taxes and utilities, including water bills, invoiced in the ordinary course of business.

17. Atlas's operations at the Troy facility terminated on December 18, 2018, and since the Petition Date, Atlas has been engaged in removing equipment and taking steps to shut down that facility. Atlas will completely vacate the Troy facility by January 31, 2019 and will pay prorated post-petition water and real estate taxes due. The Debtor advised ACN of the proposed Troy facility closure during mid-December, 2018.

18. As of February 1, 2019, therefore, the Debtor will need only the Syracuse location from ACN and has provided for the payment of the rent, real property taxes and utility payments due for that location in the updated DIP/cash collateral budget. As the Court is aware, the Debtor and Atlas are marketing their "northern" assets for sale, and project that that asset sale will close by the end of March 2019. ACN will have an opportunity to negotiate and enter into a new lease with the successful purchaser of the northern assets as part of that transaction.

## DISCUSSION

19. The Debtor respectfully submits that it is complying with Bankruptcy Code section 365(d)(3)'s requirement that the Debtor and its subsidiaries remain current on post-petition obligations to landlords. ACN's interest as the landlord of the Syracuse property is adequately protected during the post-petition period, as the Debtor continues to pay rent to ACN and provide for its post-petition obligations, including taxes and water, under its month-to-month tenancy. Further, the Debtor anticipates that its occupancy of the Syracuse location will extend for several more months until the closing of the northern asset sale. As such, the weekly payment of all rental, tax and utility payments to ACN would be burdensome and unnecessary in light of the approved DIP/cash collateral budget providing for such payments and the short-term tenancy involved.

6

20. With regard to 60 Grider, LLC, the landlord of the Buffalo laundry facility owned by Mr. Giardino, the Debtor pays monthly rent for the laundry facility of $45,000.00 pursuant to the terms of a prepetition Lease Renewal Agreement dated April 1, 2013, plus monthly rent for equipment of $39,421.88 pursuant to the terms of a prepetition Lease dated July 9, 2013. This rent is higher than the Syracuse rent paid to ACN because the Buffalo lease includes both real property and equipment, and the Buffalo facility was refurbished and updated in the early 2000s. In contrast, the rent paid to ACN is for real property only and the facility is approximately 80-100 years old. The rental payments due 60 Grider, LLC are paid in the ordinary course on a monthly basis. As of the Petition Date, the prepetition rent arrears due 60 Grider, LLC under both the real property and equipment leases total $351,440.68.

21. With regard to the list of six Maintenance Tasks identified in Exhibit D to the Motion, the Debtor previously advised ACN that it would complete Item Nos. 1, 2, 4 and 5. The Debtor respectfully submits that Item no. 3 (Replace 3 overhead door operators at 405 Taylor Street) and Item no. 6 (Replace rotting floor caused by steam tunnel and remove two 4'x8' sheets of steel plates paced over the hole created by forklift driving over a wooden foundation to install steam tunnel; replace the collapsed floor joist, wooden floor, and ceramic tile flooring at 405 Taylor Street) are structural repairs that are the obligation of ACN as landlord.

22. Finally, from January 2013 through December 2018, Mr. Anderson and his wife used two cell phones the invoices for which have been paid by the Debtor. The phone charges incurred during the period of January 2013 through December 2017 totaled $15,525.52 and the charges for 2018 totaled approximately $2,178.80. The Debtor respectfully requests that these charges totaling approximately $17,704.32 be set off against the prepetition arrears due ACN under the Lease.

23. All of the other landlords to whom the Debtor and its subsidiaries owe rent obligations receive the payments on a monthly basis. ACN has failed to establish any circumstances that would warrant the extraordinary relief requested. The request for weekly payments by ACN is inappropriate, and impacted by Mr. Anderson's status as an insider of the Debtor in these Cases.

24. Based upon the foregoing, ACN is not entitled to receive weekly payments of rent and other charges under its lease with the Debtor and the relief requested in the Motion should be denied. In addition, the Debtor requests that the amount of prepetition arrears due ACN under the Lease be offset by the cell phone charges totaling $17,704.32 paid by the Debtor on behalf of Mr. and Mrs. Anderson.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order denying the relief requested by ACN in its entirety, directing the setoff of the cell phone charges, and granting such other and further relief as the Court deems just and proper.

Dated: January 22, 2019
      Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By: *Camille W. Hill*

Stephen A. Donato, Esq., Bar Roll No. 101522
Camille W. Hill, Esq., Bar Roll No. 501876
Andrew S. Rivera, Esq.
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email:  sdonato@bsk.com
         chill@bsk.com

*Proposed Counsel to the Debtors and Debtors in Possession*