**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
In re:                                                                                : Chapter 11
                                                                                         :
CENTERSTONE LINEN SERVICES, LLC               : Case No. 18-31754-MCR (Main Case)
d/b/a Clarus Linen Systems, *et al.* [1]                 : Jointly Administered
                                                                                         :
                                        Debtors.                       : **Hearing Date: February 13, 2019 at Noon (ET)**
                                                                                         :
---------------------------------------------------------- X  **Objection Deadline: February 12, 2019 at Noon (ET)**

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE MOTION BY DEBTOR ALLIANCE LAUNDRY & TEXTILE
SERVICE, LLC d/b/a CLARUS LINEN SYSTEMS FOR ORDERS
(A) (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF ALLIANCE'S
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES, SUBJECT TO THE TERMS OF THE ASSET PURCHASE
AGREEMENT AND SUBJECT TO HIGHER AND/OR BETTER OFFERS;
(II) AUTHORIZING AND APPROVING THE FORM OF A CERTAIN ASSET
PURCHASE AGREEMENT WITH CROWN HEALTH CARE LAUNDRY
SERVICES, LLC; AND (III) AUTHORIZING ALLIANCE TO CONSUMMATE
ALL TRANSACTIONS RELATED TO THE PROPOSED SALE; (B) APPROVING
BIDDING PROCEDURES AND OTHER RELATED RELIEF; AND
(C) AUTHORIZING ALLIANCE TO ASSUME CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND ASSIGN SUCH CONTRACTS AND
LEASES TO PURCHASER CROWN HEALTH CARE LAUNDRY SERVICES, LLC**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this limited objection (the "Objection") to the *Motion By Debtor Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems For Orders (A) (I) Authorizing The Sale Of Substantially All Of Alliance's Assets Free And Clear Of All Liens, Claims, Interests And Encumbrances, Subject To The Terms Of The*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892).

*Asset Purchase Agreement And Subject To Higher And/Or Better Offers; (II) Authorizing And Approving The Form Of A Certain Asset Purchase Agreement With Crown Health Care Laundry Services, LLC; And (III) Authorizing Alliance To Consummate All Transactions Related To The Proposed Sale; (B) Approving Bidding Procedures And Other Related Relief; And (C) Authorizing Alliance To Assume Certain Executory Contracts And Unexpired Leases And Assign Such Contracts And Leases To Purchaser Crown Health Care Laundry Services, LLC* [Docket No. 34] (the "Sale Motion").[2] In support of this Objection, the Committee respectfully states as follows:

## LIMITED OBJECTION

1. The Committee has and continues to engage in extensive discussions with the Debtors and HSBC regarding a consensual resolution of this Objection and the Committee's objection to the Debtors' DIP financing, with the goal of reaching a global settlement to benefit all parties in interest. The Committee continues working very hard to achieve this goal, and remains optimistic that a global settlement will be reached in the near future. Notwithstanding that optimism, the Committee files its objections out of an abundance of caution to raise its concerns with the Court and preserve its rights in case a consensual resolution is not reached by the hearing on the Sale Motion.

2. The Debtors commenced these Chapter 11 Cases to pursue separate sales of their northern and southern assets, ideally as going concerns. Shortly after the petition date, the Debtors filed the Sale Motion seeking to sell the majority of their southern assets to stalking horse bidder Crown Health Care Laundry Services, LLC ("Crown" or the "Stalking Horse Bidder"). The Debtors continued marketing their southern assets, and the stalking horse asset

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

2

purchase agreement provided some optionality with respect to certain assets denoted as the "Atlanta PP&E", with the Debtors being able to compel Crown to purchase the Atlanta PP&E for approximately $295,000.

3. While the Debtors were successful in their efforts to find alternate bidders for the Atlanta PP&E, and ultimately held an auction for the Atlanta PP&E that significantly increased the sale price of the Atlanta PP&E assets, unfortunately, the only bid the Debtors received for the remaining majority of their southern assets was from the stalking horse bidder Crown. The Committee does not fundamentally object to the sale of the Debtors' southern assets (the "Sale") to the Stalking Horse Bidder and the additional purchaser of the Atlanta PP&E, however, it is now clear that the proceeds from the Sale will be insufficient to pay all of the Debtors' secured debt in full, not to mention all administrative and priority claims.

4. As the Committee has expressed to the Debtors and its secured lender, HSBC Bank USA, National Association ("HSBC" or the "DIP Lender"), and as set forth in the Committee's objection to the Debtors' proposed DIP financing being filed contemporaneously with this objection (the "DIP Objection"), only HSBC, which is the Debtors' first-lien prepetition lender and DIP lender, will benefit from the Sale by receiving at least a significant payment on account of its prepetition claims and postpetition DIP claims. Thus, HSBC must be required to ensure the estates' administrative solvency by providing cash sufficient to (a) satisfy all accrued and unpaid chapter 11 administrative expenses and priority claims (including any section 503(b)(9) and stub rent claims), whether or not they are provided for in the DIP financing budget; and (b) provide sufficient funding for the expenses that will accrue during the post-closing wind-down period.

5. Section 363 asset sales should not be used to circumvent the protections for unsecured creditors mandated by the Bankruptcy Code. *See In re Westpoint Stevens, Inc.*, 333 B.R. 30, 52 (S.D.N.Y. 2005) (stating that "it is well established that section 363(b) is not to be utilized as a means of avoiding Chapter 11's plan confirmation procedures"), *aff'd in part, rev'd in part on other grounds*, 600 F.3d 231 (2d Cir. 2010) (citing *In re The Babcock & Wilcox Co.*, 250 F.3d 955, 960 (5th Cir. 2001) ("[T]he provisions of § 363 . . . do not allow a debtor to gut the bankruptcy estate before reorganization or to change the fundamental nature of the estate's assets in such a way that limits a future reorganization plan.")).

6. In addition, the Court should not allow the bankruptcy process to be used if it only benefits secured creditors. *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992) (prohibiting "convert[ing] the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender."); *see also PBGC v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983), *reh'g denied*, 705 F.2d 450 (5th Cir. 1983) (reversing order authorizing section 363 sale of substantially all of a debtor's assets because if sale was approved there would be "little prospect or occasion for further reorganization."); *In re Encore Healthcare Assocs.*, 312 B.R. 52, 54-55 (Bankr. E.D. Pa. 2004) (court denied bid procedures motion finding that section 363 sale served no legitimate business purpose when debtor admitted that it would convert the case to chapter 7 following the sale and not have adequate funds to proceed with an administratively solvent estate).

7. Consistent with these themes, courts have held that a secured lender cannot benefit from a section 363 sale unless they are willing to ensure that the debtor's estate is administratively solvent after the sale. *See* DIP Financing Order at ¶ 31, *In re Golden Cnty.*

4

*Foods, Inc., et al.,* Case No. 15-11062 (KG) (Bankr. D. Del. June 22, 2015), Docket No. 175 (final DIP financing order required that sale proceeds in excess of postpetition financing obligations be available to pay administrative expense claims prior to the payment of certain alleged prepetition secured debt); Hr'g Tr. at 11:22-24, *In re Family Christian, LLC et al.*, Case No. 15-00643 (JTG) (Bankr. W.D. Mich. Apr. 14, 2015) (the Court stated: "I think we'll have a problem at the sale hearing if the administrative expenses are not to be paid in connection with the sale.")[3]; Hr'g Tr. at 100:17-20, *In re NEC Holdings Corp., et al.* Case No. 10-11890 (KG) (Bankr. D. Del. July 13, 2010) (secured creditors have "got to the pay the freight, and . . . the freight is certainly an administratively solvent estate.")[4]; Hr'g Tr. at 23:25-24:22, *In re Townsends, Inc., et al.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011) (in response to the statement of debtors' counsel that section 503(b)(9) claims would not be paid in full, the Court stated: "Well, we've got a problem. Not going to run an administratively insolvent estate.").[5]

8.     Therefore, the Sale should not be approved unless the Secured Lenders agree to backstop the payment of (a) all accrued and unpaid chapter 11 administrative expenses and priority claims (including section 503(b)(9) claims), whether or not they are provided for in the DIP financing budget; and (b) the expenses that will accrue during the post-closing wind-down period. Alternatively, if the Court approves the Sale, all proceeds of the Sale should be escrowed and held by the Debtors until agreement on an acceptable budget providing for administrative solvency and some benefit to general unsecured creditors has been reached.

---

[3] Relevant portions of transcript are attached hereto as **Exhibit A**.
[4] Relevant portions of transcript are attached hereto as **Exhibit B**.
[5] Relevant portions of transcript are attached hereto as **Exhibit C**.

## RESERVATION OF RIGHTS

9. The Committee reserves all rights with respect to the Sale Motion, including the right to supplement this Objection and to raise additional objections before or at the hearing to consider approval of the Sale. Nothing contained in, or omitted from, this Objection constitutes an admission or stipulation by the Committee, any member of the Committee, or any other party with respect to any alleged claims against the Debtors, including but not limited to the amount, validity, or enforceability of any alleged claims against the Debtors or the extent, validity, priority, or perfection of any alleged liens and security interests in the Debtors' assets.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court: (a) deny the Sale Motion unless the order approving the Sale addresses the Committee's concerns set forth herein, and (b) grant the Committee such other and further relief as the Court deems just and appropriate.

Dated: February 12, 2019
New York, New York

**CKR LAW LLP**

*/s/ David M. Banker*
David M. Banker, Esq.
Gilbert R. Saydah Jr., Esq.
1330 Avenue of the Americas, 14th Floor
New York, New York 10019
Telephone: (212) 259-7300
Facsimile: (212) 259-8200
Email: dbanker@ckrlaw.com
gsaydah@ckrlaw.com

*Counsel to the Official*
*Committee of Unsecured Creditors*