Hearing Date: February 28, 2019
Hearing Time: 11:30 a.m.
Hearing Location: Syracuse, New York

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) 18-31754 (main case) |
| Atlas Health Care Linen Services Co., LLC, | ) 18-31753 |
| Alliance Laundry & Textile Service, LLC, | ) 18-31755 |
| Alliance Laundry and Textile Service of Atlanta, LLC, and | ) 18-31756 |
| Alliance LTS Winchester, LLC | ) 18-31757 |
| *d/b/a Clarus Linen Systems*[1], | ) |
| | ) Chapter 11 Cases |
| Debtors. | ) Jointly Administered |

**DEBTOR ATLAS HEALTH CARE LINEN SERVICES CO., LLC d/b/a
CLARUS LINEN SYSTEM'S RESPONSE IN OPPOSITION TO MOTIONS
FILED BY BUFFALO HOSPITALS SEEKING ORDERS (A) REQUIRING
DEBTOR TO IMMEDIATELY REJECT LINEN SERVICES AGREEMENTS
AND PARTICIPATING HOSPITAL AGREEMENT OR ALTERNATIVELY
TO FILE A MOTION TO ASSUME OR REJECT THE LINEN SERVICES
AGREEMENT AND PARTICIPATING HOSPITAL AGREEMENT AND
<u>(B) APPOINTING OPERATING TRUSTEE UNDER 11 U.S.C. § 1104(a)(2)</u>**

Debtor Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems ("Atlas"), by and through its undersigned counsel, hereby submits its Response in opposition to the various *Motions for (a) an Order Pursuant to 11 U.S.C. Section 365 Requiring Atlas Health Care Linen Services, Co., LLC d/b/a Clarus Linen Systems to Reject Immediately the "Linen Services Agreement" dated as of August 13, 2010 (or June 25, 2010) and the "Participating Hospital Agreement" dated as of January 25, 2011 or Alternatively Requiring Atlas Health Care Linens*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

3304093.3

*Services, Co., LLC to File a Motion Within Thirty (30) Days for the Assumption or Rejection of Said Linen Services Agreement and Participating Hospital Agreement, and (b) an Order Pursuant to 11 U.S.C. Section 1104(a)(2) Appointing an Operating Trustee in the Case of Atlas Health Care Linen Services Co., LLC* dated February 13, 2019 (the "Motions") filed by (i) Altus Management LLC ("Altus"); (ii) Catholic Health System, Inc., Mercy Hospital of Buffalo, Sisters of Charity Hospital of Buffalo, New York and Kenmore Mercy Hospital (collectively, "Catholic Health"); (iii) Mount St. Mary's Hospital of Niagara Falls ("Mount St. Mary's"); and (iv) Kaleida Health, Erie County Medical Center, Eastern Niagara Health Center and Niagara Falls Memorial Medical Center (collectively "Kaleida Health", and with Altus, Catholic Health and Mount St. Mary's, collectively, the "Hospitals"), and respectfully sets forth as follows:

1.  On December 19, 2018 (the "Petition Date"), Atlas and four affiliates (collectively, the "Debtors") filed separate, voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court, commencing their chapter 11 cases (the "Chapter 11 Cases"). Atlas remains in possession of its assets and continue to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 20, 2018, the Bankruptcy Court entered orders authorizing the joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.  On January 10, 2019, the Office of the United States Trustee issued an Appointment of Official Committee of Unsecured Creditors pursuant to which he appointed a three-member Official Committee of Unsecured Creditors (the "Committee") in these Cases.

3.  Submitted in further support of this Response, and attached hereto as **Exhibit "A"**, is the Affidavit of the Debtors' Chief Restructuring Officer Ronald Teplitsky sworn to the

2

27th day of February, 2019 (the "CRO Affidavit"). The CRO Affidavit sets forth the immediate steps Atlas has taken to address the concerns raised by the Hospitals in their Motions.

4. As discussed more fully below, Atlas respectfully submits that the Motions should be denied in their entirety on the grounds that (i) the Hospitals have failed to articulate sufficient cause for the relief requested under section 365(d)(2) of the Bankruptcy Code; (ii) Atlas has actively responded to the issues raised in the Motions, met with various Hospital representatives on several occasions, implemented a Service Improvement Program to address the Hospitals' issues and is performing all services required under the Linen Service Agreements and all Participating Hospital Agreements (collectively, the "Altus Contract"); (iii) the Altus Contract with the Hospitals is essential to Atlas's on-going operations and to maintaining its going concern value while its business is being marketed for sale; and (iv) the Hospitals have failed to establish cause for the appointment of an operating trustee under section 1104(a)(2) of the Bankruptcy Code.

## BACKGROUND

5. Atlas has provided linen and laundry services to the Hospitals under the Altus Contract since 2013. CRO Affidavit, ¶ 4. Although Atlas and the Hospitals had been working throughout 2018 to address linen supply and delivery issues since the Hospitals issued the notice of breach more than one year ago on February 22, 2018, as of the Petition Date, the Hospitals had not issued any further notices under the Altus Contract. *Id.* at ¶ 6.

6. The Hospitals filed the Motions on February 13, 2019, less than two months after the Petition Date. As the Court is aware, there have been several hearings since the Petition Date seeking to finalize the Debtors' financing needs in these cases.

7.	On February 11, 2019, the Hospitals' counsel contacted Atlas to seek a meeting concerning Contract performance issues. Atlas's representatives responded immediately and scheduled a meeting with the Hospitals' representatives in Buffalo to address the issues on February 14, within 24 hours after the Motions were filed. *Id.* at ¶ 8. Mr. Teplitsky and Atlas representatives actively engaged in meetings with the Hospitals' representatives on February 14, 21 and 26 in an effort to better understand the Hospitals' concerns and to propose solutions. *Id.* at ¶¶ 10-13, 15. Mr. Teplitsky also has spent numerous hours in contact with the Hospitals' representatives to ensure Atlas's compliance with the terms of the Altus Contract. *Id.* at ¶ 13.

8.	As noted in the CRO Affidavit, the critical issue involves linen replacement. Although linen shrinkage occurs regularly, the Altus Contract does not require the Hospitals to replace or pay for lost or damaged linen. Despite this, Kaleida Health and ECMC voluntarily paid to Atlas the total sum of $200,000.00 in December 2018 in an effort to address this issue. *Id.* at ¶ 11.

9.	As a result of those meetings and the input of the Hospitals' representatives, Atlas prepared and implemented a Buffalo Service Improvement Program (the "Improvement Program") which sets forth detailed initiatives to be undertaken by Atlas to ensure continued performance under the Altus Contract. *Id.* at ¶ 14. As noted in the CRO Affidavit, the Improvement Program was well received by the Hospital representatives and is a significant commitment on the part of Atlas to directly address all of the issues raised in the Motions and ensure that the Hospitals are able to fulfill their mission of providing quality health care services to the Buffalo community. *Id.* at 15.

10.	Finally, as the Court is aware, investment banker SSG Advisors, LLC is currently marketing Atlas's Buffalo and Syracuse assets for sale as going concerns. The Altus Contract

and Hospitals' customer contracts are integral to the Buffalo facility's operation and marketability, as they account for 80%-90% of its annual revenue, and 40% of Atlas's overall annual revenue. *Id.* at ¶¶ 5, 17.

11.     Atlas continues to negotiate an asset purchase agreement for the sale of Atlas's assets. *Id.* at ¶ 17. A significant component of any going concern sale of Atlas's assets will be the assumption of the Altus Contract and its assignment to the successful bidder for the assets. As such, it is imperative that the Altus Contract remain in effect.

## DISCUSSION

### A. The Hospitals Have Not Shown That Cause Exists to Accelerate the Timeline to Reject the Altus Contract

12.     Section 365(d)(2) of the Bankruptcy Code provides that a court "*may*, but is not required to, order the debtor to make its decision [to assume or reject an executory contract] within a specified period of time." *Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385, 388 (Bankr. W.D. Pa. 1985) (emphasis in original). The granting of a request for a reduction in time to assume or reject an executory contract or unexpired lease is discretionary and is rarely granted. 3 *Collier on Bankruptcy,* ¶ 365.05[2][a] (Richard Levin & Henry J. Sommers eds., 16th ed.).

13.     As a preliminary matter, Atlas notes that the Motions contain only attorney affirmations.

14.     The burden is on the movant Hospitals to show that cause exists to shorten the time provided by section 365(d)(2). *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006). The factors considered by the Court in determining whether cause exists include:

    (a)    the importance of the contracts to the debtor's business and reorganization;
    (b)    the debtor's failure or ability to satisfy post-petition obligations;
    (c)    the nature of the interests at stake;

5

  (d)  the balance of hurt to the litigants and the good to be achieved;

  (e)  whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan;

  (f)  the safeguards afforded to the litigants;

  (g)  the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

  (h)  whether there is a need for judicial determination as to whether an executory contract exists;

  (i)  whether exclusivity has been terminated;

  (j)  whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; and

  (k)  the purpose of chapter 11, which is to permit successful rehabilitation of debtors.

*Id.* at 147.

15. In the instant case, Atlas respectfully submits that the relevant factors do not support the relief requested by the Hospitals, and their Motions to compel Atlas to reject the Altus Contract should be denied.

16. First, the Altus Contract is integral to Atlas's Buffalo operations, as it accounts for 80%-90%, or between $8 million and $9 million, of the Buffalo revenues and 40% of Atlas's overall revenue. CRO Affidavit at ¶ 5. The Altus Contract and related Hospital contracts, therefore, are valuable assets of Atlas's estate which Atlas intends to assume and assign to the successful purchaser of its assets.

17. Second, Atlas has worked diligently to satisfy all requirements of the Altus Contract during the two months since the Petition Date and to prepare and implement the Improvement Program. Atlas and the Debtors have secured the funding necessary to properly administer their chapter 11 cases, to purchase replacement linens and to otherwise comply with their customer contracts. All of these efforts enhance Atlas's ability to market, and ultimately sell its assets as going concerns for the benefit of its creditors and estate.

18. Third, the nature of the interests at stake, namely, Atlas's continued servicing of its customers and the continued employment of over 200 employees on the one hand, and the Hospitals' interest in ensuring the required quantities and quality of linen products on the other hand, are aligned. The preservation of the Altus Contract, and its assignment to the successful bidder at the going concern sale of Atlas's assets, is fundamental to the success of all parties to the Contract.

19. Fourth, the balance of harm that could result from the premature rejection of the Altus Contract weighs in favor of maintaining the Contract. Atlas has been performing under the Contract since the Petition Date and the months leading up to the Petition Date and, as noted by the CRO, is actively addressing any service concerns raised by the Hospitals. Upon information and belief, if the Altus Contract was rejected effective immediately, the Hospitals would be unable to identify another commercial laundry facility in the Buffalo area with the capacity to immediately process the millions of pounds of laundry generated by the Hospitals on a monthly basis. *Id.* at ¶ 7. Rejecting the Altus Contract at this time could actually harm the Hospitals, rather than benefit them.

20. Fifth, Atlas has stabilized its financial operation and is actively marketing its assets for sale. Atlas's case has been pending for slightly more than two months and as of the date of this Response, it is continuing to negotiate an asset purchase agreement with a stalking horse bidder for the going concern sale of its Buffalo and Syracuse assets. It is imperative, therefore, that Atlas take the time to properly assess its business operations and options in this case in order to maximize the value of its assets, including the Altus Contract, for the benefit of its creditors. Sixth, during this assessment process, all parties will continue to receive the

7

protections of the Bankruptcy Code, and Atlas will continue to fully honor its obligations to the Hospitals under the Improvement Program while it seeks approval to finalize its asset sale.

21. Seventh, although the non-debtor Hospitals cite the important considerations of public health and the safety and welfare of their patients as reasons to ensure a dependable linen supply, they fail to describe how the Hospitals will avoid damage if Atlas immediately rejects the Altus Contract when the Hospitals have not identified a substitute linen provider with sufficient capacity to perform all of the services required. It is possible, therefore, that the safety and welfare of the patients could actually be harmed if the Hospitals' request for immediate rejection is granted.

22. With regard to the next two factors, there is no need for a judicial determination as to whether an executory contract exists, as neither party is arguing that the Altus Contract is not an executory contract. Further, Atlas's exclusivity has not terminated and will not terminate for several months.

23. In addition, directing Atlas to reject the Altus Contract at this early stage of the case would be in derogation of Congress's scheme to assist debtors in rehabilitating their financial affairs under the Bankruptcy Code. As the Altus Contract is critical to Atlas's operation and is a valuable asset to be acquired by a prospective purchaser, permitting Atlas sufficient time to carry out its asset sale strategy is not arbitrary and furthers Congress's scheme to provide debtors with sufficient time address their financial affairs.

24. Finally, the purpose of chapter 11 is to permit the successful rehabilitation, or the orderly liquidation, of the debtor's estate for the benefit of its creditors. This factor strongly weighs in favor of denying the Motions. Atlas has undertaken significant efforts to ensure that it fully performs its obligations under the Altus Contract during the post-petition period while it

markets its assets for sale. The Altus Contract is a key component of Atlas's asset sale and strategy to maximize the value of its estate for creditors.

25. Based upon the foregoing, Atlas respectfully submits that the Hospitals have not established cause, under section 365(d)(2) of the Bankruptcy Code, to compel Atlas to reject the Altus Contract at this juncture in its case. Atlas has taken significant steps to implement the Improvement Program in order to ensure that the Hospitals are properly serviced during the post-petition period. Requiring Atlas to immediately reject an executory contract that is the basis for 80%-90% of its Buffalo revenue, at this early point in the asset marketing process and the chapter 11 case, would irreparably harm Atlas, its creditors and its estate by destroying the value of its Buffalo operation.

26. For the reasons set forth above, Atlas submits that the Hospitals have similarly failed to establish cause under section 365(d)(2) of the Bankruptcy Code for an order directing Atlas to file a motion to assume or reject the Altus Contract within thirty days. Accordingly, Atlas respectfully requests that the Court issue an Order denying the Motions in their entirety.

### B. The Hospitals Have Not Established Cause for the Appointment of an Operating Trustee Under Section 1104(a)(2) of the Bankruptcy Code in This Case

27. Near the end of their Motions, the Hospitals request that the Court issue an order appointing an operating trustee under section 1104(a)(2) of the Bankruptcy Code in the event that Atlas "is unable or unwilling to attempt to continue service under the rejected Altus Contract and Participation Agreement during the aforesaid phase-out or wind-down interval, or if Clarus has indicated its desire to convert its case to one under Chapter 7." *See, e.g.,* Motion by Altus Management, LLC, at ¶ 51 [Dkt. No. 216].

28. In addition, Atlas has no intention to seek to convert this case to a chapter 7. As noted above and in the CRO Affidavit, Atlas fully intends to continue to perform under the agreements and has affirmatively addressed the Hospitals' concerns.

29. Section 1104 of the Bankruptcy Code provides that,

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
> . . . . . .
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(2).

30. The party requesting the appointment of a trustee, however, "has the burden of proof in showing 'cause',. . . and [t]he evidence supporting the motion . . . must be clear and convincing." *Id.* at 167-68, citing *In re St. Louis Globe-Democrat, Inc.*, 63 B.R. 131, 138 (Bankr. E.D. Mo. 1985).

31. Among the factors considered with respect to whether a trustee should be appointed are: "(i) the trustworthiness of the debtor, (ii) the debtor in possession's past and present performance and prospects for the Debtor's rehabilitation, (iii) the confidence – or lack thereof – of the business community and of creditors in present management and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168 (internal citations omitted).

32. Atlas respectfully submits that the appointment of an operating trustee is an extraordinary remedy which based on the current facts, is not necessary. The factors considered in support of cause for relief under section 365(d)(2) of the Bankruptcy Code are not the same as

those considered for relief under section 1104(a)(2). Atlas submits the Hospitals have failed to meet their burden of proof. In the event, however, that the Court declines to dismiss the request, Atlas respectfully requests that the Court schedule the matter for a separate evidentiary hearing and also allow for discovery to prepare for such hearing.

33.    Based on the foregoing, Atlas respectfully submits that the Hospitals have not demonstrated cause for the appointment of an operating trustee under section 1104(a)(2) of the Bankruptcy Code and as such, that request for relief in the Motions should be denied in its entirety.

**WHEREFORE,** debtor Atlas Health Care Linen Services Co., LLC respectfully requests that the Court enter an Order denying, in its entirety, the relief requested by the Hospitals in the Motions, and granting such other and further relief as the Court deems just and proper.

Dated: February 27, 2019
Syracuse, New York

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By:    /s/ Camille W. Hill
Stephen A. Donato, Esq., Bar Roll No. 101522
Camille W. Hill, Esq., Bar Roll No. 501876
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email:  sdonato@bsk.com
           chill@bsk.com

*Counsel to the Debtors and Debtors in Possession*