# EXHIBIT "C"

# Bidding Procedures

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) <br> ) <br> ) Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) 18-31754 (main case) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) 18-31753 |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) 18-31755 |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF ATLANTA, LLC, and | ) 18-31756 <br> ) |
| ALLIANCE LTS WINCHESTER, LLC | ) 18-31757 |
| d/b/a Clarus Linen Systems[1], | ) <br> ) Chapter 11 Cases |
| Debtors. | ) Jointly Administered <br> ) <br> ) |

**BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY
ALL ASSETS OF CENTERSTONE LINEN SERVICES, LLC
d/b/a CLARUS LINEN SYSTEMS AND ATLAS HEALTH
<u>CARE SERVICES, CO. d/b/a CLARUS LINEN SYSTEMS</u>**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Proposed Sale") of substantially all of the assets (the "Purchased Assets") owned by debtors Centerstone Linen Services, LLC d/b/a Clarus Linen Systems and Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems, debtors and debtors in possession (collectively, the "Debtors"). The Proposed Sale is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure. All capitalized terms shall have the meanings ascribed to them in that certain Asset Purchase Agreement between the Debtors and Linen Newco, LLC (the "Purchase Agreement") dated March 13, 2019 (the "Execution Date"), approved by the Court in connection with the Proposed Sale and the Sale Motion (as defined herein).

On March 13, 2019, the Debtors filed the *Motion by Debtors Centerstone Linen Services, LLC d/b/a Clarus Linen Systems and Atlas Health Care Linen Services Co. d/b/a Clarus Linen*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

*Systems for Orders (A) (i) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, Subject to the Terms of the Asset Purchase Agreement and Subject to Higher and/or Better Offers; (ii) Authorizing and Approving the Form of a Certain Asset Purchase Agreement With Linen Newco LLC; and (iii) Authorizing the Debtors to Consummate All Transactions Related to the Proposed Sale; (B) Approving Bidding Procedures and Other Related Relief; and (C) Authorizing the Debtors to Assume Certain Executory Contracts and Unexpired Leases and Assign Such Contracts and Leases to Purchaser Linen Newco LLC* (the "Sale Motion").

These Bidding Procedures describe, among other things, the Purchased Assets available for sale, the form of bids and the manner in which bidders and bids become qualified, the coordination of diligence efforts among bidders, the conduct of the Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein) and the Court's approval thereof (the "Bidding Process"). The Bidding Procedures were developed in consultation with the Debtors' professionals. The Debtors will continue to consult with their professionals, as well as with its secured creditor, HSBC Bank USA, National Association ("HSBC Bank"), the Official Committee of Unsecured Creditors (the "Committee"), and other parties in interest, throughout the Bidding Process. In the event that the Debtors and any such constituents disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court shall have jurisdiction to hear and resolve such dispute.

## Purchased Assets to be Sold

The Purchased Assets to be sold include all of the Debtors' right, title and interest in, to and under, free and clear of all Liabilities (other than Assumed Liabilities) and Encumbrances (other than Permitted Encumbrances), all of Atlas's assets, personal properties, rights and interests of any nature whatsoever used in or related to the operation of its business located at 414 Taylor Street, Syracuse, New York 13202 (the "Syracuse Assets"), and at 60 Grider Street, Buffalo, New York 14215 (the "Buffalo Assets"), and all of Centerstone's assets, personal properties, rights and interests of any nature whatsoever used in or related to the operation of its business located at 60 Grider Street, Buffalo, New York 14215 (the "Office Assets"). The Purchased Assets exclude those assets identified as "Excluded Assets" in Section 2.3 of the Purchase Agreement, which include, but are not limited to, all Contracts not specifically designated by the Purchaser as Assigned Contracts pursuant to the terms of the Purchase Agreement in Schedule 2.2. The foregoing summary description of the Purchased Assets and Excluded Assets is provided for the convenience of Potential Bidders and is in all regards qualified by and subject to the terms of the Purchase Agreement.

The Debtors shall retain all rights to any Purchased Assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court at the Sale Hearing (as defined herein).

All of the Purchased Assets designated as such by a Successful Bidder may be sold together as one lot, or alternatively, in two separate lots of either (i) the Buffalo Assets and the Office Assets, or (ii) the Syracuse Assets, so long as the respective Bid(s) meet the requirements of a "Qualified Bid" explained below. The sale of the Purchased Assets will be conducted on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or the Debtors' bankruptcy estate, except to the extent set

2

forth in the Purchase Agreement, as approved by the Bankruptcy Court. Except as otherwise provided in such approved Purchase Agreement or in the Bankruptcy Court's order approving the same, the Purchased Assets shall be sold to the Successful Bidder free and clear of all liens, claims, interests and encumbrances thereon (collectively, the "Liens"), with such Liens, including, but not limited to, those Liens in favor of HSBC Bank, to attach solely to the net proceeds of the sale.

## Participation Requirements

In order to participate in the Bidding Process, a person (a "Potential Bidder") must be a "Qualified Bidder." A Qualified Bidder is (A) Linen Newco, LLC ("Newco"), and (B) HSBC Bank (provided, however, that HSBC Bank shall refrain from credit bidding so long as Newco's offer (as set forth in the Purchase Agreement) remains open and represents, in HSBC Bank's reasonable judgment, the highest or best bid received for the Purchased Assets), and (C) a person or group of persons:

(a) who has delivered to the Debtors an executed confidentiality agreement in form and substance acceptable to the Debtors; and

(b) who has delivered to the Debtors on or before the Bid Deadline (defined below): (i) a Qualified Bid (defined below) and (ii) satisfactory evidence of committed financing or current audited financial statements or other form of financial or credit-quality disclosures reasonably sufficient to ascertain that the Potential Bidder has the financial wherewithal and liquidity to consummate a transaction pursuant to its Qualified Bid and any subsequent bid that the Potential Bidder may place at the Auction.

The Debtors, in consultation with HSBC Bank and the Committee, shall determine whether a bid qualifies as a "Qualified Bid". To constitute a Qualified Bid, a bid must be a written irrevocable offer from a Qualified Bidder and:

(a) propose a purchase price to be paid in cash, cash equivalents or readily marketable securities acceptable in the discretion of the Debtors;

(b) propose a purchase price that exceeds Newco's Bid, as set forth in Article III of the Purchase Agreement, by $100,000.00 (the "Initial Qualified Overbid"), as determined by the Debtors in consultation with HSBC Bank and the Committee, or if the Bid(s) are for the Syracuse and Buffalo Assets in separate lots, propose a collective purchase price that exceeds Newco's Bid, as set forth in Article III of the Purchase Agreement, by $100,000.00;

(c) provide the Debtors with a deposit in an amount equal to 10% of its Initial Qualified Overbid (the "Bid Deposit");

(d) be accompanied by a signed Purchase Agreement, together with a copy marked to show any changes from the form of Purchase Agreement approved by the Court and attached as Exhibit A to the Order approving these Bidding Procedures;

3

(e) contain a list of the Debtors' executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from the Debtors and, if the Bid is conditioned on the assumption and assignment of such executory contracts or unexpired leases, provide evidence of the Potential Bidder's ability to provide adequate assurance of future performance of such contracts or leases;

(f) provide satisfactory evidence of committed financing or current audited financial statements or other form of financial and/or credit-quality disclosure reasonably sufficient to ascertain such Potential Bidder's ability to consummate the sale and not be conditioned on obtaining financing or on the outcome of any due diligence;

(g) not request or entitle the Potential Bidder to any break-up fee, expense reimbursement or similar type of payment;

(h) fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid and the complete terms of any such participation;

(i) be accompanied by a letter from the Potential Bidder stating that (i) the bidder is prepared to enter into and consummate the proposed transaction in accordance with the terms of the Purchase Agreement after approval by the Bankruptcy Court of the Sale Order, subject to receipt of any applicable governmental or regulatory approval, (ii) the Potential Bidder will make all necessary federal, state or local filings, pay all costs and expenses associated with such filings (including the costs and expenses of the Debtors), and (iii) such Potential Bidder's offer is irrevocable until the date that is twenty (20) days after the conclusion of the Sale Hearing with respect to the Purchased Assets unless such bidder is the Backup Bidder, and then the offer shall remain irrevocable until the closing of the sale of the Purchased Assets; and

(j) be delivered to counsel for the Debtors, HSBC Bank and the Committee on or before the Bid Deadline.

As promptly as practicable after a Potential Bidder delivers a bid, the Debtors shall determine, in consultation with HSBC Bank and the Committee, and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder with respect to the Purchased Assets. The Debtors may waive any requirements for Qualified Bidders or Qualified Bids.

### Bid Deadline

A Potential Bidder that desires to make a bid shall deliver (i) written and electronic copies of its bid and (ii) its Bid Deposit so that they are actually received not later than **4:00 p.m. (prevailing Eastern Time) on April 11, 2019** (the "Bid Deadline") by (i) the Debtors' counsel, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202 (Attn: Stephen A. Donato, Esq., sdonato@bsk.com and Camille W. Hill, Esq., chill@bsk.com); (ii) HSBC Bank's counsel, Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York 14203-2887 (Attn: William J. Brown, Esq., wbrown@phillipslytle.com and Angela Z. Miller, Esq., amiller@phillipslytle.com); and (iii) the Committee's counsel, CKR Law LLP, 1330

4

Avenue of the Americas, 14th Floor, New York, New York 10019 (Attn: David M. Banker, Esq., dbanker@ckrlaw.com and Gilbert R. Saydah, Jr., Esq., gsaydah@ckrlaw.com). The Debtors may extend the Bid Deadline once or successively, but is not obligated to do so. If the Bid Deadline is extended, the Debtors shall promptly notify all known Potential Bidders of such extension.

### Due Diligence

Upon a Potential Bidder's execution of a confidentiality agreement in form and substance approved by the Debtors, each Potential Bidder shall be afforded reasonable due diligence access with respect to the Purchased Assets prior to the Bid Deadline (the "Due Diligence Period"). Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets at any time prior to or after the Due Diligence Period. Due diligence access may include access to the Debtors' online data room, management presentations as may be scheduled by the Debtors, on-site inspections of the Purchased Assets and such other matters which a Potential Bidder may request and as to which the Debtors may agree. The Debtors will designate employees or other representatives to coordinate reasonable requests for additional information and due diligence access from Potential Bidders. The Debtors may, in their discretion, coordinate diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials or simultaneous attendance at management presentations or site inspections. Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Purchased Assets provided by anyone other than the Debtors or their representatives.

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine, in consultation with HSBC Bank and the Committee, that a bid made by the Potential Bidder is not a Qualified Bid.

By participating in the Auction, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets and to conduct any and all due diligence regarding the Purchased Assets prior to submitting its bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection with the Bidding Process except as expressly stated in the relevant Purchase Agreement submitted with its Qualified Bid.

### Auction

If two or more Qualified Bids with respect to the Purchased Assets have been received on or prior to the Bid Deadline, the Debtors shall conduct an auction (the "Auction") with respect to the Purchased Assets. Only Qualified Bidders who timely submit a Qualified Bid will be eligible to participate in the Auction. Notwithstanding the foregoing, an authorized representative of and counsel for HSBC Bank may attend the Auction. The Auction shall take place on **April 15,**

**2019 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, or at such other time and place as the Debtors may notify all Qualified Bidders and parties in interest. The Debtors shall provide copies of all Qualified Bids to counsel for HSBC Bank, the Office of the United States Trustee for the Northern District of New York, counsel for the Committee, and all other Qualified Bidders at least one (1) business day prior to the Auction.

Each Qualified Bidder electing to participate at the Auction must appear in person by a representative who is authorized to participate in the bidding process. No telephonic bidding will be permitted, nor will any telephonic bids be accepted.

At the commencement of the Auction, the Debtors' representatives will announce the highest or otherwise best bid for the Purchased Assets (the "Starting Qualified Bid"), determined in consultation with HSBC Bank and the Committee, and the overall consideration value ascribed to such bid (the "Bid Value"). Each Qualified Bidder present at the Auction will be permitted to increase its Initial Qualified Overbid by at least Fifty Thousand Dollars ($50,000.00) (a "Qualified Overbid"); provided, that Newco shall have the right, but not the obligation, in its sole and absolute discretion, to match Qualified Overbids made by any other Qualified Bidder (the "Matching Rights"). All subsequent bids must be in Bidding Increments of at least $50,000.00. During the course of the Auction, the Debtors, in consultation with HSBC Bank and the Committee, will inform the participants which Qualified Overbid reflects the then-highest or otherwise best offer for the Purchased Assets and the Bid Value ascribed thereto. Other than bids of Newco made pursuant to its Matching Rights, the Debtors shall not consider any subsequent bid received at the Auction unless the Bid Value of such bid exceeds the Bid Value of the Starting Qualified Bid or the then-highest Qualified Overbid by the Bidding Increment.

The Auction may be adjourned from time to time by the Debtors, but it shall not be concluded until each Qualified Bidder has had an opportunity to submit a Qualified Overbid with knowledge of the Bid Value ascribed to the Starting Qualified Bid or the then-highest Qualified Overbid, as applicable, or match, in the case of Newco, the Starting Qualified Bid or the then-highest Qualified Overbid, as applicable.

At the conclusion of the Auction, the Debtors will announce the Qualified Bid which it deems, in consultation with HSBC Bank and the Committee, to represent the highest or otherwise best bid for the Purchased Assets (such bid being the "Successful Bid" and the Qualified Bidder submitting such bid, the "Successful Bidder") and the next highest or otherwise best bid (the "Backup Bid" and the party submitting such bid, the "Backup Bidder"). The Backup Bid shall remain in full force and effect until the closing of the Sale of the Purchased Assets to the Successful Bidder. The Debtors shall require, as a condition precedent to declaring any bid the Successful Bid or the Backup Bid, that the Bid Deposits of the Successful Bidder and Backup Bidder be retained by the Debtors pending the closing of the sale of the Purchased Assets. Any Bid Deposit not applied in satisfaction of the obligations of the Successful Bidder or Backup Bidder in connection with their respective bids shall be returned not later than five (5) business days following the closing of the sale of the Purchased Assets.

3305654.2

### The Sale Hearing

A hearing to approve the Proposed Sale (the "Sale Hearing") is presently scheduled to take place on **April 17, 2019 at 1:00 p.m. (prevailing Eastern Time)** before the Honorable Margaret Cangilos-Ruiz, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of New York, United States Courthouse, James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York. At the Sale Hearing, the Debtors will seek entry of an order in form and content acceptable to HSBC Bank and the Committee, among other things, designating the Successful Bidder and the Backup Bidder, authorizing and approving the sale of the Purchased Assets to the Successful Bidder, as determined by the Debtors in consultation with HSBC Bank and the Committee and in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the relevant Purchase Agreement submitted by the Successful Bidder (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court at the Sale Hearing.

Any objections to the sale of the Purchased Assets must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Northern District of New York (Syracuse Division), on or before **12:00 p.m. (prevailing Eastern Time) on April 16, 2019**; and (d) be served so as to be received by the deadline, upon (i) counsel for the Debtors; (ii) counsel for the Purchaser; (iii) the Office of the United States Trustee for the Northern District of New York; (iv) counsel for HSBC Bank; and (v) counsel for the Committee. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved sale, the Backup Bid shall be deemed to be the Successful Bid with respect to the Purchased Assets and Atlas shall effectuate the sale of Purchased Assets to the Backup Bidder without further order of the Bankruptcy Court, and the Bid Deposit of the non-closing Successful Bidder shall be forfeited, if the failure to close is the result of a breach or failure to perform on the part of the Successful Bidder. The Debtors shall retain all rights to the Purchased Assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court. If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid (or the Backup Bid) at the Auction, (ii) definitive documentation has been executed in respect thereof, and (iii) the Bankruptcy Court has entered the Sale Order.

### Sale Closing

The closing of the Sale of the Purchased Assets to the Successful Bidder (or Backup Bidder) shall occur (i) no later than May 3, 2019 if Newco is the deemed the Successful Bidder, or (ii) within ten (10) business days following the entry of the Sale Order if a party other than Newco is deemed the Successful Bidder (or Backup Bidder), or (iii) such other later date as is mutually agreed by the Debtors, HSBC Bank, and the Successful Bidder (or Backup Bidder) in a writing dated prior to the otherwise-required Closing date.

3305654.2

## Reservation of Rights

The Debtors reserve all rights, after consultation with HSBC Bank and the Committee, to terminate the Bidding Process at any time if the Debtors determine, in their business judgment, that the Bidding Process will not maximize the value of the Purchased Assets. In addition, the Debtors reserve all rights not to submit any bid which is not acceptable to the Debtors, HSBC Bank and the Committee for approval to the Bankruptcy Court. The Debtors shall further have the right to amend the rules set forth herein for the Bidding Process or impose such other terms and conditions for the Bidding Process which the Debtors determine, in their business judgment is necessary to fulfill their fiduciary duties, provided that such modifications are not inconsistent with any Bankruptcy Court order or unacceptable to HSBC Bank and the Committee; however, the Debtors recognize that a material modification may, under the Purchase Agreement, relieve Newco of any obligation to proceed with the Auction or, if it is the Successful Bidder, to close the sale of the Purchased Assets, and Newco's ability to terminate the Purchase Agreement in accordance with its terms is fully preserved. Without limiting the generality of the foregoing, the Debtors may reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Debtors' discretion, and in consultation with HSBC Bank and the Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

3305654.2