UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

CENTERSTONE LINEN SERVICES, LLC
ATLAS HEALTH CARE LINEN SERVICES CO., LLC
ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC
ALLIANCE LAUNDRY & TEXTILE SERVICE OF
ATLANTA, LLC, and
ALLIANCE LTS WINCHESTER, LLC
d/b/a Clarus Linen Systems[1],

          Debtors.

Case No.:  18-31754 (Main Case)
          18-31753
          18-31755
          18-31756
          18-31757

Chapter 11 Cases
Jointly Administered

-------------------------------------------------------------X

## UPSTATE NEW YORK BAKERY DRIVERS AND INDUSTRY PENSION FUND'S OBJECTIONS TO (1) THE ASSUMPTION, ASSIGNMENT AND TRANSER OF AN ASSIGNED CONTRACT; AND (2) THE ASSERTED CURE AMOUNT

Upstate New York Bakery & Industry Pension Plan, by and through its counsel, Bisceglie & Associates, P.C., submits this Objection to the Notice of Assumption filed on March 21, 2019 (the "Assumption Notice") [Dkt.302], and states as follows:

### FACTS

1.    Upstate New York Bakery Drivers and Industry Pension Fund ("the Plan") was established in 1957 through the joint efforts of the Union and Contributing Employers.

2.    The Plan provides pension and survivor benefits to eligible participants and their beneficiaries. The Plan currently covers participants under a Collective Bargaining Agreement (the "CBA") with Teamsters Local Nos. 118, 294 and 529.

3.    The employees of the Debtors are covered by the Plan, pursuant to the CBA, attached hereto as Exhibit A.

4.    The Debtors are Contributing Employers of the Plan pursuant to the CBA.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen System (268`) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"' Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LT Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

5. On or about February 26, 2018, Counsel provided the Debtor with a detailed estimate of the Debtor's liability if the Debtor completely withdrew from the Fund. *See* **February 2018 Estimate** attached hereto as Exhibit B.

6. On or about July 24, 2018, the Plan notified the Debtors that the Plan was going to file a lawsuit against the Debtors for their withdrawal liabilities under the Plan (*see* Exhibit C).

7. In response, the Debtors made contribution arrearage payments for their Employer Contributions to the Plan in the total amount of $127,435.95 by November 12, 2018. Accordingly, the Plan decided to rescind the Debtors withdrawal liability (*see* Exhibit D).

8. Approximately five (5) month later, on or about April 3, 2019, the Debtor, along with several other associated companies, filed for Chapter 11.

9. On April 5, 2019, the Plan filed Form 410, Proof of Unsecured Claim and Section 503(b)(9) Administrative Expense Claim, claiming Withdrawal Liability pursuant to ERISA Sections 4201, 4203 and 4219(b)(1).

10. The amount of the Withdrawal Liability is $2,079,681.00. *See* Notice of Claim and attachments, attached hereto as Exhibit E.

### The Notice of Assumption and Assignment

11. Exhibit A of Schedule 3 of the Debtors' Notice of Assumption and Assignment identifies the CBA as a potential assigned contract and lists a cure amount of $0.

12. The Plan objects to the cure amount because Debtors have been aware since at least February 2018 that their withdrawal liability is over one (1) million dollars.

13. As set forth in the Plan's Notice of Claim, the correct cure amount is $2,079,681.00.

14. The Plan also objects to the assumption and assignment of the CBA because Article V, paragraph 5.5 falsely claims that no litigation or claims have been asserted against the Debtors. The Debtors are aware that the Plan was in the process of filing a complaint against the Debtors for failure to make their withdrawal liability payments when the Debtors made additional payments to the Plan

(see correspondences attached as Exhibit C).

15. The Plan also objects to the assumption and assignment of the CBA because the Debtors and the Purchaser are unable to comply with 11 U.S.C. §365(b). In particular, the Debtor, upon transfer of the CBA, creates a default that cannot be cured, and no adequate assurance of cure is possible.

16. The Plan further objects to Article X paragraph 10.2 of the Debtors' Notice of Assumption and Assignment to the extent that it purports to include the CBA as an Excluded Liability, thereby shirking any and all responsibility for withdrawal liability. Specifically, under Article X 10.1(b) the Plan further objects since the Purchaser failed to provide seller with a list of all seller's employees ("transferred employees") to whom Purchaser has made an offer of employment to be effective on the closing date; and if known, identify whether the offer of employment has been accepted. No such list of transferred employees by the Purchaser has been provided. Consequently, the Plan is unable to ascertain whether or not the asset sale would constitute a complete or partial withdrawal under ERISA 4204, 29 USC Section 1384.

17. As set forth in *Tsareff v. Manweb Servs.*, 794 F.3d 841 (7th Cir 2015), a purchaser can be found to have successor liability for withdrawal liabilities where the purchaser had notice of the withdrawal liabilities. Notice can be established by the fact that the Debtors' are parties to the CBA, therefore the Purchaser is fully aware that the Debtor contributed to a multi-employer pension plan on behalf of its Teamster employees, as well as based on receipt of the Plan's Notice of Claim. The Debtors' withdrawal liabilities, therefore, cannot be excluded.

18. Under ERISA Section 4204, an employer selling assets to an unrelated third-party purchaser is relieved of primary withdrawal liability if certain conditions are satisfied: (1) the purchaser assumes substantially the same number of contribution base units that the seller had prior to the sale. [Based upon the Asset Purchase Agreement that benchmark cannot be determined]; (2) The purchaser posts a bond for five (5) years equal to the greater of: (a) average annual contribution required to be

made by the seller for the three (3) plan years prior to the plan year in which the sale of the assets occurred; or (b) annual contributions that the seller was required to make for the last plan year prior to the sale of assets; (3) seller be held secondarily liable if the purchase completely or partially withdraws during the five (5) year period following the sale and the purchaser fails to pay its withdrawal liability. Neither the Debtor nor Purchaser have met their obligations under ERISA. Moreover, neither party has provided adequate assurance of future performance.

19. If the seller distributes all or substantially all of its assets or liquidates before the expiration of the five (5) year period, the seller must post a bond or establish an escrow account equal to the present value of the withdrawal liability that the seller would have had but for the application of ERISA Section 4204. ERISA section 4202 (a) (3). No offer on the posting of a bond or establishing an escrow account has been addressed by the Debtor and/or Purchaser.

20. Therefore, the Debtor/Purchaser have failed to address their obligations under ERISA Section 4204. To allow Debtor/Purchaser to bypass their obligations would undermine the rights and privileges of the hardworking pensioners, as well as survivor benefits to eligible participants and their beneficiaries under the Plan.

21. The Plan, therefore, is entitled to receive payment of $2,079,681.00 upon the assignment and assumption of the CBA.

22. The Plan further objects to the Notice of Assignment and Assumption because there has been no demonstration of adequate assurance of future performance as required by 11 U.S.C. §365(b)(1)(C). Furthermore, the Plan does not believe that the Debtor or Purchaser will be able to provide adequate assurance of future performance.

**WHEREFORE**, the Plan respectfully requests that the Court (I) sustain the Plan's objections to the Assumption, Assignment and Cure of the CBA, (ii) enter an order establishing that the cure payment owed to the Plan is $2,079,681.00, (iii) deny the Debtors' request to assume and assign the CBA pending the Debtors and/or Purchaser ability to demonstrate compliance with ERISA, and (iv) requests such other and further relief as may be just and proper.

Dated: Mineola, New York
    April 23, 2019

        Respectfully submitted,
        **BISCEGLIE & ASSOCIATES, P.C.**

        Angelo R. Bisceglie, Jr.
        1527 Franklin Avenue, Suite 301
        Mineola, New York
        (516) 414-2900
        (888) 688-4206

To:    All Counsel of Record (via CM/ECF notice)