Hearing Date: May 8, 2019
Hearing Time: 11:00 a.m.
Hearing Location: Syracuse, NY

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) Case Nos. |
| CENTERSTONE LINEN SERVICES, LLC, | ) 18-31754 (main case) |
| Atlas Health Care Linen Services Co., LLC, | ) 18-31753 |
| Alliance Laundry & Textile Service, LLC, | ) 18-31755 |
| Alliance Laundry and Textile Service of Atlanta, LLC, and | ) 18-31756 |
| Alliance LTS Winchester, LLC | ) |
| d/b/a Clarus Linen Systems[1], | ) 18-31757 |
| | ) |
| Debtors. | ) Chapter 11 Cases |
| | ) Jointly Administered |
| | ) |

**DEBTOR'S RESPONSE TO UPSTATE NEW YORK BAKERY
DRIVERS AND INDUSTRY PENSION FUND'S OBJECTIONS TO
(1) THE ASSUMPTION, ASSIGNMENT AND TRANSFER OF AN
ASSIGNED CONTRACT; AND (2) THE ASSERTED CURE AMOUNT**

Debtor Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (the "Debtor"), by and through its undersigned counsel, hereby files this Response to *Upstate New York Bakery Drivers and Industry Pension Fund's ("Upstate") Objections to (1) The Assumption, Assignment and Transfer of an Assigned Contract; and (2) The Asserted Cure Amount* [Dkt. No. 366] (the "Objection"), and respectfully sets forth as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892) ("Winchester").

3340603.1

# BACKGROUND

1. On December 19, 2018 (the "Petition Date"), the Debtor and four affiliates filed separate, voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court, commencing their chapter 11 cases (the "Chapter 11 Cases"). The Debtor remains in possession of its assets and continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 20, 2018, the Bankruptcy Court entered orders authorizing the joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. The Debtor is the operator of linen rental and commercial laundry facilities located in Buffalo and Syracuse, New York.

## A. The Pension Plan

3. Upstate is the sponsor of a multi-employer employee benefit plan (the "Pension Plan") within the meaning of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"). 29 U.S.C. § 1002(3) and 1002(37).

4. The Debtor has certain obligations to make contributions to the Pension Plan pursuant to a pre-petition Collective Bargaining Agreement with Teamster Local Union 294 (the "CBA") that covers certain of its employees employed at the Buffalo and Syracuse facilities.

5. On February 26, 2018, Upstate's counsel sent a Notice and Demand for Withdrawal Liability Payments to the Debtor advising the Debtor that Upstate deemed the Debtor withdrawn from the Pension Plan effective January 29, 2018 due to the Debtor's failure to submit the required employer contributions. The withdrawal liability was calculated at that time to be $1,600,751.

6. On or about July 24, 2018, Upstate's counsel sent a further Notice informing the Debtor that Upstate would commence litigation without further warning if the withdrawal liability was not paid.

7. On November 1, 2018, Upstate's counsel sent a letter to the Debtor advising that, as a result of the Debtor's good faith effort to become current in its contribution obligations under the Pension Plan, counsel would recommend that Upstate rescind the Debtor's withdrawal liability status. Upon information and belief, the Debtor's withdrawal liability status was rescinded and the Debtor was reinstated as a participant under the Pension Plan.

### B. The Asset Sale

8. On March 13, 2019, the Debtor and its affiliate, Centerstone, filed the *Motion by Debtors Centerstone Linen Services, LLC d/b/a Clarus Linen Systems and Atlas Health Care Linen Services Co. d/b/a Clarus Linen Systems for Orders (A) (i) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, Subject to the Terms of the Asset Purchase Agreement and Subject to Higher and/or Better Offers; (ii) Authorizing and Approving the Form of a Certain Asset Purchase Agreement With Linen Newco LLC; and (iii) Authorizing the Debtors to Consummate All Transactions Related to the Proposed Sale; (B) Approving Bidding Procedures and Other Related Relief; and (C) Authorizing the Debtors to Assume Certain Executory Contracts and Unexpired Leases and Assign Such Contracts and Leases to Purchaser Linen Newco LLC* (the "Sale Motion"). The Debtor and Centerstone seek to sell substantially all of their assets located in New York State pursuant to the Sale Motion.

9. On March 20, 2019, the Debtor served a Notice of Assumption and Assignment on approximately 325 non-debtor parties to executory contracts and unexpired leases, including

Upstate, in connection with the Sale Motion. The Notice of Assumption and Assignment (the "Notice") contains a list of all the Debtor's and Centerstone's executory contracts and unexpired leases, as well as a proposed cure amount for each contract and lease. As no prospective purchaser has yet identified specific contracts or leases which it seeks to have assigned to it under section 365(b)(1)(A) of the Bankruptcy Code, the Notice of Assumption and Assignment did not identify any such contracts or leases as being assumed by the Debtor or Centerstone.

10. On April 24, 2019, Upstate filed the Objection and asserts that (i) the Pension Plan is entitled to receive payment of a $2,079,681.00 withdrawal liability claim (the "Withdrawal Liability Claim") upon the assumption and assignment of the CBA and Pension Plan to the purchaser of the Debtor's assets and (ii) the Debtor is unable to provide adequate assurance of future performance of the Pension Plan as required by section 365(b)(1)(C) of the Bankruptcy Code.

## DISCUSSION

11. The Bankruptcy Code provides in relevant part: "If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-- (A) cures, or provides adequate assurance that the trustee will promptly cure." 11 U.S.C. 365(b)(1)(A).

12. The term "default" is not defined in the Bankruptcy Code but Courts in the Second Circuit have held "default" to mean "failure to perform or fulfill some obligation or duty imposed by law or contract." *In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 49 (Bankr. S.D.N.Y. 2005). Thus, in order for the Debtor to be obligated to pay a cure amount before assuming the Pension Plan, it must relate to a default under the Pension Plan.

13. The Debtor respectfully submits, however, that the Withdrawal Liability Claim does not constitute a pre-petition default required to be cured by the Debtor upon assumption of the CBA and Pension Plan under section 365(b)(1)(A) of the Bankruptcy Code. The Second Circuit has noted that "withdrawal liability does not derive from the collective bargaining agreement but from [ERISA] and that reliance on § 365 of the Bankruptcy Code would appear to conflict with [ERISA's] provision, 29 U.S.C. § 1383(a), (e), that withdrawal occurs when an employer 'permanently ceases all covered operations under the plan'." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 104 n.2 (2d Cir. 1986).

14. The Withdrawal Liability Claim does not currently exist, and will not exist, until the Debtor closes the sale of its assets and ceases to be a contributing member of the Pension Plan. Although the Debtor's withdrawal liability will be established during the post-petition period, the resulting Withdrawal Liability Claim will be deemed a pre-petition unsecured claim. *Id. at* 103-04. The Withdrawal Liability Claim, therefore, is a pre-petition *claim*, not a pre-petition *default*, for purposes of section 365(b)(1)(A) of the Bankruptcy Code and is not required to be cured in connection with the assignment of the Pension Plan to the successful bidder.

15. Furthermore, Upstate has not cited a single bankruptcy case in support of its position that withdrawal liability arising under ERISA must be cured before the Pension Plan can be assumed and assigned. Upstate, therefore, has failed to meet its burden to establish that a pre-petition default has occurred with regard to the Withdrawal Liability Claim that would give rise to the need to cure. *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990) ("proof of the amount of any monetary default is the ultimate responsibility of the non-bankrupt party").

16. Upstate also seeks to hold the assignee of the Pension Plan (the successful bidder for the Debtor's assets) liable for the withdrawal liability under a theory of successor liability. Upstate cites section 4204 of ERISA and *Tsareff v. Manweb Servs.*, 794 F.3d 841, 843 (7th Cir. 2015) in support of its position that the Debtor has not complied with ERISA requirements to become exempt from withdrawal liability after an asset sale. *See* Objection, ¶¶ 17-20. This might be true outside of the bankruptcy context; however, section 363(f) of the Bankruptcy Code allows for the sale of assets to be free and clear of liens, claims and encumbrances, including withdrawal liability claims. See, *In re Ormet Corp.*, No. 13-10334 (MFW), 2014 Bankr. LEXIS 3071, at *8 (Bankr. D. Del. July 17, 2014) (concluding that "the Congressional policy favoring multi-employer pension plans expressed in ERISA and MPPAA does not trump the express provisions of the Bankruptcy Code permitting the sale of the Debtor's assets free and clear of the Trust's successor liability claim").

17. Finally, the Debtor anticipates that it will be able to provide adequate assurance of future performance under the Pension Plan once it has determined the successful bidder for the purchase of its assets following the expiration of the Bid Deadline on May 2, 2019 and the conclusion of the Auction on May 6, 2019.

**WHEREFORE**, based on the foregoing, the Debtor respectfully requests that the Court enter an order overruling the Objection, and granting such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
| Dated: May 1, 2019<br>Syracuse, New York | BOND, SCHOENECK & KING, PLLC<br><br>By:  /s/ Camille W. Hill<br>Stephen A. Donato, Bar Roll No. 101522<br>Camille W. Hill, Bar Roll No. 501876<br>Andrew S. Rivera, Bar Roll No. 700712<br>Office and Post Office Address:<br>One Lincoln Center<br>Syracuse, New York 13202<br>Tel: (315) 218-8000<br>Fax: (315) 218-8100<br>Email:  sdonato@bsk.com<br>            chill@bsk.com<br>            arivera@bsk.com<br><br>*Counsel to the Debtors and Debtors in Possession* |