

Hearing Date:  June 27, 2019
Hearing Time:  9:30 a.m.
Hearing Location:  Syracuse, New York

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                              )
                                                                        )
                                                                        )  Case Nos.
CENTERSTONE LINEN SERVICES, LLC,           )  18-31754 (main case)
Atlas Health Care Linen Services Co., LLC,           )  18-31753
Alliance Laundry & Textile Service, LLC,             )  18-31755
Alliance Laundry and Textile Service of Atlanta, LLC, and  )  18-31756
Alliance LTS Winchester, LLC                           )  18-31757
*d/b/a Clarus Linen Systems*[1],                            )
                                                                        )  Chapter 11 Cases
                                        Debtors.                )  Jointly Administered
                                                                        )
                                                                        )
                                                                        )

**MOTION BY DEBTOR ATLAS HEALTH CARE LINEN SERVICES
CO., LLC d/b/a CLARUS LINEN SYSTEMS FOR ORDER (I) DETERMINING
THAT THE WORKERS' COMPENSATION INSURANCE POLICY ISSUED BY
GREAT AMERICAN ALLIANCE INSURANCE COMPANY CONTINUES UNTIL
AUGUST 13, 2019; (II) AWARDING DAMAGES AND SANCTIONS AGAINST
GREAT AMERICAN ALLIANCE INSURANCE COMPANY FOR VIOLATING
THE AUTOMATIC STAY; AND (III) ISSUING A FINDING OF CONTEMPT
AS AGAINST GREAT AMERICAN ALLIANCE INSURANCE COMPANY**

Debtor Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems ("Atlas")

a debtor and debtor in possession in the above-captioned cases, by and through its undersigned

counsel, as and for its motion requesting the entry of an Order: (i) determining that the Workers'

Compensation Policy (the "WC Policy") issued to Atlas and its affiliated debtors by Great

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594) ("Centerstone"); Atlas Health
Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681) ("Atlas"); Alliance Laundry & Textile Service,
LLC d/b/a Clarus Linen Systems (8284) ("Alliance"); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a
Clarus Linen Systems (4065) ("Atlanta"); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892)
("Winchester").

American Alliance Insurance Company ("Great American") continues in effect until August 13, 2019 under its existing terms and conditions; (ii) awarding damages and sanctions against Great American for violating the automatic stay by improperly terminating the WC Policy issued to Atlas and its affiliated debtors; (iii) issuing a finding of contempt as against Great American; and (iv) granting such other and further relief as the Court deems just and proper (the "Motion"), respectfully set forth as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b).

2.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (M) and (O).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4.      The statutory bases for the relief requested are sections 105(a) and 362(a)(3) of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code") and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## BACKGROUND

5.      Atlas is a Delaware limited liability company and the corporate affiliate of debtors Centerstone, Alliance, Atlanta and Winchester (collectively, the "Debtors"). Atlas operates a commercial laundry facility in Syracuse, New York (the "Syracuse Facility") and is a provider of high-quality linen rental and commercial laundry services to the healthcare industry, primarily supplying scrubs, sheets, towels, blankets, patient apparel and other linen products to hospitals and healthcare clinics via long-term contacts. Prior to June 24, 2019, Atlas also operated a commercial laundry facility in Buffalo, New York.

6.    On December 19, 2018 (the "Petition Date"), the Debtors filed separate, voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases").

7.    Atlas remains in possession of the Syracuse Facility and related assets (collectively, the "Syracuse Assets") and continues to operate the Syracuse Assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 10, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in the Chapter 11 Cases.  No request for the appointment of a trustee or examiner has been made.

8.    Atlas is currently in the process of negotiating an asset purchase agreement with a prospective purchaser for the sale of the Syracuse Assets as a going concern, and anticipates filing a motion under section 363 to approve that sale within the next week.  Atlas anticipates that the sale of the Syracuse Assets will close on or around July 31, 2019.  As the Court is aware, Alliance closed sales of its assets on February 22 and 26, 2019, and Atlas and Centerstone closed the sale of their Buffalo assets on June 24, 2019.  Debtors Atlanta and Winchester closed their respective laundry facilities and sold or transferred their assets prior to the Petition Date.

9.    Attached hereto in support of the Motion as **Exhibit "A"** is the Affidavit of Ronald Teplitsky, the Debtors' Chief Financial Officer, sworn to the 25th day of June 2019 (the "Teplitsky Affidavit") which sets forth the underlying facts concerning the issuance of the WC Policy, the collateral pledged by the Debtors thereunder, Great American's failure to provide a timely 75-day notice of non-renewal of the WC Policy to the Debtors, and the untimely renewal proposal tendered by Great American to Atlas.

10.    As discussed more fully below, the WC Policy remains in effect for 75 days after service of a proper Notice of Non-Renewal under applicable New York law.  In light of Great American's failure to provide timely notice of non-renewal on April 19, 2019 (Teplitsky Aff., ¶¶ 9-10), at best, the existing terms and conditions of the WC Policy remain in effect until August 13, 2019, 75 days after Great American actually sent the Notice of Non-Renewal to Atlas on May 30, 2019.  *Id.* at ¶ 10.  However, Atlas also respectfully submits that the untimely Notice of Non-Renewal is completely ineffective and should be reissued.

## RELIEF REQUESTED

11.    By this motion, the Debtors request that the Court issue an Order: (i) determining that the WC Policy continues in effect until at least August 13, 2019, or date on which Atlas closes the sale of the Syracuse Assets; (ii) pursuant to sections 105(a) and 362(a)(3) of the Bankruptcy Code, determining that Great American violated the automatic stay by interfering with Atlas's rights under the WC Policy and threatening to terminate the WC Policy based upon Great American's untimely notice of non-renewal, which actions would jeopardize the Syracuse operations and Atlas's ability to sell the Syracuse Assets as a going concern; and (iii) pursuant to FRBP 9014 and 9020, issuing a finding of contempt of court as against Great American and awarding damages and sanctions against Great American for violating the automatic stay.

## ARGUMENT

### A.  The May 30, 2019 Notice of Non-Renewal is Ineffective to Terminate the WC Policy

12.    In New York, the law mandates that all employers obtain and provide workers' compensation insurance coverage for their employees.  N.Y. Work. Comp. Law § 10(1) (McKinney's 2019).  Further, an insurer cannot refuse to renew an existing workers' compensation policy without sending a specified notice to the employer of its intention not to

4

renew.  N.Y. Work. Comp. Law § 54(5)(a).  Failure to comply with this notice provision will

result in the continuation of the subject insurance policy after the expiration date of the policy.

Work. Comp. Law § 54(5)(b); *Rue v. Northeast Timber Erectors, Inc.*, 289 A.D.2d 787 (3rd Dept.

2001).

13.     Section 54(5)(a) of the New York Workers' Compensation Law provides that

"[n]o insurer shall refuse to renew any policy insuring against liability arising under this chapter

unless at least thirty days prior to its expiration notice of intention not to renew has been filed in

the office of the chair and also served on the employer."  N.Y. Work. Comp. Law § 54(5)(a)[2].

Section 54(5)(a) further provides that "[i]n the event such cancellation or termination is not filed

with the chair within the required time period, the chair shall impose a penalty in the amount of

up to five hundred dollars for each ten-day period the insurance carrier or state insurance fund

failed to file the notification."  *Id.*

14.     In addition, section 54(5)(b) of New York Workers' Compensation Law provides

that:

> A contract of insurance shall remain in full force and effect subject to the
> same rates as the expiring contract of insurance rates, unless written notice
> is mailed or delivered by the insurance carrier to the employer, at the
> address shown on the policy, and to such employer's authorized agent or
> broker, indicating the insurance carrier's intention to condition renewal
> upon issuance of a policy that supersedes a policy previously issued by
> another insurance carrier under common control that will result in an
> increased premium in excess of ten percent . . .
>
> ***
>
> Such notice shall be mailed or delivered at least thirty days in advance of
> the expiration date of the policy, and shall set forth the amount of the
> premium increase (or, where such amount cannot reasonable be
> determined as of the time the notice is provided due to failure of the
> policyholder to provide to the insurance carrier the information necessary

[2] The Debtors paid an additional sum to Great American so that their applicable notice period would be 75 days.
Teplitsky Aff., ¶ 9.

to determine the premium, a reasonable estimate of the premium increase based upon the information available to the insurance carrier at that time).

N.Y. Workers' Comp. Law § 54(5)(b).

15.    The foregoing provisions are intended to protect employers from being subjected to personal and even criminal liability from an unexpected lapse in coverage without being given a proper opportunity to protect themselves by obtaining other coverage. If Atlas does not have workers' compensation insurance, it will be required to cease operating the Syracuse Facility immediately, thus jeopardizing the going-concern value of its business. This would significantly impact the value of those assets, Atlas's employees, its creditors and its estate.

16.    The Debtors complied with the New York statute by obtaining workers' compensation coverage from Great American and serially renewing the WC Policy since 2013. The Debtors paid an additional sum to Great American for the Notice Endorsement so that they would have ample time to obtain substitute coverage in the event Great American elected not to renew the WC Policy. Great American, however, violated sections 54(5)(a) and (b) of the New York Workers' Compensation Law by failing to both (i) provide the required 75-day Notice of Non-Renewal and (ii) provide the terms of renewal at least thirty days in advance of the expiration date of the policy. Great American gave the Debtors only 34 days' notice of non-renewal, and provided only nine days' notice of the proposed renewal terms. Further, it is unclear whether Great American also complied with the requirement that the Notice be served on Office of the Chair of the Workers' Compensation Board. If not, the Notice of Non-Renewal may be void in its entirety, and a new Notice must be issued thus commencing a new 75-day period.

17.    In light of Great American's failures, Atlas respectfully submits that the WC Policy remains in full force and effect under its existing terms until (i) at least the earlier of the

closing of the Syracuse Asset sale or August 13, 2019, 75 days after Great American mailed the
May 30 Notice of Non-Renewal, or (ii) a later date if Great American is required to reissue the
Notice of Non-Renewal.

### B. **Great American Violated the Automatic Stay When It Issued An Untimely Notice of Non-Renewal and Failed to Acknowledge the Continuation of the WC Policy Until August 13, 2019**

18.     Section 362(a) of the Bankruptcy Code provides that "a petition filed under
section 301 . . . of this title . . . operates as a stay, applicable to all entities, of

> (3)     any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . .

11 U.S.C. § 362(a)(3).

19.     Section 105(a) of the Bankruptcy Code authorizes a court to issue "any order,
process or judgment that is necessary or appropriate to carry out the provisions of this title." 11
U.S.C. § 105(a).  Under this section, a corporation may be entitled to recover for a stay violation
as a sanction for civil contempt.  *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re
Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2d Cir. 1990) ("contempt proceedings are the proper
means of compensation and punishment for willful violations of the automatic stay");  *Ball v.
A.O. Smith Corp.*, 321 B.R. 100, 108 (N.D.N.Y 2005); *Rediger Invs. Corp. v. H Granados
Communs., Inc. (In re H Granados Communs., Inc.)*, 503 B.R. 726, 733 (B.A.P. 9th Cir. 2013).

20.     To demonstrate contempt, the moving party must show "maliciousness or lack of
a good faith argument and belief that the party's actions were not in violation of a bankruptcy
stay."  *See, Maritime* at 186-187; *See also*, *Ball v. A.O. Smith Corp.*, 321 B.R. 100, 108
(N.D.N.Y 2005).

21.    Great American has been aware of the Debtors' pending Chapter 11 Cases and the WC Policy's July 3, 2019 expiration date since the Petition Date.  It is clear from Great American's conduct in demanding additional collateral in the burdensome amount of $293,000.00, for renewed coverage that will run only through mid-August, 2019, that Great American is not acting in good faith with regard to Atlas and seeks only to rid itself of its obligations to Atlas and the Debtors.  Great American's knowledge of the pending Chapter 11 Cases, combined with its failure to give 75 days' notice of non-renewal and its untimely tender of an expensive renewal proposal, are grounds for finding that Great American has violated the automatic stay by improperly controlling and interfering with the WC Policy, a valuable asset of the Debtors' estates.

22.    Based upon the foregoing, Atlas respectfully submits that Great American's violation of the automatic stay was intentional and a deliberately calculated attempt to terminate the WC Policy.  The Debtors respectfully submit that this conduct, coupled with Great American's violation of sections 54(5)(a) and (b) of the New York Workers' Compensation Law, justify an award of damages and sanctions, plus the Debtors' attorneys' fees, as against Great American in these Chapter 11 Cases.  Such conduct also supports the continuation of the existing WC Policy and its existing terms and conditions through at least the earlier of August 13, 2019 or the closing of the Syracuse Asset sale as required by sections 54(5)(a) and (b) of the New York Workers' Compensation Law.

**C.  Great American's Conduct With Regard to the WC Policy
and Its Violation of the Automatic Stay Support a Finding
of Contempt of Court Should Be Issued Against Great American**

23.    The Bankruptcy Court has "the power, under 11 U.S.C. § 105 and Bankruptcy Rule 9020, to hear and determine a request for contempt emanating from the violation of one of

8

its orders in a core proceeding." *MCI Worldcom Communications, Inc. et al. v. HSG/ATN, Inc. (In re Worldcom, Inc.)*, 361 B.R. 697, 721 (Bankr. S.D.N.Y. 2007) (quoting *In re Hulon*, 92 B.R. 670, 675 (Bankr. D. Tex. 1988)). Violations of section 362(a)(3) of the Bankruptcy Code can be grounds for a finding of contempt of court against the offending party. *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d at 186-187; *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1104 (2d Cir. 1990).

24.    As set forth above and in the Teplitsky Affidavit, Great American's conduct in these Cases lacks good faith and is jeopardizing Atlas's ability to continue operating the Syracuse Facility. Great American's attempt to remedy its failure to abide by the terms of the Notice Endorsement and the New York Workers' Compensation Law by providing an expensive last-minute renewal proposal to Atlas is ineffective. The fact remains that Great American has violated the automatic stay by improperly interfering with the WC Policy and is in contempt of court for such action. Consequently, a finding of contempt, and the imposition of damages and sanctions, should be issued as against Great American.

**WHEREFORE**, based upon the foregoing, Atlas respectfully requests that the Court issue an Order:

(a)    determining that the term of the WC Policy extends to at least the earlier of the closing of the Syracuse Asset sale or August 13, 2019, or such later date if the Notice of Non-Renewal must be reissued;

(b)    determining that Great American violated the automatic stay by failing to timely renew the WC Policy and seeking to terminate the WC Policy based upon that

failure, imposing sanctions as against Great American and awarding damages and attorneys' fees to Atlas;

    (c)    issuing a finding of contempt as against Great American based upon its violation of the automatic stay and imposing sanctions and damages as against Great American; and

    (d)    granting such other and further relief as the Court deems just and proper.

Date:  June 25, 2019
       Syracuse, New York

                           **BOND, SCHOENECK & KING, PLLC**

               By:     *Camille W. Hill*

                         Stephen A. Donato, Esq., Bar Roll No. 101522
                         Camille W. Hill, Esq., Bar Roll No. 501876
                         Office and Post Office Address:
                         One Lincoln Center
                         Syracuse, New York 13202
                         Tel: (315) 218-8000
                         Fax: (315) 218-8100
                         Email: sdonato@bsk.com
                                  chill@bsk.com

                         *Counsel to the Debtors and Debtors in Possession*

3367874.1