UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| CENTERSTONE LINEN SERVICES, LLC, | ) |
| ATLAS HEALTH CARE LINEN SERVICES CO., LLC, | ) |
| ALLIANCE LAUNDRY & TEXTILE SERVICE, LLC, | ) |
| ALLIANCE LAUNDRY AND TEXTILE SERVICE OF | ) |
| ATLANTA, LLC, and | ) |
| ALLIANCE LTS WINCHESTER, LLC | ) |
| *d/b/a Clarus Linen Systems*[1], | ) |
| | ) |
| | ) |
| Debtors. | ) |

Case Nos.
18-31754 (Main Case)
18-31753
18-31755
18-31756
18-31757

Chapter 11 Cases
Jointly Administered

**DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION
DATED AUGUST 2, 2019**

**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato, Esq.
Camille W. Hill, Esq.
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Email: sdonato@bsk.com
         chill@bsk.com

*Counsel to the Debtors*

_____

[1]      The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Centerstone Linen Services, LLC d/b/a Clarus Linen Systems (5594); Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems (2681); Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems (8284); Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems (4065); and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems (0892).

3384924.4

Table of Contents

Page

SECTION 1.    DEFINITIONS AND INTERPRETATION ............................................................. 1

    A.    Definitions .................................................................................................................. 1

    B.    Interpretation:  Application of Definitions and Rules of Construction ................. 10

SECTION 2.    TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS, HSBC
    BANK ADMINISTRATIVE DIP CLAIM AND U.S. TRUSTEE FEES ............ 10

    2.1    Administrative Claims ...................................................................................... 10

    2.2    Fee Claims ........................................................................................................ 11

    2.3    HSBC Bank Administrative DIP Claim ……………………….............11

    2.4    U.S Trustee Fees .............................................................................................. 11

SECTION 3.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 11

    3.1    Substantive Consolidation of the Debtors for Plan Purposes Only .........11

    3.2    Classification and Specification of Treatment of Claims ......................... 12

    3.3    Classes of Claims ............................................................................................ 12

    3.3.1    Class 1 – HSBC Bank Secured Claim ..................................................... 12

    3.3.2    Class 2 – Unsecured Priority Claims ....................................................... 12

    3.3.3    Class 3 – Unsecured Claims ..................................................................... 13

    3.3.4    Class 4 – Interests .................................................................................... 13

SECTION 4.    ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 13

    4.1    Impaired Classes Vote ..................................................................................... 13

    4.2    Presumed Acceptance of the Plan ................................................................... 14

    4.3    Presumed Rejection of the Plan ...................................................................... 14

    4.4    Voting Classes .................................................................................................. 14

    4.5    Nonconsensual Confirmation .......................................................................... 14

    4.6    Elimination of Vacant Classes ........................................................................ 14

SECTION 5.    MEANS FOR IMPLEMENTATION OF PLAN ............................................... 14

    5.1    Substantive Consolidation for Plan Purposes Only ................................... 14

    5.2    Funding for this Plan ........................................................................................ 15

    5.3    Implementation ................................................................................................. 15

    5.4    Corporate Action .............................................................................................. 16

    5.5    Vesting of Assets in the Liquidating Trustee ................................................. 16

    5.6    Continuing Existence ........................................................................................ 16

3384924.4

Table of Contents (continued)

Page

5.7     Causes of Action ............................................................................. 16

5.8     Agreements, Instruments, and Documents ...................................... 16

5.9     Closing of the Debtors' Chapter 11 Cases ...................................... 16

5.10    Corporate Dissolution ..................................................................... 17

5.11    Bar Date for Fee Claims ................................................................. 17

5.12    Bar Date for Other Administrative Claims ..................................... 17

5.13    Further Authorization ..................................................................... 17

5.14    Dissolution of the Committee ......................................................... 17

SECTION 6.    PLAN PROVISIONS REGARDING LIQUIDATING TRUSTEE ................... 18

6.1     Appointment of the Liquidating Trustee ......................................... 18

6.2     Powers and Duties of the Liquidating Trustee ................................ 18

6.3     Liquidating Trustee Compensation and Employment of Professionals.... 19

6.4     No Agency Relationship .................................................................. 20

6.5     Liquidating Trustee's Bond ............................................................. 20

6.6     Reporting ........................................................................................ 20

6.7     Grantor Trust .................................................................................. 20

6.8     Retention of Records ...................................................................... 20

6.9     Resitgnation, Death or Removal of Liquidating Trustee ................. 21

SECTION 7.    EXECUTORY CONTRACTS ........................................................... 21

7.1     Assumption of Assigned Contracts ................................................. 21

7.2     Rejection of Excluded Contracts .................................................... 21

7.3     Rejection Damages ......................................................................... 21

7.4     Insurance Contracts ........................................................................ 21

SECTION 8.    DISTRIBUTION PROVISIONS ....................................................... 22

8.1     No Distributions on Account of Claims That Have Not Become
        Allowed Claims .............................................................................. 22

8.2     Reserves for Claims That Have Not Become Allowed Claims ........ 22

8.3     Persons Responsible for Distribution of Plan Consideration .......... 22

8.4     Undeliverable and Unclaimed Cash ................................................ 23

8.5     Unnegotiated Distribution Checks .................................................. 23

8.6     Fractional Dollars ........................................................................... 23

8.7     Distribution Dates .......................................................................... 23

3384924.4

Table of Contents (continued)

Page

8.8    Bankruptcy Code Sections 509 and 510 ................................................... 23

8.9    Distributions to be Applied First to Administrative and Priority
Claims ........................................................................................................ 24

8.10    Estimation of Claims.................................................................................. 24

8.11    Chapter 5 Provisions ................................................................................. 24

8.12    Orders Respecting Claims Distribution .................................................... 24

8.13    Objections to Claims.................................................................................. 25

8.14    Settlement of Disputed Claims .................................................................. 25

8.15    Setoffs ........................................................................................................ 25

8.16    Distribution Cap......................................................................................... 25

8.17    De Minimis Distributions and Final Distribution ..................................... 25

8.18    Withholding Taxes...................................................................................... 25

8.19    Distribution Record Date ........................................................................... 26

SECTION 9.    CONDITIONS PRECEDENT ................................................................ 26

9.1    Conditions to Confirmation ....................................................................... 26

9.2    Nullification of Plan................................................................................... 26

9.3    Waiver and Nonfulfillment of Conditions to Confirmation ..................... 26

9.4    Confirmation Order Provisions for Pre-Effective Date Actions............... 26

9.5    Conditions to Effective Date...................................................................... 26

9.6    Nonfulfillment of Conditions to Effective Date ....................................... 27

9.7    Effective Date Events ................................................................................ 27

SECTION 10. EFFECTS OF PLAN CONFIRMATION.................................................. 27

10.1    Satisfaction of Claims................................................................................ 27

10.2    Interest on Claims ...................................................................................... 27

10.3    Satisfaction and Release ............................................................................ 27

10.4    Exculpation ................................................................................................ 27

10.5    Injunction ................................................................................................... 27

10.6    Abandoned Property ................................................................................... 28

10.7    Post-Effective Date Effect of Evidences of Claims.................................. 28

10.8    Term of Stays ............................................................................................. 28

10.9    Retention of Jurisdiction ........................................................................... 29

10.10    Failure of the Court to Exercise Jurisdiction ............................................ 30

3384924.4

Table of Contents (continued)

| | | Page |
|---|---|---|
| SECTION 11. MISCELLANEOUS PROVISIONS | | 30 |
| 11.1 | Exemption from Transfer Taxes | 30 |
| 11.2 | Modification of Plan | 31 |
| 11.3 | Revocation of this Plan | 31 |
| 11.4 | Preservation and Application of Insurance | 31 |
| 11.5 | Successors and Assigns | 31 |
| 11.6 | Computation of Time | 31 |
| 11.7 | Notices | 31 |
| 11.8 | Headings | 32 |
| 11.9 | Severability | 32 |
| 11.10 | Validity and Enforceability | 33 |
| 11.11 | Controlling Documents | 33 |
| 11.12 | Reservation of Rights | 33 |
| 11.13 | Governing Law | 33 |

3384924.4

Debtors Centerstone Linen Services, LLC d/b/a Clarus Lien Systems ("Centerstone"), Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems ("Atlas"), Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems ("Alliance"), Alliance Laundry and Textile Service of Atlanta, LLC d/b/a Clarus Linen Systems ("Atlanta") and Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems ("Winchester") (collectively, the Debtors") propose the following Joint Chapter 11 Plan of Liquidation for the resolution of outstanding Claims against the Debtors pursuant to Chapter 11 of Title 11 of the United States Code (the "Plan"). The Debtors are the proponents of this Plan and accompanying Disclosure Statement (the "Disclosure Statement") within the meaning of Section 1129 of the Bankruptcy Code.

All holders of Claims against the Debtors are encouraged to read this Plan and the Disclosure Statement and other Plan Documents in their entirety before voting to accept or reject this Plan. The Plan Documents, once filed, shall be available for review in the Office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Claims may also obtain a copy of the Plan Documents by contacting counsel for the Debtors by a written request sent to the above address. Each of the Plan Documents is an integral part of this Plan and is hereby incorporated by reference and made a part of this Plan.

## SECTION 1.    DEFINITIONS AND INTERPRETATION

### A.    DEFINITIONS.

The following terms used herein shall have the respective meanings defined below:

1.1    ***Administrative Claim*** means a Claim for payment of an administrative expense or cost of a kind specified in Section 503(b) of the Bankruptcy Code and referenced in Sections 507(a)(2), 507(b) and 1114(e)(2) of the Bankruptcy Code including, without limitation, the actual, necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors, including wages, taxes incurred by the Estates and allowed as administrative expenses, and salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases; provided, however, the term does not include Fee Claims, U.S. Trustee Fees, or the HSBC Administrative DIP Claim, which are treated separately in this Plan. Administrative Claims also include Claims for the payment of amounts due for goods received by the Debtors in the ordinary course of business within 20 days before the Petition Date under section 503(b)(9) of the Bankruptcy Code.

1.2    ***Administrative Claims Bar Date*** means September 6, 2019.

1.3    ***Alliance*** means debtor Alliance Laundry & Textile Service, LLC d/b/a Clarus Linen Systems.

1.4    ***Alliance Assets*** means the personal property assets owned by Alliance and located at the Spartanburg Facility, the East Point Facility and the Tristate Facility.

1.5    ***Allowed*** means, with reference to any Claim and except as otherwise expressly set forth in this Plan, (i) a Claim (a) listed in the Schedules and not described on the

3384924.4

Schedules as zero, disputed, unliquidated or contingent or (b) described in a timely Filed proof of claim and, in each case, as to which no objection or request for estimation has been Filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or the Plan; (ii) a Claim as to which and solely to the extent any timely objection has been Filed is settled, waived, withdrawn or denied by a Final Order or in accordance with the Plan; or (iii) a Claim that is allowed (a) by a Final Order, (b) by an agreement between the holder of such Claim and the Debtors or (c) pursuant to the terms of the Plan.  An Allowed Claim (i) includes a disputed Claim to the extent such disputed Claim becomes Allowed after the Effective Date and (ii) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Unless otherwise specified in this Plan, in Section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distribution under the Plan, include interest on such Claim accruing from and after the Petition Date.

1.6    **Assets** means all assets and property of the Debtors of any nature whatsoever, including, without limitation, all property of their respective Estates pursuant to Section 541 of the Bankruptcy Code, Cash, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing, including without limitation, proceeds of the Asset Sales and the proceeds of the sale of any other Assets pending disbursement.  For purposes of Distributions under this Plan, "Assets" shall not include any Assets subject to restrictions that are inconsistent with the use of those Assets to satisfy Claims; except as otherwise set forth herein the Liquidating Trustee shall dispose of such Assets, if any, in accordance with applicable non-bankruptcy law, if applicable.

1.7    **Asset Sales** means the Debtors' sale of, and the respective purchaser's purchase of, the Assets (as defined in, and pursuant to the applicable Asset Purchase Agreements), which sales, for purposes of Section 1146(a) of the Bankruptcy Code, were concluded prior to the Confirmation of with this Plan

1.8    **Atlanta** means Alliance Laundry and Textile Services of Atlanta, LLC d/b/a Clarus Linen Systems.

1.9    **Atlas** means debtor Atlas Health Care Linen Services Co., LLC d/b/a Clarus Linen Systems.

1.10    **Avoidance Actions** means (i) any state law fraudulent transfer claim and (ii) any claim pursuant to Sections 502(d), 544, 545, 547, 548, 550, 552(b) or 553 of the Bankruptcy Code against any Person, other than HSBC Bank.

1.11    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Cases.

1.12    **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Northern District of New York and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom, or any successor thereto that may be established by any act

2

of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Cases or the Plan.

1.13    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended, and the Local Rules of the Court, as applicable to this Chapter 11 Cases.

1.14    ***Buffalo Assets*** means the personal property assets owned by Centerstone and Atlas located at the Buffalo Facility.

1.15    ***Buffalo Facility*** means the commercial laundry plant formerly operated by Atlas and located at 60 Grider Street, Buffalo, New York 14215.

1.16    ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday", as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Syracuse, New York.

1.17    ***Cash*** means cash and cash equivalents including, without limitation, checks and wire transfers.

1.18    ***Cash Collateral*** means as defined in section 363 of the Bankruptcy Code.

1.19    ***Causes of Action*** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.   Causes of Action also include: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to Section 362 of the Bankruptcy Code; and (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code.  The Causes of Action do not include the Avoidance Actions or the Recovery Actions.

1.20    ***Centerstone*** means debtor Centerstone Linen Services, LLC d/b/a Clarus Linen Systems.

1.21    ***Chapter 11*** means chapter 11 of the Bankruptcy Code.

1.22    ***Chapter 11 Cases*** means the above-captioned cases.

1.23    ***Claims*** means claims, as defined by Section 101(5) of the Bankruptcy Code, against the Debtors.

1.24    ***Class*** means a class or category of Claims as classified and described in Section 3 of this Plan.

1.25    ***Committee*** means the official committee of unsecured creditors appointed by the U.S. Trustee pursuant to Section 1102 of the Bankruptcy Code in the Chapter 11 Cases, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

1.26    ***Confirmation Date*** means the date on which the clerk of the Court enters the Confirmation Order on the Court's docket.

1.27    ***Confirmation Hearing*** means the hearing on confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.28    ***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

1.29    ***Cram-down*** means the confirmation of this Plan pursuant to Section 1129(b) of the Bankruptcy Code notwithstanding any rejection by an impaired Class or Classes of holders of Claims or Interests under this Plan.

1.30    ***Creditor*** means a holder of a Claim.

1.31    ***Debtor Released Claims*** has the meaning provided in Section 10.3 of this Plan.

1.32    ***Debtors*** means Centerstone, Atlas, Alliance, Atlanta and Winchester as debtors and debtors in possession, and includes the Estates, where appropriate.

1.33    ***DIP Agent*** means HSBC Bank.

1.34    ***DIP Lenders*** means HSBC Bank, together with any other lenders who are party to the DIP Loan Documents, and their respective affiliates, successors and assigns.

1.35    ***DIP Loan Documents*** means the post-petition loan documents as defined in the Final DIP Order.

1.36    ***Disclosure Statement*** means the Disclosure Statement to Accompany Debtors' Joint Chapter 11 Plan of Liquidation dated August 1, 2019 as altered, modified or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.37    ***Disclosure Statement Hearing*** means the hearing on the Debtors' request to approve the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code.

1.38    ***Distribution Record Date*** means the Confirmation Date, unless a different date is designated by the Confirmation Order or other order of the Bankruptcy Court.

1.39    ***Distributions*** means the payments to the various Classes of Claims as provided in this Plan.

1.40  ***East Point Facility*** means the commercial laundry facility formerly operated by Alliance and located at 1631 Willingham Drive, East Point, Georgia 30344.

1.41  ***Effective Date*** means the date on which all conditions precedent to the effectiveness of the Plan shall occur.

1.42  ***Estate Carve-Out*** means proceeds in the initial amount of $250,000.00, composed of (i) $200,000.00 from the sale of the Alliance Assets; (ii) $40,000.00 from the sale of the Buffalo Assets; (iii) $10,000.00 from the proceeds of the Debtors' accounts receivable; (iv) 5% of the Syracuse linen and linen cart sales proceeds regarding the sales conducted pursuant to the sale order entered on July 19, 2019 at Docket No. 535 in the Chapter 11 Cases; and (v) 5% of the sale proceeds of the Remaining Syracuse Assets.

1.43  ***Estates*** means the estates of the Debtors created by the Debtors' Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

1.44  ***Exculpated Claim*** means any claim related to any act or omission in connection with, relating to or arising out of the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of this Plan, the administration and implementation of this Plan, or the Distribution of property under the Plan or any other related agreement; provided, however, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud. For the avoidance of doubt, no Avoidance Action, Recovery Action, Cause of Action, obligation or liability specifically identified in or preserved by the Plan or the Disclosure Statement constitutes an Exculpated Claim.

1.45  ***Exculpated Party*** means the Liquidating Trustee, solely in his or her capacity as Liquidating Trustee and their respective current and former officers, directors, members, managers, employees, attorneys and advisors, each solely in their respective capacities as such. Exculpated Party also means, with respect to post-Petition Date conduct only, the Debtors and their employees, attorneys and advisors, each solely in their respective capacities as such.

1.46  ***Fee Claim*** means a Claim for compensation for legal or other professional services and related reimbursement of expenses under Sections 327, 328, 330(a), 331 or 503(b) of the Bankruptcy Code.

1.47  ***File*** or ***Filed*** means properly filed with the clerk of court of the Bankruptcy Court in the Chapter 11 Cases, as reflected on the official docket of the Clerk of the Bankruptcy Court for the Chapter 11 Cases.

1.48  ***Final DIP Order*** means the following collectively: Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Super-Priority, Senior Secured Basis and (B) Use Cash Collateral, (II) Granting (A) Liens and Super-Priority Claims and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying the Automatic Stay,

(IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Docket No. 234] ("DIP Order"), as amended by the Order Amending Final DIP Order [Docket No. 357] ("Amendment to DIP Order"), as amended by the Second Order Amending Final DIP Order [Docket No. 430] ("Second Amendment to DIP Order"), as amended by the Third Order Amending Final DIP Order [Docket No. 463] ("Third Amendment to DIP Order"), as amended by the Fourth Order Amending Final DIP Order [Docket No. 503] ("Fourth Amendment to DIP Order"), as amended by the Fifth Order Amending Final DIP Order [Docket No. 516] ("Fifth Amendment to DIP Order"), as amended by the Sixth Order Amending Final DIP Order [Docket No. 545] ("Sixth Amendment to DIP Order").

1.49    *Final Order* means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for stay, new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

1.50    *HSBC Allowed Secured Claim* means the HSBC Bank Secured Claim which is hereby Allowed in its entirety.

1.51    *HSBC Administrative DIP Claim* means the all indebtedness incurred by the Debtors and owed to HSBC Bank authorized by the Final DIP Order, as amended, and DIP Loan Documents (as defined in the Final DIP Order) secured by superpriority liens and security interests and granted superpriority administrative expense priority, which as of July 30, 2019 totaled $1,168,336.23, plus outstanding letters of credit totaling $1,080,000.00.

1.52    *HSBC Bank* means secured creditor HSBC Bank USA, National Association.

1.53    *HSBC Bank Prepetition Claim* means the amount of $23,137,682.11 that the Debtors were indebted to HSBC Bank as of the Petition Date.

1.54    *HSBC Bank Secured Claim* means the HSBC Bank Prepetition Claim, which indebtedness is secured by first priority properly perfected liens and security interests on all of the Debtors' Assets, and the proceeds thereof, except as subsequently limited pursuant to the Final DIP Order (the "HSBC Bank Collateral") to the extent the HSBC Bank Collateral, Remaining Syracuse Assets, Remaining Accounts Receivable and proceeds thereof are sufficient to satisfy the HSBC Bank Prepetition Claim.

1.55   ***HSBC Bank Unsecured Deficiency Allowed Claim*** means the HSBC Bank Unsecured Deficiency Claim which is hereby Allowed in its entirety.

1.56   ***HSBC Bank Unsecured Deficiency Claim*** means the HSBC Bank Prepetition Claim for which there is insufficient HSBC Bank Collateral, Remaining Syracuse Assets, Remaining Accounts Receivable and proceeds thereof are sufficient to satisfy the HSBC Bank Prepetition Claim.

1.57   ***Impaired*** means, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of Section 1124 of the Bankruptcy Code.

1.58   ***Interest*** means the interest of any holder of an equity security, within the meaning of Sections 101(16) and (17) of the Bankruptcy Code, represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtors, or any membership interest in the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtors.

1.59   ***Liquidating Trust*** means that certain trust established on the Effective Date pursuant to the Plan and the terms of the Liquidating Trust Agreement.  References to the Liquidating Trust shall include references to the Liquidating Trustee, acting for the benefit of the Liquidating Trust beneficiaries pursuant to the terms of the Liquidating Trust Agreement.

1.60   ***Liquidating Trust Agreement*** means that written agreement, a form of which will be filed as a Plan supplement in advance of the hearing to approve the Disclosure Statement, in form and substance reasonably acceptable to the Committee and the Debtors, in consultation with HSBC Bank, that will be executed by the Debtors and the Liquidating Trustee in September, 2019 which will govern the liquidation of the Estates and the Distributions to Creditors after the entry of the Confirmation Order in accordance with this Plan.

1.61   ***Liquidating Trust Assets*** means the Estate Carve-Out, Recovery Actions and future liquidated unencumbered assets of the Debtors.

1.62   ***Liquidating Trustee*** means the party identified by the Committee in the Liquidating Trust Agreement, in consultations with HSBC Bank, to administer the Liquidating Trust pursuant to the Liquidating Trust Agreement, which appointment remains subject to Court approval upon entry of the Confirmation Order, for purposes of administering and consummating this Plan and any successor appointed in accordance with the Liquidating Trust Agreement pursuant to this Plan.

1.63   ***Loan Documents*** means the following documents pursuant to which the Debtors are jointly and severally indebted to HSBC Bank: (a) Loan and Security Agreement dated October 29, 2013 (as amended, "Loan Agreement"); (b) Revolving Credit Note dated October 29, 2013, in the original principal amount of $20,000,000 ("Revolving Credit Note"); (c) Term Loan A Note dated October 29, 2013, in the original principal amount of $2,752,000 ("Term Loan A Note"); (d) Term Loan B Note dated October 29, 2013, in the original principal amount of $3,437,000 ("Term Loan B Note"); (e) one or more Equipment Notes dated October

29, 2013, in the aggregate original principal amounts of $6,000,000 (collectively "Equipment Note"); (f) all Guaranties; and (g) all documents executed and delivered in connection therewith or relating thereto (including all renewals, modifications and replacements thereof, including, without limitation, the Guaranties).

1.64    **Person** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtors.

1.65    **Petition Date** means December 19, 2018.

1.66    **Plan** means this Joint Chapter 11 Plan of Liquidation dated August 1, 2019, as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.67    **Plan Documents** means the Plan and the Disclosure Statement, and all exhibits and schedules attached thereto, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

1.68    **Professionals** means all professionals employed in the Chapter 11 Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code.

1.69    **Recovery Actions** means all potential actions, and the proceeds thereof, under state law and federal law which are brought to recover funds or other assets for the benefit of the Estates, other than recovery or collection of the Remaining Accounts Receivable and other than any potential claim or cause of action against HSBC Bank.  Recovery Actions include (a) Avoidance Actions and (b) Bankruptcy Recoveries (as defined in the Final DIP Order), and means any claims, causes of action, recoveries and the proceeds thereof, by settlement or otherwise, to which the Debtors (or other parties in interest, including the Committee or a subsequent trust or trustee) may be entitled to assert and/or recover (i) by reason of any avoidance or other power vested in or on behalf of the Debtors or the Estates under chapter 5 of the Bankruptcy Code, other than recoveries in respect of those claims or causes of action arising under 11 U.S.C. §§ 549(a)(1) and (a)(2)(B) and claims or causes of action arising under 11 U.S.C. § 542 for the collection of the Remaining Accounts Receivable; and (ii) with respect to any commercial tort claims (including, but not limited to, breach of fiduciary claims, if any). Notwithstanding anything in the Final DIP Order to the contrary, Bankruptcy Recoveries includes any claims, causes of action, recoveries and the proceeds thereof, by settlement or otherwise, to which the Debtors (or other parties in interest, including the Committee or a subsequent trust or trustee) may be entitled to assert and/or recover related to Catholic Health System, Inc., Mercy Hospital of Buffalo, Sisters of Charity Hospital of Buffalo, New York, Kenmore Mercy Hospital, Mount St. Mary's Hospital of Niagara Falls, Altus Management, LLC, and their subsidiaries and affiliates, but specifically excluding any such claims or causes of action related to the Remaining Accounts Receivable. For the avoidance of doubt, notwithstanding anything to the contrary in this Plan, pursuant to the Final DIP Order, the Debtors released and/or waived all claims, Avoidance Actions and Causes of Action against HSBC Bank and the deadline for the Committee and any other Person to assert claims,

8

Avoidance Action, Recovery Actions or Causes of Action against HSBC Bank has expired, and accordingly, Recovery Actions do not include any claims or Causes of Action against HSBC Bank.

1.70    **Released Parties** means (i) Debtors, (ii) the Committee, (iii) the members of the Committee and (iv) Chief Restructuring Officer Ronald Teplitsky, and solely as to (ii) through (iv) above, their respective current and former officers, directors, members, managers, employees, attorneys and advisors, each solely in their respective capacities as such.

1.71    **Remaining Accounts Receivable** means the Debtors' accounts receivable as set forth in the schedule defined as the Receivables Schedule in the Final DIP Order, which as of July 31, 2019, total $5,445,940.00, plus the Great American Insurance Company and New York State Insurance Fund premiums to be returned to the Debtors, as set forth in the Budget annexed to the Final DIP Order.

1.72    **Remaining Syracuse Assets** means the Syracuse furniture, fixtures, equipment and inventory that are not being sold pursuant to the sale order entered as Docket No. 535 in the Chapter 11 Cases.

1.73    **Schedules** means the schedule of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

1.74    **Secured Claim** means a Claim of a Creditor that is secured by property of the Estates, to the extent such Claim has a non-avoidable security interest in the underlying collateral, solely to the extent of the value of the Creditor's interest in the Estates' interest in such property, as provided in section 506(a) of the Bankruptcy Code.  Subject to the same conditions, Secured Claim also means a Claim of a Creditor that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in section 506(a) of the Bankruptcy Code.

1.75    **Spartanburg Facility** means the commercial laundry plant formerly operated by Alliance and located at 355 Old Greenville Road, Spartanburg, South Carolina 29301.

1.76    **Syracuse Assets** means personal property owned by Atlas located at the Syracuse Facility.

1.77    **Syracuse Facility** means the commercial laundry plant formerly operated by Atlas and located at 414 West Taylor Street, Syracuse, New York 13202.

1.78    **Tristate Facility** means the commercial laundry plant formerly operated by Alliance and located at 404 Hodges Avenue, Albany, Georgia 31701.

1.79    **Unsecured Claim** means a Claim that is (a) not secured by property of the Estates or otherwise entitled to treatment as a secured claim under section 506 of the Bankruptcy Code, (b) is not otherwise entitled to priority under sections 503 or 507 of the Bankruptcy Code, and/or (c) is not otherwise an Administrative Claim, Fee Claim, Claim for U.S. Trustee Fees, or

Unsecured Priority Claim.  Unsecured Claims include, without limitation: Claims arising from the rejection of executory contracts and unexpired leases that are not otherwise Secured Claims; any Claim arising prior to the Petition Date asserted or which can be asserted against the Debtors; and the Unsecured Deficiency Claim of HSBC Bank.

       1.80    ***Unsecured Deficiency Claim*** means any portion of a Claim to the extent that the value of the Estates' interest in any property securing the Claim is less than the amount of the Claim, or to the extent that the amount of any such Claim subject to setoff is less than the amount of such Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

       1.81    ***Unimpaired*** means, with respect to any Class, that such Class is not Impaired.

       1.82    ***Unsecured Priority Claim*** means a Claim that is not secured by property of the Estate or otherwise entitled to treatment as a Secured Claim under section 506 of the Bankruptcy Code, but is entitled to priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

       1.83    ***U.S. Trustee Fees*** means all fees and charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930 together with interest, if any, under 31 U.S.C. § 3717.

       1.84    ***Winchester*** means debtor Alliance LTS Winchester, LLC d/b/a Clarus Linen Systems.

## B.    INTERPRETATION:  APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION.

       Unless otherwise specified, all Section or Exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Disclosure Statement, and if not defined therein, in the Bankruptcy Code.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, Exhibit or Schedule means such document, Exhibit or Schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

## SECTION 2.    TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS, HSBC BANK ADMINISTRATIVE DIP CLAIM AND U.S. TRUSTEE FEES

       2.1    ***Administrative Claims***.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as described in

this Section 2 of this Plan. Except as otherwise provided in this Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different and less favorable treatment than provided under this Plan, or by order of the Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of: (a) the fifth Business Day after the Effective Date; (b) the date on which such Person becomes the holder of such an Allowed Administrative Claim; or (c) the date or dates when that Claim is payable by its terms, consistent with past practice and in accordance with past terms. Allowed Administrative Claims shall be paid from funds budgeted for such Claims in the Budget attached to the Sixth Order Amending Final DIP Order (or Budget attached to any subsequent Order).

2.2    *Fee Claims*.    In accordance with Section 1123(a)(1) of the Bankruptcy Code, Fee Claims have not been classified and are treated as described in this Section 2 of this Plan. Except as otherwise provided in this Plan, by written agreement of the holder of an Allowed Fee Claim to accept different and less favorable treatment than provided under this Plan, or by order of the Court, a Person holding an Allowed Fee Claim will receive Cash equal to the unpaid portion of such Allowed Fee Claim, as soon as practicable after the later of: (a) the fifth Business Day after the Effective Date; or (b) the date on which such Person becomes the holder of an Allowed Fee Claim. Fee Claims shall not be payable from the Estate Carve-Out.

2.3    *HSBC Bank Administrative DIP Claim.*    Pursuant to the Final DIP Order, the Debtors obtained a post-petition senior secured superpriority administrative revolving line of credit to fund the Debtors' Chapter 11 operations, which line of credit, as of July 31, 2019, totals $1,168,336.23, and converted $1,080,000.00 in pre-petition letters of credit issued to post-petition letters of credit. The HSBC Bank Administrative DIP Claim is Allowed and will be paid in full by the Debtors or the Liquidating Trustee. Until the HSBC Bank Administrative DIP Claim is paid in full, HSBC Bank's liens and security interests shall remain affixed to the Remaining Syracuse Assets (subject to the Estate Carve-Out), Remaining Accounts Receivable and HSBC Bank Collateral.

2.4    *U.S. Trustee Fees*.    U.S. Trustee Fees include all fees and charges assessed against the Debtor under 28 U.S.C. § 1930, together with interest, if any, under 31 U.S.C. § 3717. All U.S. Trustee Fees will be paid in full by the Debtors or Liquidating Trustee, as the case may be, as they become due and owing and shall continue to be paid until such time that (i) a final decree is entered closing the Chapter 11 Cases, a Final Order converting the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or a Final Order dismissing the Chapter 11 Cases is entered and (ii) the Debtors or Liquidating Trustee, as applicable, have met all post-confirmation Operating Report Requirements of the U.S. Trustee's Operating Guidelines and Reporting Requirements for debtors in possession and trustees (unless the Bankruptcy Court orders otherwise) including providing an affidavit regarding quarterly reports of disbursements during each calendar quarter.

## SECTION 3.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1    *Substantive Consolidation of the Debtors for Plan Purposes Only*. Pursuant to Section 5 of the Plan, the Plan provides for the substantive consolidation of the Debtors' Estates into a single Estate for Plan purposes only and matters associated with

Confirmation and consummation of the Plan. As a result of the substantive consolidation of the Debtors' Estates for these limited purposes, each Class of Claims against, and Interests in, the Debtors will be treated as against a single consolidated Estate for Plan purposes without regard to the corporate separateness of the Debtors.

3.2   ***Classification and Specification of Treatment of Claims***. All Claims, except those described in Section 2, are placed in the following Classes of Claims, pursuant to Section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and of their impaired or unimpaired status, pursuant to Sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and Distribution.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment set forth below. This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distributions on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Court shall not be impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to Section 1123(a)(4) of the Bankruptcy Code, to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

3.3   ***Classes of Claims***.

3.3.1   ***Class 1 – HSBC Bank Secured Claim***. This Class consists of the HSBC Bank Secured Claim which is Allowed in its entirety. Until the Effective Date and thereafter in accordance with the terms of the Final DIP Order, as amended, and the Liquidating Trust Agreement, HSBC Bank shall receive the proceeds of the liquidation sales of the Remaining Syracuse Assets (except to the extent such proceeds are part of the Estate Carve-Out), collection of the Remaining Accounts Receivable, and any other HSBC Bank Collateral. Until the HSBC Bank Allowed Secured Claim is paid in full, HSBC Bank's liens and security interests shall remain affixed to the Remaining Syracuse Assets (subject to the Estate Carve-Out), Remaining Accounts Receivable, and the HSBC Bank Collateral. On or after the Effective Date, in HSBC Bank's sole discretion, the Liquidating Trust and/or Trustee shall transfer, assign, or abandon to HSBC Bank, some or all of the Remaining Syracuse Assets (with the exception of amounts related to the Estate Carve-Out), Remaining Accounts Receivable, and the HSBC Bank Collateral (the "Assigned Assets"), for which HSBC Bank will report to the Liquidating Trustee

on the first business day of each month as to the proceeds collected from the recovery or liquidation of such Assigned Assets, which proceeds shall reduce the HSBC Bank Administrative DIP Claim if still outstanding, or the HSBC Bank Allowed Secured Claim, as the case may be. The treatment described herein shall be in partial satisfaction of the HSBC Bank Allowed Secured Claim. Except as provided in this Section 3.3.1, HSBC Bank shall not assert any claims of any nature against the Liquidating Trustee or Liquidating Trust for amounts still owing on account of the HSBC Bank Allowed Secured Claim to the extent not satisfied from the proceeds set forth in this Section 3.3.1, leaving solely the HSBC Bank Unsecured Deficiency Claim, which shall be treated in accordance with Section 3.3.3 below.

       3.3.2    *Class 2 – Unsecured Priority Claims.*    Class 2 consists of Creditors holding Allowed Priority Claims. The Liquidating Trustee will review the Debtors' Schedules and each Priority Claim filed in the Chapter 11 Cases and file objections, if necessary. Each holder of an Allowed Class 2 Claim shall be paid with priority as set forth in section 507(a) of the Bankruptcy Code, in full, prior to any Distribution to any holder of a Claim in Class 3, from funds budgeted for such Claims in the Budget attached to the Sixth Order Amending Final DIP Order (or budget attached to any subsequent amendment), and to the extent such budgeted funds are not sufficient to cover all such Allowed Class 2 Claims, from the Estate Carve-Out.

       3.3.3    *Class 3 – Unsecured Claims*. This Class consists of all Allowed Unsecured Claims. Unless otherwise agreed by the applicable holder of an Allowed Claim in this Class to accept different and less favorable treatment, each holder of an Allowed Unsecured Claim shall be entitled to receive such holder's *pro rata* share of the Estate Carve-Out, the Recovery Actions, and the proceeds of any future liquidated unencumbered assets (less the expenses of the Liquidating Trustee and Distributions to Class 2 Claimants). The Estate Carve-Out will be transferred to the Liquidating Trustee following confirmation of the Plan and its funds deposited into the Liquidation Trust. The proceeds of any future liquidated unencumbered assets shall also be deposited into the Liquidation Trust. The Debtors shall assign to the Committee and the Liquidating Trustee the Recovery Actions, which shall be prosecuted by the Liquidating Trustee in accordance with the terms of the Liquidation Trust Agreement. The proceeds of the Recovery Actions also shall be deposited into the Liquidation Trust for the benefit of the Class 2 and Class 3 Creditors. The HSBC Bank Unsecured Deficiency Claim is an Allowed Class 3 Claim in its entirety. The HSBC Bank Unsecured Deficiency Allowed Claim shall not share in the Distribution of the Estate Carve-Out, but HSBC Bank shall otherwise be entitled to its *pro rata* share of Distributions to Allowed Class 3 Claim holders of the Liquidation Trust Assets, capped at a *pro rata* share of 50% of all such Class 3 Distributions. The amounts to be recovered as Liquidating Trust Assets cannot be determined at this time.

       3.3.4    *Class 4 – Interests*. Each holder of an Interest will not receive any Distribution on account of such Interest. Each holder of an Interest shall not receive or retain an Interest or other property or interests of the Debtors on account of such Interest.

## SECTION 4.    ACCEPTANCE OR REJECTION OF THE PLAN

       4.1    *Impaired Classes Vote.*    In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of

at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

        4.2    ***Presumed Acceptance of the Plan***.  Class 2 is Unimpaired under this Plan and are presumed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.

        4.3    ***Presumed Rejection of the Plan***.  Class 4 is not entitled to receive or retain any property under this Plan and is, therefore, deemed not to have accepted this Plan pursuant to section 1126(g) of the Bankruptcy Code.

        4.4    ***Voting Classes***.  Class 1 and Class 3 are Impaired, and the holders of Claims in those Classes are entitled to vote on the Plan.

        4.5    ***Nonconsensual Confirmation***.  The Debtors request entry of a Confirmation Order under Section 1129(a) of the Bankruptcy Code.  With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtors request that the Bankruptcy Court confirm this Plan by cram-down with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

        4.6    ***Elimination of Vacant Classes***.  Any Class or Sub-Class of Claims or Interests that is not occupied as of the Confirmation Hearing Date by at least one Allowed Claim or Allowed Interest, as applicable, or at least one Claim or Interest, as applicable, temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

**SECTION 5.   MEANS FOR IMPLEMENTATION OF PLAN**

        5.1    ***Substantive Consolidation for Plan Purposes Only.***  The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order substantively consolidating the Debtors' Estates into a single consolidated Estate, solely for all purposes associated with confirmation and consummation of the Plan.  On the Effective Date, for Plan purposes only, the Debtors shall be deemed merged into Centerstone, and (a) all assets and liabilities of the Debtors shall be deemed merged into Centerstone; (b) all guaranties of any Debtor of the payment, performance, or collection of the obligations of another Debtor shall be eliminated and cancelled; (c) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors; (d) all joint obligations of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations shall be treated and Allowed only as a single Claim against the consolidated Debtors; and (e) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the Debtors on and after the Effective Date. Entry of the Confirmation Order will constitute the approval, pursuant to the Bankruptcy Code section 105(a), effective as of the Effective Date, of the deemed substantive consolidation of the Chapter 11 Cases of the Debtors for purposes of voting on, confirmation of, and Distributions under the Plan.

Notwithstanding the foregoing, the deemed consolidation and substantive consolidation (each for Plan purposes only) shall not (other than for purposes related to funding Distributions under the Plan) affect (a) the legal and organizational structure of the Debtors; (b) pre- and post-Petition Date guaranties, Liens and security interests that were required to be maintained (i) in connection with any executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed by the Debtors or (ii) pursuant to the Plan; (c) distributions out of any insurance policies or proceeds of such policies; and (d) the tax treatment of the Debtors. Furthermore, notwithstanding the foregoing, the deemed consolidation and substantive consolidation (each for Plan purposes only), shall not affect the statutory obligation of each and every Debtor to pay quarterly fees to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6).

In the event that the Bankruptcy Court does not order such deemed substantive consolidation of the Debtors, then except as specifically set forth in the Plan, (a) nothing in the Plan or the Disclosure Statement may constitute or be deemed to constitute an admission that one of the Debtors is subject to or liable for any Claim against any other Debtor, (b) Claims against multiple Debtors may be treated as separate Claims against each applicable Debtor for all purposes (including, without limitation, Distributions and voting) and such Claims may be administered as provided in the Plan, (c) the Debtors may not, nor may they be required to, resolicit votes with respect to the Plan and (d) the Debtors may seek confirmation of the Plan as if the Plan is a separate Plan for each of the Debtors.

The substantive consolidation effected pursuant to this Section of the Plan shall not affect, without limitation: (i) the Debtors' or the Estates' (x) defenses to any Claim or Cause of Action, including with respect to the Recovery Actions, including, without limitation, the ability to assert any counterclaim, (y) setoff or recoupment rights, or (z) requirements for any third party to establish mutuality prior to substantive consolidation in order to assert a right of setoff against the Debtors or the Estates; or (ii) distributions to the Debtors and/or the Estates out of any insurance policies or the proceeds of such policies.

5.2     ***Funding for this Plan.***  The Unclassified Claims will be paid in full from the Debtors' operating account or certain funds that have been reserved pursuant to the terms of the Final DIP Order, as amended, during the pendency of the Chapter 11 Cases. On the Effective Date, the Liquidating Trust will become effective in accordance with the terms of the Liquidating Trust Agreement and the Estate Carve-Out will be paid to the Liquidating Trustee.

5.3     ***Implementation.***  This Plan will be implemented by the Liquidating Trustee in a manner consistent with the terms and conditions set forth in this Plan and the Confirmation Order. All actions taken under this Plan in the name of the Debtors, as applicable, shall be taken through the Liquidating Trustee. As set forth more fully in this Plan, the Liquidating Trustee shall be responsible for the liquidation of the Debtors' remaining Assets, administration of the Plan and the wind-down of the Debtors and their Estates post-Effective Date. On the Effective Date, the Debtors' management shall be relieved of all further responsibilities, and the Debtors' directors and managers shall be deemed to have resigned therefrom, and the operation of the Debtors shall become the general responsibility of the Liquidating Trustee.

5.4   *Corporate Action*.  All matters provided under this Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further action by directors or managers of the Debtors.

5.5   *Vesting of Assets in the Liquidating Trustee*.  As of the Effective Date, and except as otherwise provided in this Plan, including Sections 2.3 and 3.3.1 providing for the retention of HSBC Bank's liens and security interests, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all unliquidated Assets, including the Recovery Actions, Causes of Action, Remaining Syracuse Assets, Remaining Accounts Receivable, and HSBC Bank Collateral shall vest in the Liquidating Trust free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, including, for the avoidance of doubt, derivative Causes of Action that have been, or may be, brought on behalf of the Debtors, including any pending or future derivative Causes of Action, subject to the terms and conditions of this Plan and the Confirmation Order.

5.6   *Continuing Existence*.  From and after the Effective Date, the Debtors shall continue in existence for the purposes of (i) winding up their affairs as expeditiously as reasonably possible; (ii) liquidating, by conversion to Cash, or other methods, all unliquidated Assets, as expeditiously as reasonably possible; (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtors, including, without limitation, the prosecution of the Recovery Actions, and Causes of Action; (iv) resolving disputed Claims; (v) administering this Plan; and (vi) filing appropriate tax returns.  All of the foregoing actions shall be taken by the Liquidating Trustee on behalf of the Debtors.  Following the Effective Date, the Debtors shall not engage in any business activities or take any actions, except those necessary to consummate this Plan and wind up the affairs of the Debtors.

5.7   *Causes of Action*.  Except as otherwise set forth in this Plan and APA, all Recovery Actions and Causes of Action of the Debtors which have not otherwise been acquired by third parties or released pursuant to the Plan shall survive confirmation of this Plan and the commencement and/or prosecution of such Recovery Actions and Causes of Action by the Liquidating Trustee or otherwise shall not be barred or limited by *res judicata* or any estoppel, whether judicial, equitable or otherwise.  The Liquidating Trustee shall have the authority to commence and prosecute Recovery Actions and Causes of Action, and, without further supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order, assign, transfer, compromise and/or settle such actions.

5.8   *Agreements, Instruments, and Documents*.  All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

5.9   *Closing of the Debtors' Chapter 11 Cases*.  When all disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed, and

Distributions in accordance with this Plan have commenced, or at such later time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall seek authority from the Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.10    ***Corporate Dissolution***.    Upon the Distribution of all Assets pursuant to this Plan and the filing by the Liquidating Trustee of a certification to that effect with the Court (which may be included in the application for the entry of the final decree), the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith, ***provided, however***, that the Debtors may take appropriate action to dissolve under applicable law.  From and after the Effective Date, the Debtors shall not be required to file any document, or take any action, to withdraw their business operations from any states where the Debtors previously conducted business.

5.11    ***Bar Date for Fee Claims***.    Each Person retained or requesting compensation in the Chapter 11 Cases, pursuant to Sections 330, 331 or 503(b) of the Bankruptcy Code, must file with the Court a final application for allowance of any Fee Claims no later than August 22, 2019.  All such Fee Claims for which an application is not timely filed shall be forever barred.  Objections to each such application may be filed in accordance with the Bankruptcy Rules.  The Court shall determine all such Fee Claims.

5.12    ***Bar Date for Other Administrative Claims***.    Unless this Plan or the Court fixes a different date, with the exception of Fee Claims, all Administrative Claims must be filed no later than the September 6, 2019 Administrative Claim Bar Date.  The Debtors or the Liquidating Trustee may object to the allowance of any such Claims filed before, on, or after the Administrative Claim Bar Date.

5.13    ***Further Authorization***.    Each of the Debtors or the Liquidating Trustee shall be entitled to seek such orders, judgments, injunctions and rulings from the Court, in addition to those specifically listed in this Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.  The Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

5.14    ***Dissolution of the Committee***.    The Committee shall continue in existence through and including the Effective Date to exercise those powers and perform those duties specified in Section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court or in the Plan or the Confirmation Order prior to the Effective Date.  On the Effective Date, the Committee shall be deemed dissolved, and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation, and the retention or employment of the Committee's retained Professionals shall terminate; provided, however, that the Committee members' and Committee Professionals' obligation to maintain the confidentiality of the Debtors' information shall survive.

On the Effective Date, the Committee Professionals shall be deemed to have completed their services to the Committee, but they shall be authorized to file final applications

for reasonable compensation and reimbursement of expenses through the Effective Date, no later than August 22, 2019.

## SECTION 6.    PLAN PROVISIONS REGARDING LIQUIDATING TRUSTEE

6.1    *Appointment of the Liquidating Trustee*.  The Confirmation Order shall provide for the appointment of the Liquidating Trustee, subject to Court approval.    The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in this Plan, including, without limitation, the powers and duties of a trustee under sections 704 and 1106 of the Bankruptcy Code..

6.2    *Powers and Duties of the Liquidating Trustee*.  Following the entry of the Confirmation Order, the Liquidating Trustee will act in a fiduciary capacity as applicable to a board of directors and shall be responsible for the liquidation of the Debtors' remaining Assets, administration of the Plan and wind-down of the Debtors and their Estates post-Effective Date, subject to the provisions of this Plan.  The powers and duties of the Liquidating Trustee shall include, and the Liquidating Trustee shall be authorized:

(a)    to invest Cash in accordance with section 345 of the Bankruptcy Code, and withdraw and make Distributions of Cash to holders of Allowed Claims and pay taxes, if any, and other obligations owed by the Debtors or incurred by the Liquidating Trustee in connection with the wind-down of the Estates in accordance with the Plan;

(b)    to receive, manage, invest, supervise, and protect the Assets, including paying taxes, if any, or other obligations incurred in connection with the Assets;

(c)    to engage attorneys, consultants, agents, employees and all  professional persons to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities;

(d)    to administer all Assets;

(e)    to pay the fees and expenses for the attorneys, consultants, agents, employees and professionals engaged by the Liquidating Trustee and to pay all other expenses in connection with administering the Plan and winding down the affairs of the Debtors subject to the terms of this Plan;

(f)    to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtors' businesses and effectuate the dissolution of the Debtors;

(g)    to sell at public or private sale, assign, transfer, abandon or otherwise dispose of any of the Assets and convert the same to Cash;

(h)    to oversee compliance with the Debtors' accounting, finance and reporting obligations;

(i)    to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

(j)    to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and dissolution of the Debtors;

(k)    to object to, and without further supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order, to compromise and settle Claims;

(l)    to act on behalf of the Debtors and the Estates in all adversary proceedings and contested matters (including, without limitation, any Recovery Actions and Causes of Action), then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere to settle, retain, enforce, dispute or adjust any such claim, Recovery Actions or Causes of Action and otherwise pursue actions involving the Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise waived or relinquished in the Plan, and, without further supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order, to assign, transfer, compromise and/or settle such claims and causes of action above;

(m)    to implement and/or enforce all provisions of the Plan;

(n)    to use such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan or Court order or as may be necessary and proper to carry out the provisions of the Plan; and

(o)    to account to HSBC Bank commencing the first day of the first month after the Effective Date and on the first day of each month thereafter which the Liquidating Trust remains, regarding the disposition of all Remaining Syracuse Assets, Remaining Accounts Receivable, and any other HSBC Bank Collateral transferred to the Liquidating Trust.

6.3    ***Liquidating Trustee Compensation and Employment of Professionals***. The compensation of the Liquidating Trustee shall be governed by the Liquidating Trust Agreement. The Liquidating Trustee is authorized, without further order of the Court, to employ such Persons, including professionals, as the Liquidating Trustee may deem necessary to enable it to perform its functions hereunder. The Liquidating Trustee and Persons employed by the Liquidating Trustee shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses, without application to the Bankruptcy Court, on a monthly basis, from the assets of the Liquidating Trust, including the Estate Carve-Out, the Recovery Actions, and the proceeds of any future liquidated unencumbered assets. Fees and expenses incurred by the Liquidating Trustee and its professionals have priority over all other Claims. Notwithstanding anything in this paragraph to the contrary, to the extent the Liquidating Trustee or its professionals incurs fees and expenses necessary to recover the Remaining Syracuse Assets, Remaining Accounts Receivable, and HSBC Bank Collateral, and the proceeds thereof, then, to the extent such recoveries (i) pay the HSBC Bank Administrative DIP Claim, such fees

and expenses shall be paid by the Liquidating Trust, and (ii) pay the HSBC Bank Secured Claim, such fees and expenses shall be paid by HSBC Bank. The Liquidating Trustee shall not incur such fees and expenses with respect to (ii) above without prior written approval by HSBC Bank or its counsel.

6.4 **No Agency Relationship**. The Liquidating Trustee shall not be deemed to be the agent of any of the holders of Claims in connection with the funds held or distributed pursuant to this Plan. The Liquidating Trustee shall not be liable for any mistake of fact or law or error in judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty on the part of the Liquidating Trustee. The Liquidating Trustee shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estates against any and all claims arising out of his duties under the Plan, except to the extent his actions constituted gross negligence or willful misconduct or breach of fiduciary duty. The Liquidating Trustee may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party or parties. The Liquidating Trustee may rely upon information previously generated by the Debtors and such additional information provided to him by former employees of the Debtors.

6.5 **Liquidating Trustee's Bond**. The Liquidating Trustee shall not be required to obtain or maintain a bond after the Effective Date.

6.6 **Reporting**. Until final decrees closing the Chapter 11 Cases are entered, the Liquidating Trustee shall comply with any requisite reporting requirements established pursuant to the guidelines of the U.S. Trustee.

6.7 **Grantor Trust**. It is intended that the Liquidating Trust qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d). In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (*i.e,* a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a Chapter 11 plan. The Liquidating Trust will be structured with the intention of complying with such general criteria, and, pursuant to the Plan in conformity with Revenue Procedure 94-45. The Liquidating Trustee is hereby appointed in such instance pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to handle all of the Liquidating Trust's tax matters, including, without limitation, the filing of all tax returns, and the handling of tax audits and proceedings, of the Liquidating Trust. Notwithstanding the foregoing, the Liquidating Trustee may make an election under Treasury Regulations Section 1.468B-9(c)(2)(ii) to treat the Liquidating Trust (or any portion thereof) as a disputed ownership fund. The Liquidating Trustee shall be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or as a disputed ownership fund.

6.8 **Retention of Records**. The Debtors agree to coordinate with the Liquidating Trustee and HSBC Bank regarding the transfer of records, documents and information to the Liquidating Trust and HSBC Bank. Prior to discarding any records,

documents or information, the Debtors agree to coordinate with the Committee, and the Committee shall confirm that the Liquidating Trust and HSBC Bank does not need such documents or information in connection with the Liquidating Trust's and HSBC Bank's reconciliation (or pursuit) of claims, the wind down the Chapter 11 Cases, or the disposition of the Remaining Syracuse Assets, Remaining Accounts Receivables and the HSBC Bank Collateral, which records, documents and information shall not be discarded absent order of the Bankruptcy Court.

　　　　　　6.9　　***Resignation, Death or Removal of Liquidating Trustee***.  In the event of the resignation on at least thirty (30) days' notice, removal, death or incapacity of the Liquidating Trustee or any other vacancy in the position of Liquidating Trustee, counsel for the Committee or Liquidating Trustee may nominate a successor Liquidating Trustee and the appointment will be determined by the Court.  No successor Liquidating Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors.

## SECTION 7.　　EXECUTORY CONTRACTS

　　　　　　7.1　　***Assumption of Assigned Contracts.***　　Other than the assignments and assumptions of executory contracts and unexpired leases previously approved by the Bankruptcy Court in connection with the sales of the Assets, no other orders authorizing the assumption of executory contracts or unexpired leases have been entered in the Chapter 11 Cases.

　　　　　　7.2　　***Rejection of Contracts and Leases.***　　Except as otherwise set forth in this Plan, each executory contract or unexpired lease of the Debtors that was not previously assumed pursuant to an order of the Bankruptcy Court, and that has not expired by its own terms before the Effective Date, shall be rejected as of the Effective Date.  As of the Effective Date, all employment, severance, retirement, indemnification, employee benefit, profit-sharing and related policies, plans or agreements, whether or not qualified under ERISA, health care plans, disability plans and incentive plans, that were in effect on the Petition Date and that have not previously been terminated or superseded shall be terminated and deemed rejected.  For the avoidance of doubt, for any motion seeking to reject executory contracts or unexpired leases where the Bankruptcy Court has not yet ruled on such motion, such motion, such purported executory contract or unexpired lease shall be rejected as of the Effective Date.

　　　　　　7.3　　***Rejection Damages.***　　Any Claim for damages arising from the rejection of any executory contract or unexpired lease under this Plan must be filed with the Court and served upon the Liquidating Trustee within thirty days after the Effective Date or such other deadline established by the Court.  Any Claim arising from the rejection of an executory contract or unexpired lease not filed within such time will be forever barred from receiving any Distribution under this Plan or asserting any Claims against the Debtors, the Estates or the Liquidating Trustee.

　　　　　　7.4　　***Insurance Contracts***.  The Debtors do not believe that any insurance policies issued to, or insurance agreements entered into prior to the Petition Date constitute executory contracts.  To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything contained in this Plan to the contrary, the

Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption, pursuant to section 365(a) of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement.

## SECTION 8.    DISTRIBUTION PROVISIONS

8.1    *No Distributions on Account of Claims That Have Not Become Allowed Claims*. Notwithstanding any other provision of this Plan, no payment or Distribution shall be made with respect to any Claim that has not become an Allowed Claim, except that the Liquidating Trustee may, in his/her discretion, distribute consideration attributable to any undisputed portion of a Claim and withhold the remainder.

8.2    *Reserves for Claims That Have Not Become Allowed Claims*. Distributions on account of Claims that have not become Allowed Claims shall be governed by the following provisions:

(a)    Except as otherwise provided under this Plan, the Liquidating Trustee shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by a Final Order of the Court.

(b)    Except as otherwise provided in this Plan, the Liquidating Trustee shall be required to reserve funds, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by an order of the Court until such order becomes a Final Order.

(c)    With respect to Claims that have not become Allowed Claims and that are not governed by subparagraph (a) or subparagraph (b) above, the Liquidating Trustee shall reserve sufficient funds to allow for a Distribution in accordance with the terms of this Plan, on account of the Distribution attributable to such holders' Claims or as otherwise provided pursuant to any order of the Court with respect to the amount, if any, to be reserved; *provided, however*, that the Liquidating Trustee, as applicable, shall distribute consideration attributable to any undisputed portion (when Distributions are made to Creditors in accordance with the Plan and Liquidating Trust Agreement) and shall withhold and reserve the remainder. The Court may, after notice and a hearing (as defined in section 102 of the Bankruptcy Code), fix a lesser amount than the Distribution amount as the amount on account of which consideration shall be withheld. In the case of Claims not stating an amount, the Liquidating Trustee, or any holder of such Claims may request that the Court, after notice and a hearing (as defined in section 102 of the Bankruptcy Code), determine an amount. Cash withheld pursuant to this subparagraph will be held in a segregated, interest-bearing fund or funds. Such Cash will be released when and if Claims are Allowed and disallowed and shall be distributed in accordance with this Plan.

8.3    *Persons Responsible for Distribution of Plan Consideration.* The Liquidating Trustee shall disburse all consideration to be distributed under this Plan and shall act

22

as a disbursing agent.  The Liquidating Trustee may employee the assistance of a third party to assist in making Disbursements if reasonably necessary under the circumstances.

8.4    ***Undeliverable and Unclaimed Cash***.  If a Distribution check to a holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, such Cash will be set aside and held in a segregated fund to be maintained by the Liquidating Trustee.  If such Person provides written notice to the Liquidating Trustee of its then current address within 120 days of the date of the issuance of such Distribution check, such Cash will be paid to such Person.  If such Person does not provide written notice to the Liquidating Trustee of its then current address within 120 days of the date of the issuance of the Distribution check, any such Cash and accrued interest thereon shall (i) be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed Distribution shall revert to and vest in the Liquidating Trustee, free of any restriction thereon and free of any Claims of such Person with respect thereto; and (ii) be released to the Liquidating Trustee and distributed in accordance with this Plan and such Person shall not be entitled to any amounts in connection with such Distribution or any subsequent Distribution and the Claims of such person to which such Cash relates shall be discharged and forever barred from assertion against the Debtor and its property or the Liquidating Trustee, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary.  Nothing contained in this Plan shall require the Liquidating Trustee to attempt to locate such Person.  It is the obligation of each Person claiming rights under this Plan to keep the Liquidating Trustee advised of their current address by sending written notice of any changes to the Liquidating Trustee.

8.5    ***Unnegotiated Distribution Checks***.  Checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within 120 days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter.  Any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor and its property or the Liquidating Trustee.  Any Distribution which is deemed nonnegotiable shall re-vest with the Liquidating Trustee and be available for Distribution consistent with the Plan, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary.

8.6    ***Fractional Dollars***.  Any other provision of this Plan notwithstanding, no payments of fractional dollars will be made to any holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction down to the nearest whole dollar.

8.7    ***Distribution Dates***.  Whenever any Distribution to be made under this Plan is due on a day other than a Business Day, such Distribution will instead be made, without penalty or interest, on the next Business Day.

8.8    ***Bankruptcy Code Sections 509 and 510***.  Distributions under this Plan will be governed by the provisions of Sections 509 or 510 of the Bankruptcy Code where applicable.

8.9 ***Distributions to be Applied First to Administrative Claims and Priority Claims***. Fees and expenses incurred by the Liquidating Trustee and its professionals have priority over all other Claims. To the extent any holder of an Allowed Claim receives any Distribution(s) under this Plan by the Liquidating Trustee on account of such Claims, unless otherwise expressly provided for herein or in the Final DIP Order, said Distribution(s) shall be applied by the recipient first to satisfy any Allowed Administrative Claims, Allowed Unsecured Priority Claims, or other Allowed Claims of the recipient against the Debtors which are entitled to priority under Sections 503 or 507 of the Bankruptcy Code and, only after all such priority Claims are fully satisfied, to any Allowed Claims not entitled to such priority. However, the Fee Claims shall not be payable from the Estate Carve-Out. For the avoidance of doubt, Distributions with respect to the proceeds of the Remaining Syracuse Assets (subject to the Estate Carve-Out, Remaining Accounts Receivable, and the HSBC Bank Collateral shall be solely for the benefit of HSBC Bank until the HSBC Bank Administrative DIP Claim and the HSBC Bank Allowed Secured Claim are paid in full.

8.10 ***Estimation of Claims***. The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under Section 502(c) of the Bankruptcy Code and for which the Debtors may be liable under the Plan, including any Claim for taxes, to the extent permitted by Section 502(c) of the Bankruptcy Code, regardless of whether any party-in-interest previously objected to such Claim. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

8.11 ***Chapter 5 Provisions***. No Distribution or payment shall be made to any holder of an Allowed Claim who is also a potential defendant in an Avoidance Action under Chapter 5 of the Bankruptcy Code until a decision is made by the Liquidating Trustee not to commence the potential avoidance action, or, in the event the potential Avoidance Action is commenced by the Liquidating Trustee (or a demand for the return of allegedly avoidable funds is made), until resolution of such Avoidance Action or demand, as the case may be. Notwithstanding this Section, the making of a Distribution to such potential defendant or the lack of any objection filed to such Allowed Claim on the basis of such potential Avoidance Action, shall not constitute a waiver of any rights of the Debtors or the Liquidating Trustee, as the case may be. For purposes of the Plan, such Distribution or payment on account of such Allowed Claim shall be held in reserve as if it were a disputed Claim.

8.12 ***Orders Respecting Claims Distribution***. After confirmation of this Plan, the Court shall retain jurisdiction to enter orders in aid of consummation of this Plan with respect to Distributions under this Plan and to resolve any disputes concerning Distributions under this Plan.

8.13   *Objections to Claims*.  No later than 180 days after the Effective Date, the Liquidating Trustee shall object to the allowance of Claims, ***provided however***, the Liquidating Trustee may not object to any Claim once it becomes an Allowed Claim.  The foregoing deadline may be extended by the Court upon request of the Liquidating Trustee and such other parties as shall request such notice after the confirmation of this Plan.  Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Effective Date.

8.14   *Settlement of Disputed Claims*.  Pursuant to Bankruptcy Rule 9019(b), the Liquidating Trustee may settle any disputed Claim without notice, or Court approval.

8.15   *Setoffs*.  The Liquidating Trustee may, pursuant to and in accordance with section 553 of the Bankruptcy Code or applicable nonbankruptcy law, except as otherwise set forth in this Plan, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Claim, the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim, provided that the Liquidating Trustee gives the holder of such Allowed Claim notice of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty days; provided further, however, if the holder of such Allowed Claim timely objects to the proposed setoff, the setoff may not be effectuated without prior approval of the Court; provided further, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Liquidating Trustee of any such Claims, rights and Causes of Action that the Debtors may possess against such holder.

8.16   *Distribution Cap.*  Except to the extent consistent with the treatment set forth in this Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

8.17   *De Minimis Distributions and Final Distribution*.  Notwithstanding anything to the contrary contained herein or in this Plan, if the amount of Cash to be distributed to the holder of an Allowed Claim is less than $50.00, the Liquidating Trustee may hold the Cash Distributions to be made to such holder until the aggregate amount of Cash to be distributed to such holder is in an amount equal to or greater than $50.00, if the Liquidating Trustee determines that the cost to distribute such Cash is unreasonable in relation to the amount of Cash to be distributed.  Notwithstanding the preceding sentence, if the amount of Cash Distribution to such holder never aggregates to more than $50.00, then on the final Distribution Date, the Liquidating Trustee shall distribute such Cash to the holder entitled thereto.  To the extent that any final Distribution would be *de minimis* or otherwise impracticable in the judgment of the Liquidating Trustee, the Liquidating Trustee may donate any such remaining funds to a 501(c)(3) charity related to the bankruptcy and restructuring field.

8.18   *Withholding Taxes*.  In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed on it by federal, state and local taxing authorities, and all Distributions shall be subject to such withholding and reporting requirements.  All Claims held by any holder of a Claim that fails to provide information reasonably requested by the Plan Administration, including but not limited

to an executed IRS form W-9, in connection with such matters shall be discharged and forever barred from assertion against the Debtors or their property.

8.19    ***Distribution Record Date.***  Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by the Debtors or the Liquidating Trustee, as applicable, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Liquidating Trustee or the Debtors as of the Distribution Record Date.

## SECTION 9.    CONDITIONS PRECEDENT

9.1    ***Conditions to Confirmation.***  Confirmation of this Plan shall not occur and the Court shall not enter the Confirmation Order unless (i) all of the requirements of the Bankruptcy Code for confirmation of the Plan shall have been satisfied; (ii) the Court shall have entered a final Confirmation Order; and (iii) the Liquidating Trust Agreement shall be executed and in form and substance satisfactory to the Debtors and the Committee, in consultation with HSBC Bank.

9.2    ***Nullification of Plan.***  If confirmation shall not occur, this Plan shall be null and void and shall have no force nor effect, and this Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement this Plan.

9.3    ***Waiver and Nonfulfillment of Conditions to Confirmation***.  In the event that the Debtors determine that the conditions to confirmation which they may waive cannot be satisfied and should not, in their sole discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

9.4    ***Confirmation Order Provisions for Pre-Effective Date Actions***.  The Confirmation Order shall empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of this Plan and satisfy all other conditions precedent to the effectiveness of this Plan.

9.5    ***Conditions to Effective Date***.  The Effective Date shall not occur unless: (a) the Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors, the Committee and HSBC Bank; (b) the Plan Documents shall be in form and substance satisfactory to the Debtors, the Committee and HSBC Bank; and (c) no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made and still be pending.

9.6    *Nonfulfillment of Conditions to Effective Date*.  In the event that the Debtors determine that the conditions to the Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied, or if the Effective Date does not occur on or before October 31, 2019, this Plan shall be null and void and shall have no force nor effect, and this Plan shall be deemed withdrawn unless this date is extend by agreement of the Debtors, the Committee and HSBC Bank in writing.

9.7    *Effective Date Events*.  On the Effective Date, the following actions shall have taken place: (a) all payments to be made on the Effective Date and all other actions to be taken on or before the Effective Date pursuant to this Plan by the Debtors shall be made or taken or duly provided for; (b) any documents, including orders or agreements, necessary to implement this Plan as of the Effective Date must be executed; and (c) all other events and actions specified in this Plan to occur on the Effective Date.  Within seven (7) days of the occurrence of the Effective Date, the Liquidating Trustee or the Debtors shall file a notice of occurrence of the Effective Date with the Bankruptcy Court.

## SECTION 10.  EFFECTS OF PLAN CONFIRMATION

10.1    *Satisfaction of Claims*.  Other than as expressly set forth herein, holders of Claims shall receive the Distributions provided for in this Plan, if any, in full settlement and satisfaction of the Debtors' obligations thereunder, and any interest accrued thereon.

10.2    *Interest on Claims*.  Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

10.3    *Satisfaction and Release*.  Except as otherwise specifically provided by the Plan, the Distributions and rights that are provided in the Plan will be in complete satisfaction and release, effective as of the Effective Date, of (i) all Claims and Causes of Action against, liabilities of, liens on, charges, encumbrances, security interests, obligations of and interests in the Assets, or the direct or indirect Assets and properties of the Debtors, whether known or unknown, and (ii) all Causes of Action, whether known or unknown, either directly or derivatively through the Debtors, or the successors and assigns of the Debtors based on the same subject matter as any Claim or any other interests, in each case, regardless of whether a proof of Claim was filed, whether or not Allowed, and whether or not the holder of the Claim has voted on the Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim, in each case regardless of whether a Proof of Claim form was filed, whether or not Allowed and whether or not the holder of the Claim has voted on the Plan.  In accordance with section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan shall not operate to discharge or release any Claim against the Debtors.

10.4    *Exculpation*.  The Debtors, the Committee, the Committee members, HSBC Bank, and their respective counsel, (present and former members, officers, directors, and employees solely in the case of the Committee, the Committee members and HSBC Bank), representatives, advisors, attorneys and agents acting in such capacity shall have no liability whatsoever to any holder or purported holder of an Administrative Claim or Claim for any act or

omission specifically in connection with, or arising out of, the Plan, this Disclosure Statement, the negotiation of the Plan, the pursuit of approval of this Disclosure Statement or the solicitation of votes for confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or this Disclosure Statement or in furtherance thereof, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This Exculpation clause shall not be effective concerning the conduct of the Chapter 11 Cases generally.

Nothing in this section shall (i) be construed to exculpate any entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or *ultra vires* acts or (ii) limit the liability of the professionals of the Debtors and the Committee to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8, Rule 1.8(h)(1) (2015).

10.5    ***Injunction***. Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date all entities are permanently enjoined from taking any of the following actions against the Released Parties or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (1) commencing or continuing in any manner any action or other proceeding with respect to a Claim; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to a Claim; (3) creating, perfecting or enforcing any lien or encumbrance with respect to a Claim; or (4) commencing or continuing any action that does not comply with or is inconsistent with the Plan.

10.6    ***Abandoned Property***. Any and all property whose abandonment is or has been approved by the Court pursuant to the Bankruptcy Code shall remain abandoned forever; shall not thereafter be deemed to be property of the Debtors or the Liquidating Trustee; shall not at any time re-vest in the Debtors, and shall not otherwise, whether by conveyance or otherwise, ever become the property of the Debtors or their Estates.

10.7    ***Post-Effective Date Effect of Evidences of Claims***. Notes, shareholder certificates, and other evidences of liens or Claims against the Debtors shall, effective upon the Effective Date, represent only the right to participate in the Distributions or rights, if any, contemplated by this Plan.

10.8    ***Term of Stays***. **Except as otherwise provided in this Plan, all injunctions and the stay provided for in the Chapter 11 Cases pursuant to Section 362 of the Bankruptcy Code, shall remain in full force and effect until the Chapter 11 Cases are closed.**

**Except as otherwise provided in this Plan, upon entry of the Confirmation Order, all Persons or entities who have held, hold, or may hold Claims or membership or other interests in the Debtors are permanently enjoined, on and after the Effective Date, with respect to all Claims and membership and other interests in the Debtors from (a) commencing, conducting or continuing in any manner, directly or**

indirectly, any proceeding of any kind against or affecting the Debtors, the Released Parties, the Liquidating Trustee, or their property, (b) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any means or manner, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Released Parties, the Liquidating Trustee, or their property, (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Released Parties, the Liquidating Trustee, or their property, (d) asserting any right of setoff, directly or indirectly, against any obligation due the Debtors, the Released Parties, the Liquidating Trustee, or their property, except as contemplated or allowed by this Plan, the Bankruptcy Code, or applicable law, (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan, (f) commencing, continuing or asserting in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are extinguished or released pursuant to this Plan, and (g) taking any action to interfere with the implementation and consummation of this Plan.

10.9    *Retention of Jurisdiction*.    Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Court will retain jurisdiction to the fullest extent permitted by law, including jurisdiction to enter any orders or to take any action specified in this Plan, and including, without limitation, the following:

(a)    To determine any motion, adversary proceeding, Avoidance Action, Recovery Action, Cause of Action, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(b)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)    To ensure that Distributions to holders of Allowed Claims are accomplished as provided in this Plan;

(d)    To hear and determine objections to the allowance of Claims, whether filed, asserted or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of disputed Claims, in whole or in part;

(e)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)    To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order or any other Order of this Court;

(h)    To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)    To hear and determine all Fee Claims;

(j)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)    To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein or in this Plan, or to maintain the integrity of this Plan following consummation;

(l)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)    To enter final decrees closing the Chapter 11 Cases;

(o)    To recover all assets of the Debtors and property of the Estates, wherever located; and

(p)    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code and other applicable law.

10.10    *Failure of the Court to Exercise Jurisdiction*.  If the Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Chapter 11 Cases, including with respect to the matters set forth above in this Section, this Section shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## SECTION 11.  MISCELLANEOUS PROVISIONS

11.1    *Exemption from Transfer Taxes*.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under this Plan, the creation or amendment of any mortgage, deed of trust or other security interest, the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer, under, in furtherance of or in connection with this Plan, and any sale of the Assets, or in furtherance of or in connection therewith, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

11.2 ***Modification of Plan.*** The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements of section 1125 of the Bankruptcy Code, among others. After the entry of the Confirmation Order the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment, or Distributions of any Class under the Plan.

11.3 ***Revocation of this Plan.*** The Debtors reserve the right to revoke or withdraw this Plan, prior to the Confirmation Date, for any reason deemed appropriate by the Debtors. If the Debtors revoke or withdraw this Plan, or if confirmation does not occur, then this Plan shall be null and void in all respects and nothing contained in this Plan shall constitute a waiver or release of any claims by or against, the Debtors, or prejudice in any manner the rights of the Debtors.

11.4 ***Preservation and Application of Insurance.*** The provisions of the Plan shall not diminish or impair in any manner the enforceability and/or coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims or any claims against directors, trustees or officers of the Debtors, or any other Person, other than as expressly as set forth herein. For the avoidance of doubt, and as set forth in the Plan, all of the Debtors' insurance policies, or third party policies naming the Debtors as an additional insured party, and the proceeds thereof shall be available to satisfy Claims to the extent such insurance policies cover such Claims. In addition, such insurance policies and proceeds thereof shall be available to satisfy Claims estimated pursuant to section 502(c) of the Bankruptcy Code or in accordance with the Plan.

11.5 ***Successors and Assigns.*** From and after the Effective Date, the rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person. The provisions of this Plan shall bind all holders of Claims, whether or not they have accepted the Plan.

11.6 ***Computation of Time.*** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

11.7 ***Notices.*** All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail (with a contemporaneous e-mail copy, which shall not constitute notice) addressed to:

To the Debtors:
Stephen A. Donato, Esq.
Camille W. Hill, Esq.
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202-1355

Email: sdonato@bsk.com
        chill@bsk.com
Telephone: (315) 218-8000

To HSBC Bank:
Angela Z. Miller, Esq.
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Email: amiller@phillpslytle.com
Telephone: (716) 847-7060


To the Committee:
David M. Banker, Esq.
MONTGOMERY MCCRACKEN WALKER & RHOADES LLP
437 Madison Avenue
New York, New York 10022
Email: dbanker@mmwr.com
Telephone: (212) 551-7759

To the United States Trustee:
Erin P. Champion, Esq.
OFFICE OF THE UNITED STATES TRUSTEE
105 U.S. Courthouse
10 Broad Street
Utica, New York 13501
Email: Erin.Champion@usdoj.gov
Telephone: (315) 793-8127


All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in this Chapter 11 Cases. Any such holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtors.

11.8    ***Headings.***  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

11.9    ***Severability***.  If, prior to confirmation, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding,

alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

11.10 ***Validity and Enforceability***.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

11.11 ***Controlling Documents***.  (i) In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence and (ii) in the event and to the extent that any provision of this Plan is inconsistent with the Confirmation Order, Confirmation Order shall control.

11.12 ***Reservation of Rights***.  Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.

11.13 ***Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

[Signature page follows]

Dated:     August 2, 2019           Respectfully submitted,
          Syracuse, New York

CENTERSTONE LINEN SERVICES, LLC
ATLAS HEALTH CARE LINEN SERVICES
CO., LLC
ALLIANCE LAUNDRY & TEXTILE SERVICE,
LLC
ALLIANCE LAUNDRY AND TEXTILE
SERVICE OF ATLANTA, LLC
ALLIANCE LTS WINCHESTER, LLC
All d/b/a Clarus Linen Systems

By:       _____
            Ronald Teplitsky, Chief Restructuring Officer

BOND, SCHOENECK & KING, PLLC

By:       _____
            Stephen A. Donato, Esq.
            (Bar Roll # 101522)
            Camille W. Hill, Esq.
            (Bar Roll # 501876)
            Office and Post Office Address:
            110 West Fayette Street
            One Lincoln Center
            Syracuse, New York  13202-1355
            Telephone:  (315) 218-8000
            Facsimile:  (315) 218-8100
            Email:  sdonato@bsk.com
                   chill@bsk.com

            *Counsel to the Debtors*